**FILED**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

AUG 6 2004

Vicki D. Jenkins, individually and on
behalf of all similarly situated
persons,

Case No. **04    720**

James Bonini, Clerk
Columbus, Ohio

Judge **JUDGE SARGUS**

The Named Plaintiff,

**CLASS ACTION COMPLAINT**

v.

Hyundai Motor Finance Company,

**MAGISTRATE JUDGE KING**

and

**JURY DEMAND ENDORSED
HEREON**

Hyundai Motor America,

Defendants.

---

The Named Plaintiff, Vicki D. Jenkins ("Named Plaintiff"), on behalf of herself
and all others similarly situated, hereby complains against the above named Defendants
Hyundai Motor Finance Company (HMFC) and Hyundai Motor America (HMA), based
on information and belief, as follows:

### PRELIMINARY STATEMENT

1.     The Named Plaintiff brings this action pursuant to Ohio Revised Code
§1317.01 *et seq*, Ohio Revised Code §1309.610 *et seq,* Ohio Revised Code §1345.01 *et
seq.*, common law and other applicable laws on behalf of all victims of the Defendants'
unlawful, unfair and deceptive practices of Defendants in connection with their improper
repossession, commercially unreasonable post-repossession sales of consumers'
automobiles and wrongful conversion of refunded payments such as refunded unearned
credit life and credit disability premiums that belong to the Named Plaintiff and Class

Members. Defendants failed to provide borrowers under conditional sales contracts statutorily-mandated notice of their legal rights and obligations following the repossession and disposition of borrowers' vehicles and illegally attempted to collect deficient amounts that remained after the disposition of the borrowers' vehicles. The Defendants also wrongfully converted refunded unearned payments such as credit life and credit disability premiums that were the property of the Named Plaintiff and Class Members. To remedy the wrongful acts of the Defendants, the Named Plaintiff and Class Members seek injunctive and declaratory relief; restitution; compensatory damages; and attorneys' fees, costs and expenses.

## **PARTIES**

2.    The Named Plaintiff Vicki D. Jenkins is, and at all times relevant to this Complaint was, a resident of Ohio. The Named Plaintiff resides within the Southern District of Ohio, Eastern Division. The Named Plaintiff is a hard working individual who became disabled and unable to work in March of 2002. During her disability, the Defendants repossessed the Named Plaintiff's vehicle.

3.    Defendant, Hyundai Motor Finance Company (HMFC) was started in late 1989 as a finance company to provide retail credit and vehicle leasing to Hyundai dealers. HMFC was originally created to provide auto financing to prospective Hyundai purchasers who were having problems obtaining financing elsewhere. In the early years HMFC was a captive finance company of Hyundai. HMFC has since expanded into the business of providing retail credit and vehicle leasing to buyers of all types of vehicles. HMFC is located in Fountain Valley, California and is linked to consumers through a

nationwide network of Automobile Dealers. HMFC is a national consumer finance company covering all 50 states. HMFC is a wholly owned subsidiary of HMA.

4.     Defendant Hyundai Motor America (HMA) is the U.S. distributor of Hyundai vehicles headquartered at 10550 Talbert Avenue, Fountain Valley, California. HMA is a subsidiary of Hyundai Motor. In February 1986, Hyundai expanded into the United States market through HMA. In 1986 HMA sold 168,882 vehicles even though Hyundai had only a few models and distributors in only 31 of the 50 states. In 1987, HMA expanded into central United States with a regional office near Chicago. In 2002, HMA had annual sales of $6.35 billion and its parent Hyundai Motor had 2003 sales of $20.89 billion. Currently there are four regions and more than 600 Hyundai dealerships nationwide.

## CLASS ACTION AND PRIVATE ATTORNEY GENERAL ALLEGATIONS

5.     The Named Plaintiff is suing in her individual capacity, and on behalf of all persons similarly situated. Such a representative action is necessary to prevent and to remedy the unlawful and unfair practices alleged herein.

6.     The Class is unambiguously defined as all persons who were not provided proper post-repossession notice by Defendants and/or had refunded unearned payments misappropriated by the Defendants between January 1, 1999 and the date that this Complaint is filed ("Class Members"). Class Members can be readily identified using documents retained by the Defendants in the ordinary course of business.

7.     The persons in the Class are readily ascertainable and so numerous that the joinder of all such persons is impractical and the disposition of their claims makes a class action rather than individual actions a benefit to the parties and the Court. The many

repossessions that the Defendants engage in and the standardized challenged procedures used in each repossession make it clear that the number of Class Members greatly exceeds the number necessary to make joinder an impracticable alternative to the Class Action procedural device.

8.      The Named Plaintiff and her counsel are adequate representatives of the Class.  The Named Plaintiff is a conscientious representative of the Class who is intimately familiar with the factoral bases for Class Members' claims and willing to forgo her own interests for those of the Class.  The Named Plaintiff is aware that she may not settle the claims herein without this Court's approval.  The Named Plaintiff has chosen counsel with consumer class action experience and the ability to pursue this litigation to a resolution.

9.      The Named Plaintiff's claims are typical of Class Members' claims. Indeed, the Named Plaintiff's claims are so identical to the claims of other Class Members that proof of the Named Plaintiff's claims will directly prove the claims of Class Members.  The Named Plaintiff and Class Members (i) are all victims of the same practices by the Defendants; (ii) all have claims based upon the same state laws; (iii) have claims based upon identical retail installment contracts; (iv) have claims based upon deficiencies in the notices of the repossession and disposition of their vehicles; and (v) were the victims of the Defendants' illegal conversion of refunded unearned payments such as credit disability and credit life premiums that were the property of the Named Plaintiff and Class Members.

10.     There is a well-defined community of interest among the Class Members in that there are common questions of law and fact.  These questions include, *inter alia,*

(i) whether the Defendants failed to provide proper post-repossession notices to individuals whose motor vehicles were repossessed; (ii) whether the Defendants' notices contained all of the disclosures required by law; (iii) whether Defendants assessed, attempted to collect and/or collected deficiency balances from Class Members that they had no legal right to demand or collect, and for which the Class Members were not liable as a matter of law; (iv) and/or whether the Defendants misappropriated refunded unearned payments that were the property of the Named Plaintiff and Class Members. These questions of law and fact are predominant over questions that affect only individual Class Members. Proof of a common fact or set of facts will establish the right of each Class Member to recover. The claims of the Named Plaintiff are typical of those of the Class and the Named Plaintiff will fairly and adequately represent the interests of the Class.

11.　　Common factual and legal issues are predominant over individual factual and legal issues. Individual issues pale by comparison to the many common material issues of law and fact including whether:

　　a.　　The Defendants and Class Members entered into substantively similar or identical retail installment sales contracts;

　　b.　　The Defendants failed to send Class Members proper notice of the disposition of the vehicles that the Defendants repossessed from the Class Members;

　　c.　　The Defendants' failure to send Class Members proper notice of the disposition of their vehicles precludes the Defendants from attempting to collect or collecting from Class Members;

- 5 -

d.      The Defendants failed to dispose of the vehicles repossessed from Class Members in a commercially reasonable manner;

e.      The Defendants violated state consumer protection statutes in connection with their deficient notices, flawed repossession sales and illegal misappropriation of refunded unearned payments belonging to Class Members;

f.      The Defendants wrongfully converted refunded payments belonging to Class Members;

g.      The Defendants breached provisions in the retail installment sales contracts between the Defendants and Class Members; and

h.      The Defendants have been unjustly enriched by the collection of deficiencies and/or refunded payments from Class Members.

The outcome of this litigation will be determined by resolution of those common legal and factual issues.

12.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual Class Members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically infeasible for Class Members to seek redress individually.

13.     Prosecution of individual remedies by Class Members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual Class Members against Defendants, would establish incompatible standards of conduct for Defendants, and would result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.

## GENERAL ALLEGATIONS

14.     On or about July 7, 2001 in Columbus, Ohio, the Named Plaintiff and automobile dealer Dennis Autopoint ("Dennis") entered into a written conditional sales contract (Exhibit 1), under which Dennis agreed to sell and the Named Plaintiff agreed to buy a new 2002 Pontiac Sunfire.  In order to finance the purchase of the vehicle, the Named Plaintiff entered into a "Motor Vehicle Retail Installment Contract" (Exhibit 2) for financing by the Defendants of the $21,316.49 balance of the purchase price that was due.  Pursuant to the contract, the Named Plaintiff received possession of the vehicle on or about July 7, 2001, and Dennis was given the lien on the vehicle as security for the payment for the balance of the purchase price.  The Named Plaintiff purchased the vehicle primarily for personal and family purposes.  The contract was and is subject to the Ohio Retail Installment Sales Act, O.R.C. §1317.01 *et. seq.* the Ohio Consumer Sales Practice Act, O.R.C. §1345.01 *et. seq.*, the Ohio Disposition of Secured Collateral Statute, O.R.C. §1309.610 *et. seq.*, and other applicable Ohio statutory or common laws. Dennis assigned its rights under the above described conditional sales contract to Defendants.

15.     As part of her purchase of the vehicle, the Named Plaintiff purchased and financed through the Defendants, gap Insurance ($468), credit, disability insurance ($1336.08) (Certificate No. GC84107), mechanical breakdown insurance ($1163.00), and an extended warranty.  After making payments for nearly a year, the Named Plaintiff became disabled in March 2002 and submitted a claim under the credit disability insurance, requesting that they make her payments while she was disabled.   Between

March 2002 and October 2002, the Named Plaintiff contacted the Defendants at least one time each month in an attempt to get her disability paperwork processed and obtain the benefits owed to her pursuant to the credit disability insurance that she had purchased with the encouragement of the Defendants' agents. However, the Defendants failed to fulfill their obligation under the disability policy, despite the Named Plaintiff's pleading and persistence, and instead simply continued to harass the Named Plaintiff to make the monthly payment.

16.     The Named Plaintiff became delinquent on her account in or about April 2002. The Named Plaintiff became delinquent as a direct result of the Defendants' failure to provide the information necessary to process her claim for benefits under the credit disability insurance that the Defendants sold her with the purchase of her vehicle. The Named Plaintiff spent hours trying to get the Defendants to provide the insurer with the information that the insurer needed from the Defendants in order to make the Named Plaintiff's car payments under the disability policy. However, as the Defendants would later confess, they had simply filed away the Named Plaintiff's request for information because they did not believe that she would qualify for the credit disability insurance, even though that was a decision to be made by the insurer, Classic Life Assurance Company ("Classic Life"), and Classic Life had never indicated that the Named Plaintiff did not qualify for a benefit under the disability policy. Rather, Classic Life had simply indicated that they could not process the Named Plaintiff's claim without the information that had to be supplied by the Defendants. The Defendants did not supply the required information despite numerous requests. As a result of the Defendants' failure to supply

the necessary information, the Named Plaintiff's disability insurance plan did not start and the Named Plaintiff became increasingly delinquent on the payments for her vehicle.

17.     Throughout the months leading up to the repossession, the Named Plaintiff continued to fax the Defendants her claim forms.  Classic Life informed the Named Plaintiff that the only hold up to processing her claim for benefits under the credit disability insurance policy was the information required from the Defendants.  The Named Plaintiff continued pleading with the Defendants to complete their part of the paperwork.  In April 2002, the Named Plaintiff talked to a woman named Kelly at the Defendants' customer service department.  In May 2002, a Human Resources Manager from the Named Plaintiff's employer Merck-Medco talked to and faxed the Named Plaintiff's information to the Defendants.  On May 21, 2002, the Defendants faxed the Named Plaintiff a deferment agreement that acknowledged the Named Plaintiff was "out on disability."  However, the Named Plaintiff should not have been deferring payments. The Named Plaintiff's payments should have been paid by the Credit Life credit disability insurance policy pursuant to the terms of the agreement.  Throughout June to September 2002, the Named Plaintiff continued to contact the Defendants on a monthly basis in an attempt to have her disability paperwork processed by the Defendants.  The Named Plaintiff even faxed her disability information to the Defendants several times. On July 11, 2002, the Named Plaintiff re-faxed her disability paperwork to the Defendants and advised that they had failed to process her disability claim.  On August 23, 2002, the Named Plaintiff faxed her disability information for the third and fourth time to several of the Defendants' representatives and pleaded with them to process her claim.

18.     Despite the Named Plaintiff's pleas, the Defendants never completed their part of the Named Plaintiff's disability claim.  The Defendants' representative informed the Named Plaintiff that they had not bothered to process her disability paperwork as they did not believe her claim would qualify for disability.  The Defendants' representative also informed the Named Plaintiff that the Defendants expected her to make the payments and that "if it was the last thing she [the Defendants' representative] did, she would hunt her [the Named Plaintiff] down and get the car repossessed."

19.     In October 2002, the Defendants began ignoring the Named Plaintiff's repeated requests for assistance.  On October 20, 2002, while the Named Plaintiff was at Sunday school with her granddaughter, the Defendants repossessed the motor vehicle from the Named Plaintiff's possession.  The Named Plaintiff was living out of her car at the time it was repossessed.  The Defendants' repossession of the Named Plaintiff's vehicle caused the Named Plaintiff to suffer great hardship and emotional distress.

20.     On October 22, 2002, the Defendants notified the Named Plaintiff that her vehicle had been repossessed because she had not made the required payments and that she would have 15 days from the date of the notice to pay the entire amount owing and repossession expenses of $350 at their offices in California.   The only statement concerning post repossession sale in the notice stated, "[I]f you are late in making your payments or otherwise in default again during the term of your contract we may exercise our rights without sending you another notice like this one."  A true and correct copy of this notice (hereinafter referred to as "post-repossession notice"), which was issued to the Named Plaintiff, is attached hereto as Exhibit 3.  No other notice was sent to the Named Plaintiff prior to the sale of her vehicle at an auto auction.  In fact, the Defendants'

representative would later admit that they did not send any other notice. Nevertheless, the Defendants insisted that the Named Plaintiff would still be held liable for the balance on her loan after subtraction of the proceeds from the auction of the vehicle.

21.     On December 20, 2003, the Named Plaintiff sent a letter to the CEO of Hyundai explaining the improper actions of the Defendants. In her letter, the Named Plaintiff explained the improper actions of the Defendants in failing to process her disability claim, in the repossession of her vehicle and in the conversion of her refunded unearned credit disability premiums. The Named Plaintiff's December 20, 2003 letter set forth in detail the persons whom the Named Plaintiff had contact with at the Defendants' offices and the wrongful actions and/or inactions of the Defendants' representatives. For example, the Named Plaintiff's December 20, 2003 letter explained that the Defendants' supervisor of consumer affairs, Theresa, had promised to work on the Named Plaintiff's file and call the Named Plaintiff back but failed to do so and even continued to ignore the Named Plaintiff's repeated follow-up calls.

22.     On January 6, 2004, the CEO of HMA sent the Named Plaintiff a form letter acknowledging receipt of her December 20, 2003 letter and stating that Hyundai "will work hard to earn your trust." (Exhibit 4) On January 12, 2004, Defendants' Supervisor of Consumer Affairs, Theresa, contacted the Named Plaintiff. Theresa was the same supervisor who had supervised the misconduct concerning the disability claim and faulty repossession and had herself failed to follow through on promises to assist the Named Plaintiff with the resolution of her issues with the Defendants. Thus, the Defendants had turned over the Named Plaintiff's complaint to the same person who oversaw the improper conduct that caused the Named Plaintiff's complaint. At first,

Theresa admitted fault in the handling of the Named Plaintiff's disability claim and the repossession and Theresa promised to take care of the Named Plaintiff. However, on January 16, 2004, Theresa advised the Named Plaintiff that they were not going to do anything else for her and she would have to "get a lawyer."

23.    Following repossession of the Named Plaintiff's vehicle and Class Members' vehicles, the Defendants failed to comply with the Retail Installment Sales Act and other substantively identical state statutes. The Defendants failed to provide the Named Plaintiff or Class Members with the mandatory notice required and failed to dispose of the Named Plaintiff's vehicle in a commercially reasonable manner. The Named Plaintiff was never sent the required disposition notice required. Indeed, the Defendants' representative admitted that they had not sent the notice of disposition required to the Named Plaintiff. The Named Plaintiff and Class Members were never notified "of the time and place of such sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor [the Named Plaintiff and Class Members] may be held liable for any deficiency resulting from such sale." However, the Defendants still proceeded with collection efforts and advised the Named Plaintiff and Class Members that they owed a deficiency balance.

24.    Notwithstanding their failure to comply with the mandatory post-repossession notice requirements of the Ohio Retail Installment Sales Act and other substantively identical state statutes, the Defendants have assessed, demanded, attempted to collect, and collected deficiency balances from borrowers such as the Named Plaintiff and Class Members for which the borrowers were not liable as a matter of law and which the Defendants had no legal right to demand or to collect. The Defendants have made

unlawful collection demands to the Named Plaintiff and to other Class Members, have

falsely represented to such Class Members that deficiency balances were owed, have

reported such alleged deficiency balances to credit reporting agencies, have collected

millions of dollars from Class Members to which the Defendants were not entitled, and

have threatened to sue, and have sued, Class Members who did not owe any deficiency as

a matter of law.  At all relevant times, the Defendants had actual and/or constructive

knowledge that such Class Members were not liable for any deficiency as a matter of law

as a result of Defendants' failure to comply with the Ohio Retail Installment Sales Act and

other substantively identical state statutes.  Nevertheless, the Defendants persist in their

unlawful collection activity.

     25.    The conditional sales contract under which the Named Plaintiff and Class

Members purchased their vehicles ("Motor Vehicle Retail Installment Contract and Truth

in Lending Disclosure") was on pre-printed, standard form agreements that are routinely

used by the Defendants.  Aside from financing terms that are individual to each borrower,

all standard form agreements contain certain provisions that are the same for all borrowers

under conditional sales contracts.  One provision in the Motor Vehicle Retail Installment

Contract and Truth in Lending Disclosure agreement provides that the holder of the

contract, here the Defendants, is liable for all claims and defenses that the borrower may

have against the seller of a motor vehicle.  Another provision represents that the holder

will not dispose of a repossessed motor vehicle and seek to recover a deficiency balance

without first giving the borrower notice as provided by law.  The terms of this provision

contractually obligate the Defendants to provide a post-repossession notice that complies

with the law in effect at the time it repossesses a vehicle.

26.     The Defendants regularly and consistently breached the terms of their standard form agreements with Ohio borrowers, including the Named Plaintiff and Class Members, by failing and/or refusing to provide borrowers notice as required by law following the repossession of their motor vehicles, and by thereafter assessing, demanding and attempting to collect alleged deficiency balances that the borrowers did not owe as a matter of law.

27.     The Defendants failed to comply with state consumer protection statutes such as the Ohio Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* by violating the Ohio Retail Installment Sales Act, violating the Ohio Disposition of Secured Collateral Act §1309.610 *et seq.,* violating the substantively identical statutes of other states, engaging in deceptive and unfair practices, and conversion of refunded payments such as unearned credit life insurance and credit disability insurance premiums that belonged to the Named Plaintiff and Class Members.  Moreover, the Defendants deceptively attempted to collect deficiency judgments from the Named Plaintiff and Class Members even though the Defendants were legally prohibited from attempting to collect deficiency judgments as a result of their failure to comply with the Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.,* the Ohio Disposition of Secured Collateral Act §1306.640 *et seq.* and the substantively identical statutes of other states.

28.     The Defendants also deceptively misrepresented to the Named Plaintiff and Class Members that they had a right to the refunded unearned credit life insurance, credit disability insurance premiums and other premiums paid by the Named Plaintiff and Class Members when they did not have a statutory nor contractual right to the refunded payments.  The Defendants advised the Named Plaintiff that they had applied sums that

- 14 -

were refunded to her from the credit disability insurer, Classic Life, and other sums refunded to the Named Plaintiff as a result of the early termination of her retail installment sales contract to the outstanding balance on her loan with the Defendants following the disposition of the Named Plaintiff's vehicle. The Defendants indicated that the refunded sums were thousands of dollars and that the Named Plaintiff still owed a deficiency balance in excess of $14,000 after reductions from the sale of the Named Plaintiff's vehicle and subtraction of the refunded unearned sums from the Named Plaintiff's balance.

29. The Defendants failed to repossess and/or dispose of the Named Plaintiff's vehicle in a commercially reasonable manner. The Defendants did not provide the Named Plaintiff or Class Members with reasonable authenticated notification of the disposition of the vehicle repossessed from the Named Plaintiff and Class Members. The Defendants admittedly failed to provide the Named Plaintiff with any notice of the disposition of the Named Plaintiff's vehicle. The only notice sent to the Named Plaintiff was a notice of the repossession. The notice of the repossession only stated that the Defendants "may exercise our rights without sending you another notice like this one." The post-repossession notice did not state the method of intended disposition nor the time and place of the intended disposition. Nor did the post-repossession notice include a description of any liability for a deficiency, a telephone number from which the amount that must be paid to redeem the collateral can be obtained, or a telephone number or address from which additional information concerning the planned disposition was available.

30. The Defendants' failure to dispose of the vehicles repossessed from the Named Plaintiff and Class Members in a commercially reasonable manner is confirmed by

the disparity between the amounts received from the disposition and the amounts owed by the Named Plaintiff and Class Members. The Named Plaintiff was informed by the Defendants that she still owed in excess of $14,000 on a $21,316 note after subtracting the proceeds from the sale of the Named Plaintiff's vehicle and the refunded payments from the Named Plaintiff's loan balance. Thus, the Defendants' disposition of the Named Plaintiff's vehicle resulted in a deficiency in excess of $14,000 for a vehicle that was sold for $21,316 approximately 1 year prior to the Defendants' commercially unreasonable disposition of the Named Plaintiff's vehicle. Had the Defendants disposed of the vehicle repossessed from the Named Plaintiff and Class Members in a commercially reasonable manner, the resulting deficiencies charged to the Named Plaintiff and Class Members would have been much less and Class Members, including the Named Plaintiff, could have taken steps to minimize the deficiency balances caused by the Defendants if the Defendants had provided proper notice of the disposition of the vehicle repossessed from the Named Plaintiff and Class Members.

31.     The Defendants have wrongfully attempted to collect and collected sums from the Named Plaintiff and Class Members to which they were not entitled. The Defendants have wrongfully attempted to collect and have collected deficiency balances that the Defendants were not entitled to as a result of their improper actions during the repossession and disposition of the vehicles repossessed from the Named Plaintiff and Class Members. For example, the Defendants advised the Named Plaintiff that she remains liable for a $14,000 deficiency even though the Defendants are not entitled to that deficiency because the Defendants failed to send notice of disposition to the Named Plaintiff and failed to repossess and dispose of the Named Plaintiff's vehicle in a

commercially reasonable manner. The Defendants also wrongfully converted refunded payments such as unearned credit life and credit disability insurance premiums that were the property of the Named Plaintiff and Class Members. For example, the Defendants took over $1,000 in refunded unearned credit disability premiums that were the property of the Named Plaintiff and to which the Defendants were not entitled.

## FIRST CAUSE OF ACTION
### (Violation of the Ohio Retail Installment Sales Act and Substantively Identical Statutes of Other States)

32. The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

33. The Ohio Retail Installment Sales Act, O.R.C. §1317.07 *et seq.*, the Ohio Disposition of Secured Collateral O.R.C. §1309.610 *et seq.* Act and substantively identical statutes from other states establish minimal requirements that must be met by creditors who repossess and dispose of motor vehicles.

34. The Ohio Retail Installment Sales Act, and substantively similar acts of other states, regulate, among other things, the repossession and disposition of motor vehicles financed under conditional sales contracts. To protect consumers' valuable property interests in financed vehicles, these acts impose strict and mandatory requirements on holders of conditional sales contracts following repossession.

35. The Retail Installment Act O.R.C. §1317.01 *et. seq.*, as well as other substantively identical statutes from other states, mandate the issuance of at least two post-repossession notices to borrowers. Sub-sections 1317.12 and 1317.16 of the Retail Installment Sales Act set forth the required information and disclosures that must be sent to the borrower after repossession. O.R.C. 1317.12 sets forth the requirements for a

notice of the right to cure default, while O.R.C. 1317.16 sets forth the requirements of the notice concerning disposition and manner of disposition of the collateral.

36. Absent strict compliance with the requirements of the Retail Installment Sales Act and substantively identical statues in other states, a holder of a conditional sales contract may not lawfully assess or collect any deficiency from the borrowers, or any other person liable under the contract, following disposition of the repossessed vehicle. Indeed, a failure to comply with the notice requirements of O.R.C. §1317.01 *et seq.* creates a presumption that the consumer has been damaged in an amount equal to or greater than the deficiency on the consumer's account following disposition of the vehicle. O.R.C. §1317.12 provides, "[a] secured party who disposes of the collateral without sending the notice required by this section may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment. O.R.C. §1317.16(A) provides that a creditor must "dispose of any or all of the collateral only as authorized by this section." If a creditor fails to comply fully with the notice requirements of O.R.C. §1317.16 or substantively identical provisions in other state statutes, they cannot recover a deficiency judgment. O.R.C. §1317.16 and substantively identical statutes from other states also require that the sale of the vehicle be commercially reasonable. A seller or holder may not obtain a deficiency judgment against a buyer under a conditional sales contract after the repossession and disposition of a motor vehicle unless the seller or holder can prove that the sale or other disposition was commercially reasonable.

37. O.R.C. §1317.12 requires, among other things, that "[d]uring the period between the time a secured party retakes possession of the collateral and the expiration or

exercise of the debtor's right to cure the default, the secured party shall make the collateral available for inspection by the debtor during reasonable hours." Similar statutes in other states require the same. Despite requests by the Named Plaintiff, the Defendants did not make the Named Plaintiff's vehicle available to the Named Plaintiff prior to the expiration of her right to cure the default.

      38.    O.R.C. §1317.16 requires, among other things, "[a]t least ten days prior to sale the secured party shall send notification of the time and place of such sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale, by certified mail, return receipt requested, to the debtor at the debtor's last address known to the secured party, and to any persons known by the secured party to have an interest in the collateral. In addition, the secured party shall cause to be published, at least ten days prior to the sale, a notice of such sale listing the items to be sold, in a newspaper of general circulation in the county where the sale is to be held." Substantively identical statutes from other states require the same. The post-repossession notice issued by the Defendants and the disposition of the Named Plaintiff's vehicle were not in conformity with O.R.C. §1317.16 or the substantively identical statutes of other states. Following the repossession of the Named Plaintiff's vehicle, the Defendants failed to provide notice as required by O.R.C. §1317.16 and other state statutes. The Defendants also failed to dispose of the Named Plaintiff's vehicle in a "commercially reasonable" manner as required by O.R.C. §1317.16 and other state statutes. The Defendants did not provide notice of the auction and the auction price of the Named Plaintiff's vehicle was so far below the value of the Named Plaintiff's vehicle as to not be commercially reasonable.

39.     The Ohio Retail Installment Sales Act, O.R.C. §1317.01 *et. seq.* and substantively identical statutes in other states are substantively similar as they are modeled after model statutes and/or the statutes of other states to address common abuses by creditors in the repossession and disposition of vehicles in all states. The contracts entered into with and/or subsequently assigned to the Defendants by the Named Plaintiff and other Class Members are "retail installment contract[s]" as that term is defined in O.R.C. §1317.01 and other similar state statutes. The transactions between the Defendants or their assignors and Class Members are "retail installment sale[s]" as that term is defined in O.R.C. §1317.01 and other similar state statutes. The Named Plaintiff and Class Members are "retail buyer[s]" as that term is defined in O.R.C. §1317.01 and other similar state statutes. Defendants are "seller[s]" or "retail seller[s]" as those terms are defined in O.R.C. §1317.01 and other similar state statutes. Thus, the transactions between the Defendants or their assignors and Class Members are subject to and governed by the provisions of the Ohio Retail Installment Sales Act and the substantively identical statutes of other states.

40.     Defendants have violated the provisions of the Ohio Retail Installment Sales Act and other similar state statutes. The Defendants failed to comply with the post repossession notice and commercial reasonability requirements of O.R.C. §1317.01 *et. seq.* and other similar state statutes. The Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.* and similar statutes of other states permit recovery by the debtor even if the disposition of a repossessed motor vehicle is commercially reasonable if the secured party fails to send the required notices. The Defendants have thus deprived the Named Plaintiff and Class Members of substantial rights granted to them under the Ohio Retail

Installment Sales Act and similar statutes of other states, including the right to make an informed decision about whether to reinstate or redeem their contract. In addition, because the Defendants have failed to provide the Named Plaintiff and Class Members all of the information and disclosures to which they are entitled under O.R.C. §1317.01 *et. seq.* and similar statutes of other states, the Named Plaintiff and Class Members are not liable, under the Ohio Retail Installment Sales Act §1317.01 *et seq.* and similar statutes of other states, for any deficiency following the disposition of their repossessed motor vehicles. Nevertheless, without any legal right to do so, the Defendants have assessed, demanded, attempted to collect, and collected deficiency balances from the Named Plaintiff and Class Members in direct violation of the law.

41.    As a direct and proximate result of the acts and violations alleged herein, the Named Plaintiff and Class Members have been or will be damaged, and have suffered economic losses, in an amount to be proven at trial. The Defendants, without any legal right to do so, have assessed, demanded, attempted to collect, collected and/or will collect substantial deficiency balances from the Named Plaintiff and Class Members, for which the Named Plaintiff and Class Members are not liable as a matter of law. Wherefore, the Named Plaintiff and Class Members pray for the relief set forth below in the Prayer for Relief section of this Complaint.

## SECOND CAUSE OF ACTION
### (Violation of the Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* and Similar Consumer Protection Statutes of Other States.)

42.    The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

43.    By and through the conduct complained of herein, the Defendants have violated the Ohio Consumer Sales Practices Act, O.R.C. §1345.01 *et seq.* and similar consumer protection statutes of other states.  Violation of Ohio's Retail Installment Sales Act O.R.C. §1317.01 *et seq.* and similar state statutes constitute violations of state consumer protection statutes.  Moreover, apart from the violations of the state consumer protection statutes as a result of the Defendants' violation of the Ohio Retail Installment Sales Act O.R.C. §1345.01 *et seq.* and similar state statutes, the Defendants' actions complained of herein are a direct violation of the provisions of the Ohio Consumer Sales Practices Act §1345.01 *et seq.* and consumer protection statutes of other states.  Ohio's Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* and other state consumer protection statutes prohibit deceptive and unfair practices aimed at consumers from before the consumer transaction until after the debt is paid.  Misrepresentations on a retail installment contract are deceptive, unconscionable and unfair acts in violation of the Ohio Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* and other state consumer protection statutes.

44.    The sales in which the Named Plaintiff and Class Members purchased the vehicles through the Defendants are consumer transactions within the meaning of state consumer protection statutes.   The Named Plaintiff and Class Members are consumers within the meaning of state consumer protection statutes in that they engaged in a consumer transaction with the Defendants who are "suppliers" as that term is defined in state consumer protection statutes.  For example, under Ohio's Consumer Sales Practices Act, "suppliers" include a lessor, assignees, assignors and others whether or not they deal directly with the consumer.   The Defendants had actual knowledge that the facts

complained of herein were being committed and that the acts were in violation of state consumer protection statutes, such as Ohio's Consumer Sales Practices Act, O.R.C. §1345.01, *et seq.* The Defendants' knowledge of the acts complained of herein and of the violations of state consumer protection statutes, such as the Ohio's Consumer Sales Practices Act O.R.C. §1345.01 *et seq.*, can be inferred from the Defendants' manifestations of their awareness of the acts violating state consumer protection statutes, such as Ohio's Consumer Sales Practices Act O.R.C. §1345.01 *et seq.*, and the fact that those acts violated the law. For example, the Defendants admitted that they had not properly noticed the auction of the Named Plaintiff's vehicle which the Defendants repossessed and sold in a manner that was not commercially reasonable. Thus, the Defendants knew or should have known that they were not entitled to deficiency amounts because state retail installment sales acts, such as the Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.*, prohibit collection of deficiencies where the financer fails to comply with the requirements of the state retail installment sales acts, such as Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.*, and/or the requirements of state statutes regulating the disposition of secured collateral, such as the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.*

45. The sale and repossession of the motor vehicles repossessed from the Named Plaintiff and Class Members was deceptive as that term is defined in state consumer protection statutes. As complained of herein, the Defendants have repossessed motor vehicles from the Named Plaintiff and Class Members and have failed to issue the proper post-repossession notices required by state statutes governing the disposition of

secured collateral, such as the Ohio Retail Installment Sales Act and the Ohio Disposition

of Secured Collateral Act. Notwithstanding the Defendants' failure to satisfy the notice

requirements of state statutes governing the disposition of secured collateral, such as the

Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.* and the Ohio Disposition of

Secured Collateral Act O.R.C. §1309.610 *et seq.*, the Defendants have attempted to collect

the deficiency balances from the Named Plaintiff and Class Members who were not

provided the proper post-repossession notices. As a result of the failure to provide proper

post-repossession notices, the Defendants were prohibited from collecting the deficiency

balances from the Named Plaintiff and Class Members. The Defendants had actual or

constructive notice that the Named Plaintiff and Class Members were not liable for the

deficiency balances due to the Defendants' failure to comply with the post repossession

deficiency notices required by state statutes governing the disposition of secured

collateral, such as the Ohio Retail Installment Sales Act O.R.C. §1317.01 *et seq.* and/or

the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* The Defendants'

acts in attempting to collect the deficiency balances despite their lack of compliance with

the Ohio Retail Installment Sales Act constitutes and unfair and deceptive act prohibited

by O.R.C. §1345.01 *et seq.*

46.     As complained of herein, the Defendants have falsely reported to major

credit agencies that the Named Plaintiff and Class Members were liable for the deficiency

judgments even though the Named Plaintiff and Class Members were not liable for the

deficiency judgements. The Defendants had actual or constructive notice that the Named

Plaintiff and Class Members were not liable for the deficiency balances due to the

Defendants' failure to comply with the post repossession deficiency notices required by

the Ohio Retail Installment Sales Act O.R.C. 1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* Due to the Defendants' failure to comply with the notice requirements of the Ohio Retail Installment Sales Act O.R.C. 1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.*, the Named Plaintiff and Class Members are not liable for any deficiency balance owed to the Defendants after the sale of the subject motor vehicle. Accordingly, the Defendants' false reporting of credit related information to credit reporting agencies constitutes and unfair and deceptive practice which is prohibited by the Consumer Sales Practices Act, O.R.C. §1345.01 *et seq.* and consumer protection statutes of other states.

47. The Named Plaintiff and Class Members presumably relied upon the Defendants' written misrepresentations and common omissions in the repossession and disposition of the vehicles repossessed from the Named Plaintiff and Class Members. The Defendants uniformly misrepresented in their Retail Agreements that they would comply with all applicable state and federal laws in connection with the sale of motor vehicles to the Named Plaintiff and Class Members. The Named Plaintiff and Class Members presumably and in fact relied upon the Defendants' uniform misrepresentations that they would comply with applicable state laws including the requirement of post-repossession notices in state statutes governing the disposition of secured collateral, such as the Ohio Retail Installment Sales Act O.R.C. 1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* The Defendants commonly omitted to inform the Named Plaintiff and Class Members that they may illegally repossess and sell the automobiles sold to the Named Plaintiff and Class Members without complying with the provisions of the state statutes governing the disposition of secured collateral, such as

Ohio Retail Installment Sales Act O.R.C. 1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* The Defendants also commonly omitted the required elements of the notice of repossession and the notice of disposition that are required by the common state statutes. The Named Plaintiff and Class Members presumably relied upon the Defendants' common omissions of the fact that they may illegally repossess the automobiles sold to the Named Plaintiff and Class Members and sell those automobiles at an auction without complying with the notice requirements of state statutes governing the notice of disposition of secured collateral, such as the Ohio Retail Installment Sales Act O.R.C. 1317.01 *et seq.* and the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.*

48.    The Named Plaintiff and Class Members have been damaged as a result of the Defendants' acts in violation of state consumer protection statutes, such as the Ohio Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* The Defendants' violation of state consumer protection statutes, including the Ohio Consumer Sales Practices Act, entitles the Named Plaintiff and Class Members to recover their damages, recover treble damages, obtain a declaration that the Defendants' practices complained of herein are illegal, attorneys' fees, costs of this action and/or an injunction prohibiting the Defendants from further committing the acts complained of herein and thereby violating state consumer protection statutes, including the Ohio Consumer Sales Practices Act O.R.C. §1345.01 *et seq.* The acts complained of herein were knowingly committed in bad faith by the Defendants and concealed from the Named Plaintiff and Class Members. The Named Plaintiff and Class Members could not have discovered the grounds for this relief until after the Defendants had repossessed their motor vehicles and failed to provide the proper

notices required by state statutes governing the notice of disposition of secured collateral,
such as the Ohio Retail Installment Act O.R.C. §1317.01 *et seq.* and/or the Ohio
Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* and failed to sell the
vehicles in a commercially reasonable manner.

### THIRD CAUSE OF ACTION
**(Violation of State Disposition of Secured Collateral Statutes,
Including Ohio's Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.*)**

49.     The Named Plaintiff repeats and re-alleges the allegations contained in the
paragraphs above as if fully set forth herein.

50.     As alluded to above by the conduct complained of herein, the Defendants have
violated the provisions of state statutes governing the disposition of secured collateral,
such as the Ohio Disposition of Secured Collateral Act O.R.C. §1309.610 *et seq.* State
disposition of secured collateral statutes establish minimal standards that a secured party
must satisfy when repossessing secured collateral and disposing of that collateral.  Such
statutes are modeled after UCC provisions and are substantively identical.  Among the
standards established by state disposition of secured collateral statutes are post-
repossession notice requirements and requirements of commercial reasonableness in the
repossession and disposition of secured collateral.

51.     State disposition of secured collateral statutes, such as O.R.C. §1309.610 permit a
secured party to dispose of collateral after default provided that, "[e]very aspect of a
disposition of collateral, including the method, manner, time, place, and other terms be
commercially reasonable."  A large discrepancy between the purchase price and the price
at resale soon after the purchase presents a question of fact as to the reasonableness of the
disposition of the collateral.  Likewise, the sale of a vehicle following the failure to

- 27 -

satisfy the post repossession notice requirements is not commercially reasonable.  In the present case, the Defendants' sale of the Named Plaintiff's and Class Members' repossessed motor vehicles was not commercially reasonable.

52.     The Defendants' disposition of the vehicles repossessed from the Named Plaintiff and Class Members was not commercially reasonable.  The Defendants failed to provide the Named Plaintiff and Class Members with proper notice before the disposition of the vehicles.  State disposition of secured collateral statutes, such as O.R.C. §1309.611, required that the Defendants send "reasonable authenticated notification of disposition" to the Named Plaintiff and Class Members prior to the disposition of the repossessed vehicles.  These statutes also require that the notice be sent a reasonable time before disposition of the vehicle (*See, e.g.,* O.R.C. §1309.612) and require that the notice (a) describe the debtor and the secured party; (b) describe the collateral that is the subject of the intended disposition; (c) state the method of intended disposition; (d) state that the debtor is entitled to an accounting of the unpaid indebtedness; and (e) state the time and place of the intended disposition (*See, e.g.*, O.R.C. §1309.613).  Moreover, in the case of consumer goods such as the vehicles in this case, statutes require that in addition to the normal notice requirements, the notice must include (a) a description of any liability for a deficiency; (b) a telephone number from which the amount that must be paid to redeem the collateral can be obtained; and (c) a telephone number or address from which additional information concerning the disposition is available (*See, e.g.,* O.R.C. §1309.614).  Finally state statutes such as O.R.C. §1309.625 provide remedies including actual damages, consequential damages, automatic minimum damages and other remedies for violations of the provisions therein.

53.     The Defendants failed to send the Named Plaintiff and Class Members proper timely notice of the planned disposition of the vehicles that the Defendants repossessed from the Named Plaintiff and Class Members as required by state disposition statutes such as O.R.C. §1309.610 *et seq.* The Named Plaintiff was not provided any notice of the disposition of her vehicle. The Named Plaintiff and Class Members were not provided notice of the planned disposition of their vehicles that stated the method of intended disposition, the entitlement to an accounting, the time and place of the intended disposition, a description of any liability for a deficiency, a telephone number from which the amount that must be paid to redeem the collateral could be obtained or a telephone number from which to get additional information concerning the planned disposition of their vehicles. Indeed, the Defendants admitted that they failed to provide the Named Plaintiff any notice of the intended disposition of her vehicle. The only notice that the Defendants provide is notice of the repossession that states Defendants may exercise additional rights without further notice. This was not sufficient notice of the planned disposition. Nevertheless, the Defendants sought to collect deficiency judgments from the Named Plaintiff and Class Members in violation of state statutes governing the disposition of secured collateral.

54.     The lack of proper notice and large difference between the amount owed and the amounts for which the repossessed vehicles were sold confirms that the Defendants' disposition of the vehicles repossessed from the Named Plaintiff and Class Members was not commercially reasonable. The Named Plaintiff purchased her vehicle for twenty-one thousand three hundred sixteen dollars and forty nine cents ($21,316.49) in 2001. The Defendants repossessed and sold the Named Plaintiff's vehicle in 2002 and informed the

Named Plaintiff that after the Defendants improperly applied the refund of the Named Plaintiff's credit disability premiums to the Named Plaintiff's remaining indebtedness, the Named Plaintiff still owed a deficiency of more than fourteen thousand dollars (+$14,000). The deficiency in excess of fourteen thousand dollars (+$14,000) on a car that one year prior has sold for $21,316 and after illegally posting the Named Plaintiff's refunded credit disability premiums, confirms that the Defendants' entire repossession and disposition of the vehicles repossessed from the Named Plaintiff and Class Members was not commercially reasonable.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

55.     The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

56.     A constructive trust should be established over the funds that have been obtained by the Defendants as a result of the improper disposition of vehicles repossessed from the Named Plaintiff and Class Members. Such funds are traceable to the Defendants who are the current possessors of such funds.

57.     Defendants' collection of the funds from the improper disposition of the vehicles repossessed from The Named Plaintiff and Class Members was expressly prohibited by law and grossly unjust. The disposition funds are directly traceable to the Defendants. The Named Plaintiff and Class Members are entitled to the value of the funds obtained by the Defendants as a result of the Defendants' improper disposition of their vehicles.

58.     The Defendants' misappropriation of the payments refunded to the Named Plaintiff and Class Members was prohibited by law and grossly unjust. The