misappropriated funds are directly traceable to the Defendants. The Named Plaintiff and Class Members are entitles to the value of the refunded payments that the Defendants misappropriated from them.

59. If the Defendants are permitted to retain the disposition funds and refunded payment funds that were obtained as a result of the Defendants' illegal conduct, the Defendants will be unjustly enriched, to the detriment of the Named Plaintiff and Class Members. Accordingly, a constructive trust should be imposed over such funds until the Court has a full and complete record upon which to award such ill-gotten gains to the Named Plaintiff and Class Members.

## FIFTH CAUSE OF ACTION
### (Conversion)

60. The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

61. The Defendants' wrongful taking of the refunded unearned payments, such as refunded premiums from the credit life and credit disability insurance policies constitutes conversion of the property of the Named Plaintiff and Class Members to their own property. The Named Plaintiff and Class Members are the proper owners and possessors of the refunded payments. These payments were returned to the Named Plaintiff and Class Members, in care of the Defendants, by credit disability and credit life insurers. The Defendants took those sums without the authorization of the Named Plaintiff or Class Members. The Named Plaintiff and Class Members have been damaged by the Defendants' illegal conversion of the refunded payments that were the property of the Named Plaintiff and Class Members.

62. The Defendants did not have a security interest in the refunded payments, such as unearned credit life and credit disability premiums. The Defendants' "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" provides "Security: You are giving a security interest in the motor vehicle being purchased in this transaction." There is no mention of a security interest in refunded payments, such as refunded unearned credit life and credit disability premiums. Moreover, the United States Supreme Court has previously determined that the Federal Truth in Lending Act does not require that insurance premiums be described in the contract as the premiums are not subject to a security interest. *See, Anderson Brothers Ford and Ford Motor Credit Company v. Olga Valencia and Miguel Gonzales*, 452 U.S. 205, 68 L.Ed.2d 783, 101 S.Ct. 2266 (1981). Accordingly, those sums are the property of the debtors - the Named Plaintiff and Class Members in the present case.

63. The Defendants did not have a contractual right to the refunded payments such as unearned credit life and credit disability premiums that were returned to the Named Plaintiff and Class Members. The Defendants' "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" does not provide for the Defendants to obtain refunded payments such as the unearned credit life and credit disability premiums. Nevertheless, the Defendants took the refunded payments that were being returned to the Named Plaintiff and Class Members through the Defendants.

64. Despite the Defendants' lack of a right to possess or own the refunded payments, the Defendants converted those payments to their own use. At the inception of the contractual relationship between the Defendants and Class Members, including the Named Plaintiff, Class Members chose option(s) such as credit life insurance, credit

disability insurance, extended warranties, gap insurance, and other types of optional coverages. The Named Plaintiff and Class Members paid a single payment at the inception of their loan from the Defendants in order to pay for the credit life insurance, credit disability insurance, extended warranties, gap insurance, and other types of optional coverages. After disposition of the vehicles owned by the Named Plaintiff and Class Members, any unearned portions of the payments were refunded to the Named Plaintiff and Class Members by the party from whom they were purchased, such as the insurance company in the case of credit life and credit disability insurance. However, rather than mail the refunded payments directly to the Named Plaintiff and Class Members, the party from whom the optional coverage was purchased mails the refund to the Defendants. The Defendants then illegally apply the refund to the deficiency owed by the Named Plaintiff and Class Members after disposition of their vehicle.

65. The Named Plaintiff's case again provides the prototypical scenario concerning the conversion of refunded payments by the Defendants. As part of the purchase price for the Named Plaintiff's vehicle, the Named Plaintiff paid a single premium of $1336.08 for credit disability insurance, $1,163 for mechanical breakdown insurance, $468 for gap insurance, and additional sums for extended warranties and other optional coverages. The Named Plaintiff was issued Certificate Number GC 84107 showing that effective July 7, 2001 the Named Plaintiff had credit disability insurance for the sixty-six (66) month term of her loan from the Defendants. The Named Plaintiff's vehicle was repossessed on October 20, 2002 and disposed of shortly thereafter. Thus, the Named Plaintiff was entitled to a refund of roughly 77% of the premiums paid to the insurer because her insurance was terminated after approximately 23% of the planned

term of the credit disability insurance policy. The insurer refunded the unearned premiums from the Named Plaintiff's credit disability insurance policy after disposition of her vehicle. In keeping with protocol, the refunded premiums were sent to the Defendants. Rather than pass the funds along to their rightful owner – the Named Plaintiff – the Defendants converted the funds to their own property and used the funds to pay on the deficiency remaining after the sale of the Named Plaintiff's vehicle.

66. The Named Plaintiff and Class Members have been damaged by the Defendants' conversion of their refunded payments such as unearned credit life and credit disability insurance refunds. The Named Plaintiff and Class Members lost the refunded unearned payments that should have been returned to the Named Plaintiff and Class Members. The Defendants have been unjustly enriched by their wrongful conversion of the refunds that were the property of the Named Plaintiff and Class Members.

### SIXTH CAUSE OF ACTION
### (Breach of Contract)

67. The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

68. The "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" is a contract between the Defendants and Class Members, including the Named Plaintiff. Pursuant to this contract, the Defendants' only security interest is in the vehicle. The Defendants had a duty to comply with the terms of this contract that defined the rights and obligations of the Defendants and Class Members, including the Named Plaintiff. The contract did not provide a right for the Defendants to take the refunded payments, such as the Named Plaintiff's refunded unearned credit disability insurance premiums, that belonged to the Named Plaintiff and Class Members.

69. Although the Defendants had neither a contractual nor a legal right to the refunded payments, the Defendants nonetheless took the refunds that belonged to the Named Plaintiff and Class Members. The Defendants' misappropriation of the refunds belonging to the Named Plaintiff and Class Members was in breach of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement between the Defendants and Class Members, including the Named Plaintiff.

70. The Named Plaintiff and Class Members have been damaged by the Defendants' breach of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement. The Named Plaintiff and Class Members have lost the refunded payments that belonged to the Named Plaintiff and Class Members and have suffered other damages, all of which were proximately caused by the Defendants' breach of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement. The losses suffered by the Named Plaintiff and Class Members were the foreseeable result of the Defendants' breach of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement.

## SEVENTH CAUSE OF ACTION
(Breach of the Implied Terms of Good Faith and Fair Dealing)

71. The Named Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

72. In every contract there are implied therein the terms of good faith and fair dealing. The "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement between the Defendants and Class Members, including the Named Plaintiff, included the implied terms of good faith and fair dealing.

73. The implied terms of good faith and fair dealing required that the Defendants use good faith and fairness in the performance of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement. The terms of good faith require honesty when performing a contract with such terms implied into the contract. The terms fair dealing require that the Defendants deal fairly with the Named Plaintiff and Class Members in the performance of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement. By the conduct complained of herein, the Defendants violated the terms of good faith and fair dealing.

74. The Defendants failed to deal honestly with the Class Members, including the Named Plaintiff, in their performance of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement. The Defendants failed to properly notice the disposition of the vehicles repossessed from the Named Plaintiff and Class Members, failed to dispose of the vehicles in a commercially reasonable manner, and misappropriated the refunded payments, such as unearned credit life and credit disability insurance premiums that were the property of the Named Plaintiff and Class Members.

75. The Named Plaintiff and Class Members have been damaged as a result of the Defendants' breach of the implied terms of good faith and fair dealing. The Named Plaintiff and Class Members have lost the refunded payments and have incurred other damage as a result of the Defendants' breach of the duty of good faith and fair dealing that were implied terms of the "Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure" agreement between the Defendants and Class Members, including the Named Plaintiff.

## EIGHTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Other Special Duty of Trust/Confidence)

76. The Named Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

77. The Defendants' businesses are characterized by elements of public trust that subject the Defendants to more stringent standards of conduct than those normally arising out of contract. Defendants undertook to provide retail financing for the Named Plaintiff and Class Members. During the term of such financing, the Defendants and Class Members, including the Named Plaintiff, had a contractual relationship characterized by elements of mutual trust. As a result of this relationship of trust, the Defendants had a duty to act responsibly and as fiduciaries for the Named Plaintiff and Class Members. Defendants also undertook to provide advice concerning financing to the Named Plaintiff and Class Members.

78. Defendants held themselves out as highly skilled retail financing experts, creating the image of expertise, possessing the special knowledge and expertise needed to interpret and understand the complex and sophisticated financing documents. Defendants encouraged the Named Plaintiff and Class Members to rely on this special knowledge and expertise in the interpretation of the retail financing agreements drafted by the Defendants and entered into with the Named Plaintiff and Class Members.

79. Defendants had knowledge superior to that of the Named Plaintiff and Class Members concerning the retail financing agreements, disclosures and duties of the Defendants following repossession of vehicles. The relationship between Defendants, by and through its agents, and Class Members, including the Named Plaintiff, was calculated

and intended by Defendants to cause the Named Plaintiff and Class Members to repose confidence and trust in the Defendants. Defendants knew or should have known that the Named Plaintiff and Class Members placed this confidence and trust in the Defendants. Defendants accepted the confidence and trust reposed in them by the Named Plaintiff and Class Members. The Named Plaintiff and Class Members generally had no prior training, expertise or knowledge concerning retail-financing agreements. The Named Plaintiffs and Class Members relied solely upon the advice, recommendation and explanations provided by Defendants.

80. The "Motor Vehicle Retail Installment Sales Contract and Truth in Lending Disclosure" agreements that were entered into by the Defendants and Class Members, including the Named Plaintiff, were contracts of adhesion that were prepared by Defendants and were not the subject of negotiation and the Named Plaintiffs and Class Members did not possess equal bargaining power. As the drafters of the agreements, the Defendants clearly possessed special knowledge of the terms of the agreements and the contractual obligations and duties created by the agreements. As possessors of such special knowledge, the Defendants had fiduciary duties owed to the Named Plaintiff and Class Members with respect to implementation of any of the provisions in the agreements. Defendants manipulated such relationships of trust and confidence and used such trust and confidence to the advantage of the Defendants and to the detriment of the Named Plaintiff and Class Members.

81. As a result of the circumstances described above, the Defendants created a fiduciary relationship with the Named Plaintiff and Class Members and owed them the highest obligations of candor, full disclosure, good faith, loyalty, fair dealing and trust.

The Defendants breached these fiduciary duties and acted with gross, reckless and intentional disregard of the injury and risk of loss it inflicted on the Named Plaintiff and Class Members. As a result of the Defendants' failure to send the post-repossession notices required by the agreements and state statutes, the Defendants' failure to dispose of the vehicles repossessed from the Named Plaintiff and Class Members in a commercially reasonable manner as required by state statutes and the Defendants' misappropriation of refunded payments, such as unearned credit life and credit disability premiums following disposition of the vehicles repossessed from the Named Plaintiff and Class Members, Defendants breached their fiduciary duties to the Named Plaintiff and Class Members. As a direct and proximate result of this conduct, the Named Plaintiff and Class Members have been damaged in an amount to be determined at the trial of this action.

## NINTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

82. The Named Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

83. As stated above, the Defendants do not send proper notice of the disposition of vehicles repossessed from Class Members, including the Named Plaintiff, do not dispose of the repossessed vehicles in a commercially reasonable manner and misappropriate refunded payments, such as credit life insurance and credit disability insurance premiums after the sale of the vehicles repossessed from the Named Plaintiff and Class Members. The Defendants continue to dispose of collateral repossessed from Class Members without first sending proper notice. The Defendants also continue to dispose of vehicles repossessed from Class Members in a manner that is not commercially reasonable and continue to illegally obtain and possess refunded payments, such as

unearned credit life and credit disability insurance premiums that are the property of the Named Plaintiff and Class Members.

84. The Named Plaintiff, on behalf of herself and the Class, seeks a declaration of the rights and liabilities of the parties, including a judgment declaring that Defendants must provide all required post-repossession notices, dispose of repossessed vehicles in a commercially reasonable manner, discontinue the practice of taking refunded payments, such as unearned credit life and credit disability insurance premiums and return all refunded payments, such as unearned credit life and credit disability insurance premiums which have been collected by the Defendants. In short, the Named Plaintiff and Class Members seek to have the conduct described herein declared illegal and in violation of the contractual rights of the Defendants and Class Members.

85. The Named Plaintiff, for herself and on behalf of the Class, seeks injunctive relief enjoining the Defendants from failing to provide all required post-repossession notices, failing to dispose of repossessed vehicles in a commercially reasonable manner, and continuing the practice of taking refunded payments and ordering the return of all refunded payments misappropriated by the Defendants. The Named Plaintiff, for herself and on behalf of the Class, further seeks injunctive relief enjoining the Defendants from demanding additional deficiencies that remain after the disposition of the vehicles repossessed from the Named Plaintiff and Class Members by the Defendants.

86. The Named Plaintiff and Class Members have no adequate remedy at law. By reason of the foregoing, the Named Plaintiff and Class Members have been irreparably harmed and are entitled to declaratory and injunctive relief as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, The Named Plaintiff demands judgment against the Defendants for herself and the Class as follows:

1. Determining that the action is a proper class action and certifying an appropriate Plaintiff Class pursuant to Fed. R. Civ. P. Rule 23;

2. Awarding the Named Plaintiff and the Class compensatory damages in an amount to be determined at trial for the wrongful acts complained of;

3. Awarding the Named Plaintiff and the Class punitive damages in an amount to be determined at trial for the wrongful acts complained of;

4. Awarding the Named Plaintiff and the Class their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

5. Granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including reformation or rescission, and attaching, impounding or imposing a constructive trust upon, or otherwise restricting, the proceeds of Defendants' ill-gotten funds to ensure the Named Plaintiff and Class Members have an effective remedy; reforming the agreements between the Defendants and Class Members, including the Named Plaintiff; and enjoining Defendants from demanding deficiencies; and

6. Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted,

_____
David P. Meyer, Esq. (0065202)
Patrick G. Warner, Esq. (0064604)
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Arena District
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Counsel for the Named Plaintiff

## JURY DEMAND

The Named Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial by jury on all issues triable at law.

August 6, 2004

David P. Meyer, Esq. (0065202)
Patrick G. Warner, Esq. (0064604)
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Arena District
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Counsel for the Named Plaintiff