## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VICKI D. JENKINS,

      Plaintiff,

                                  Case No. C2-04-720

vs.                            Judge Edmund A. Sargus, Jr.

                                  Magistrate Judge Norah McCann King

HYNDAI MOTOR FINANCING CO.,

      et al.,

            Defendants.

### OPINION AND ORDER

This matter is before the Court for consideration of the Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants, Hyundai Motor America and Hyundai Motor Finance Company. Plaintiff, Vicki D. Jenkins,[1] opposes the Motion of Defendant Hyundai Motor Finance Company.[2] For the reasons that follow, the Motion of Defendant Hyundai Motor America is granted. The Motion of Defendant Hyundai Motor Finance Company is granted in part and denied in part.

---

[1]     Plaintiff has filed this putative class action individually and on behalf of others similarly situated. At this juncture, the Court has not ruled on the merits of class certification and nothing in this Opinion and Order should be construed to impact this future determination.

[2]     Plaintiff did not file an opposition to Defendant Hyundai Motor America's Motion to Dismiss.

**I.**

The following well-pleaded allegations are taken from the Complaint and construed as true for purposes of the Motions to Dismiss. In July of 2001, Jenkins purchased a new 2002 Pontiac Sunfire from Dennis Autopoint, an automobile dealer in the Columbus, Ohio area. The parties entered into a written conditional sales contract and Jenkins executed a "Motor Vehicle Retail Installment Contract" for purchase price of the automobile ($21,316.49) ("Contract"). In addition to financing the purchase price of the vehicle, Jenkins purchased and financed the cost of gap insurance ($468.00), credit disability insurance ($1,336.08), mechanical breakdown insurance ($1,163.00), and an extended warranty. As set forth in the Contract, Jenkins financed the credit insurance and the service contract and granted Dennis, *inter alia*, a security interest in all returned premiums from her disability insurance contract:

> Security. As security for your obligations under this contract, including any extensions, renewals or modifications of this contract, you grant to the Seller a security interest, as allowed by law, in (1) the vehicle and all equipment, accessories and parts installed in or attached to it, (2) all proceeds of such property, (3) the proceeds of any insurance policies on your life or health obtained in connection with this contract, and (4) if included in or added to the Amount Financed, the returned premiums of any insurance or service contract obtained in connection with this contract.

(Complaint, ¶ 15; Exh. 2.)

Dennis subsequently assigned the Retail Installment Contract to Hyundai Motor Finance Company ("HMFC.") HMFC is a wholly owned subsidiary of Hyundai Motor America ("HMA")[3] and is a national consumer finance company that provides credit through dealers to purchase and lease motor vehicles.

---

[3]     HMA is a distributor of Hyundai vehicles in the United States. (Complaint ¶ 4.)

After making payments for nearly a year, Jenkins became disabled in March, 2002. Jenkins submitted a claim under the credit disability insurance, requesting that the insurer, Classic Life Assurance Company ("Classic Life"), make her payments while she was disabled. Before Classic Life could process Jenkins' claim, however, Classic Life depended on HMFC to provide it with basic information. According to her Complaint, between March, 2002 and October, 2002, Jenkins contacted HMFC at least one time each month, and numerous times in many months, in an attempt to cause HMFC to provide the information to Classic Life so that her disability paperwork could be processed.

Jenkins alleges that HMFC failed to provide the information necessary for Classic Life to process her disability claim. She alleges that HMFC harassed her during this period in an attempt to make her pay her monthly installments. Jenkins became delinquent on her payments in April of 2002. It is undisputed that Jenkins defaulted on the Contract.

On October 20, 2002, HMFC repossessed her motor vehicle. On October 22, 2002, HMFC sent her a "Notice of Repossession and Right to Cure" ("Notice"). In the Notice, HMFC notified Jenkins that her vehicle had been repossessed because she had not made the required payments and that she had fifteen (15) days from the date of the Notice to pay the entire outstanding past-due amount along with the repossession expenses of $350. The only statement concerning possible post-repossession actions in the notice stated, "[I]f you are late in making your payments or otherwise in default again during the term of your contract, we may exercise our rights without sending you another notice like this one." (Complaint, Exh. 3.) No other notice was sent to Jenkins prior to the sale of her vehicle at an auto auction.

On January 16, 2004, after the auction of her vehicle, HMFC notified Jenkins that she had a deficiency balance of approximately $14,000 after subtracting the amount from the sale at auction. HMFC notified Jenkins that it intended to collect on that deficiency.

Plaintiff filed a class action Complaint on August 6, 2004. In Count One, Jenkins alleges that HMFC failed to comply with the Ohio Retail Installment Sales Act, Ohio Rev. Code § 1317.01 *et seq.* ("RISA") through their actions after repossession of Jenkins' vehicle. In particular, Jenkins contends that HMFC failed to provide the mandatory notice required by RISA and failed to dispose of Jenkins' vehicle in a commercially reasonable manner. Jenkins alleges that she was never notified "of the time and place of such sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale" as required by RISA, Ohio Rev. Code § 1317.16. Jenkins also maintains that, although prohibited by RISA, as a result of HMFC's failure to comply with RISA's notice requirements, HMFC still proceeded with collection efforts for the deficiency balance owing after the post repossession sale of the vehicle.[4]

In Count Two, Jenkins alleges that HMFC's actions violated the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.* ("CSPA") and the Ohio Uniform Commercial Code provisions concerning the disposition of the secured collateral, Ohio Rev. Code § 1309.610 *et seq.*

---

[4] Jenkins notes that the conditional sales contract under which Jenkins purchased her vehicle ("Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure") was on a pre-printed, standard form that is routinely used by HMFC. The Motor Vehicle Retail Installment Contract and Truth in Lending Disclosure agreement provides that the holder of the contract, here HMFC, will not dispose of a repossessed motor vehicle and seek to recover a deficiency balance without first giving the borrower notice as provided by law. Jenkins maintains that the terms of this provision contractually obligate HMFC to provide a post-repossession notice that complies with the law.

("UCC"). Jenkins contends that HMFC's alleged failure to send the required notice and attempts to collect the deficiency after auctioning Jenkins' vehicle were unfair and unconscionable and violated the CSPA. Similarly, Jenkins contends that HMFC's failure to provide the proper notice was a violation of Ohio's UCC which also sets forth specific requirements for the content of repossession notices.

Jenkins maintains that HMFC also violated the CSPA by misrepresenting that HMFC had a right to the refunded unearned credit life insurance, credit disability insurance premiums and other premiums paid by Jenkins. HMFC advised Jenkins that they had applied sums that were refunded to her from Classic Life to the outstanding balance on her loan following the disposition of Jenkins' vehicle. Jenkins alleges that HMFC was not entitled to these sums and therefore illegally converted the refunded sums when it applied them to the outstanding balance. She also asserts common law claims of unjust enrichment, breach of contract, breach of the duty of good faith and fair dealing and breach of fiduciary duty. HMFC and HMA move for dismissal of all claims in the Complaint.

## II.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant, by motion, to raise the defense of a plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also McClain v. Real Estate Bd. of Hew Orleans, Inc.*, 444 U.S. 232 (1980). The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467

U.S. 69, 73 (1984).

All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While the Court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshal*, 898 F.2d 1196, 1199 (6th Cir. 1990), the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

Because a motion under Fed.R.Civ.P. 12(b)(6) is directed solely to the complaint itself, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Fed.R.Civ.P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Dunn v. State of Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982).

## III.

### A.    Defendant Hyundai Motor America's Motion to Dismiss

Defendant HMA moves to dismiss the Complaint because it was not a party to the Contract, did not send the allegedly defective notice and is not specifically alleged to have taken any of the actions that form the bases of Jenkins' causes of action.  HMA notes that Jenkins alleges that HMFC, not HMA, failed to comply with the statutory notice requirements governing disposition of her vehicle after repossession, and that HMFC, not HMA, wrongfully applied the refunded unearned credit insurance and service contract premiums to her outstanding balance.  Further, Jenkins did not oppose HMA's Motion to Dismiss.  The Court finds that the Motion to Dismiss HMA should be **GRANTED**.

### B.    Defendant Hyundai Motor Finance Company

#### 1.    Count One - Violation of RISA

Jenkins alleges in Count One that HMFC violated RISA, Ohio Rev. Code § 1317.16, by failing to give her proper notice of the intended disposition of the vehicle, and, as a result, the disposition was not done in a commercially reasonable manner  ("RISA Notice Claim").  Jenkins also alleges that HMFC violated RISA, Ohio Rev. Code § 1317.12, by failing to make the collateral available for inspection despite her requests ("RISA Inspection Claim").  Based on these RISA violations, Jenkins contends that HMFC was not entitled to collect or attempt to collect the deficiency balance.

HMFC contends that it is entitled to judgment on both of Jenkins' RISA claims, in particular, (1) her RISA Notice Claim under Section 1317.16 for failure to give proper notice of the intended disposition of the vehicle and (2) her RISA Inspection Claim under Section 1317.12 for failure to

make the collateral available for inspection.  HMFC contends that the entirety of Plaintiff's First

Cause of Action under RISA should be dismissed because RISA does not provide a right of action

for the acts alleged.

As to Jenkins' Inspection Claim, Section 1317.12 provides in relevant part:

Notwithstanding any agreement to the contrary in a retail installment contract made on or after the effective date of this section, if collateral for a consumer transaction is taken possession of by the secured party on default, the secured party shall, within five business days after taking possession, send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure the default. Any notice required by section 1309.611 or 1317.16 of the Revised Code may be included as part of the notice required by this section. **A secured party who disposes of the collateral without sending notice required by this section may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment.**

\* \* \* \*

During the period between the time a secured party retakes possession of the collateral and the expiration or exercise of the debtor's right to cure the default, the secured party shall make the collateral available for inspection by the debtor during reasonable hours.

Ohio Rev. Code § 1317.12 (emphasis added).

As to Jenkins' Notice Claim under RISA, Section 1317.16 provides as follows:

(A) A secured party whose security interest is taken pursuant to section 1317.071 of the Revised Code may, after default, dispose of any or all of the collateral only as authorized by this section.

(B) Disposition of the collateral shall be by public sale only. Such sale may be as a unit or in parcels and the method, manner, time, place, and terms thereof shall be commercially reasonable. At least ten days prior to sale the secured party shall send notification of the time and place of such sale and of the minimum price for which such collateral will be sold, together with a statement that the debtor may be held liable for any deficiency resulting from such sale, by certified mail, return receipt requested, to the debtor at the debtor's last address known to the secured party, and to any persons known by the secured party to have an interest in the collateral. In addition, the secured party shall cause to be published, at least ten days prior to the sale, a notice of such sale listing the items to be sold, in a newspaper of general

-8-

circulation in the county where the sale is to be held.

(C) Except as modified by this section, sections 1309.610, 1309.611, 1309.615, 1309.617, and 1309.624 of the Revised Code govern disposition of collateral by the secured party.

Ohio Rev. Code § 1317.16.

### a. Section 1317.16 - Notice Claim and Effect of 2001 Amendments

HMFC argues that the Ohio legislature repealed a cause of action and remedy for Jenkins' RISA Notice Claim. Plaintiff Jenkins argues that RISA provides a right of action and relies on *Howard v. SunStar Acceptance Corp.*, Case No. 00AP-70, 2001 WL 481936 (Ohio App. 10 Dist. May 8, 2001) for the proposition that the Ohio courts have determined that a remedy exists for violations of Sections 1317.16. HMFC counters that Jenkins' reliance on *Howard* is misplaced because *Howard* was decided before Section 1317.16 was amended in 2001 to delete any reference to the penalty provisions of in the Uniform Commercial Code sections of the Ohio Revised Code.

The Ohio legislature amended Chapter 1309, the State of Ohio's version of the UCC, in July 2001, adopting many of the 1999 revisions to the national Uniform Commercial Code. To accommodate changes to the State's UCC, the legislature also modified some of the language in RISA, including Ohio Rev. Code § 1317.16(C).

Prior to the 2001 amendment, RISA Section 1317.16(C) referenced the penalty provisions of the Ohio UCC and provided as follows: "Except as modified by this section, section 1309.47 [now, *inter alia*, Section 1309.626] of the Revised Code governs disposition of collateral by the secured party."[5] The amended Section 1317.16(C) now provides as follows: "Except as modified

---

[5] With the amendments, the multiple provisions of penalty section of the state UCC, Section 1309.47, were distributed among numerous and separate statutory subparts, including 1309.610, 1309.611, 1309.615, 1309.617, 1309.624 and 1309.626.

by this section, sections 1309.610, 1309.611, 1309.615, 1309.617, and 1309.624 of the Revised Code govern disposition of collateral by the secured party." Notably, the amendment does not contain a reference to Section 1309.626, the penalty section of the UCC that relates to actions involving disputes over the entitlement to a deficiency judgment.

The omission to any reference to Section 1309.626 leaves open the question as to what rule should be applied in deciding the remedy available to debtors when secured creditors violate the notice requirements in Ohio Rev. Code § 1317.16. HMFC argues that the omission results in an absolute bar to recovery for defective notices and failure to permit inspections prior to a commercial sale.

Ohio Rev. Code § 1317.16 does not contain an explicit enforcement mechanism on its face for the violation of its requirements, including proper notice. Nevertheless, as Jenkins argues, the fact that the legislature intended a remedy for Section 1317.16 violations may be deduced from the fact that the Ohio legislature amended RISA in 1972 to include pro-consumer Sections 1317.12 and 1317.16.[6]

Prior to the 2001 amendments, Ohio courts frequently made the determination that the rule awarding damages for Ohio Rev. Code § 1309.47(C) extended to violations of Section 1317.16. *E.g., Howard*, 2001 WL 481936 at *8; *Ray S. Livingston Auto Sales v. Cole*, 1991 WL 54821 (Ohio

---

[6] For purposes of this analysis, the Court does not attempt to divine the state legislature's intent in passing RISA. The Court notes, however, that commentators have indicated that the legislature's stated purpose for amending the statute was to "restrict certain rights and outlaw certain practices which have been abused by some retail sellers and financial institutions, and to afford the consumer more effective remedies and more adequate notice of his rights than is currently provided for in Ohio law." *Analysis of Bills of the Ohio General Assembly*, 109 Gen. Assembly, H.B. 350, House & Senate Readings 2-24-72, 3-12-72, 6-8-72, 6-13-72 and 6-14-72; *see* Jackson, Stephanie M., *Ohio Consumer Law, Security Interests; Repossession and Sale*, § 19:80 (Legal Aid Society of Cleveland & Ohio State Legal Servs. Assoc., 2004).

Ct. App. 7th Dist. April 11, 1991); *Jones v. Cynet*, 2002 WL 1041829 (Ohio Ct. App. 8th Dist. May 23, 2002). Defendant HMFC contends, however, that these cases are inapposite because they were decided before the Ohio legislature amended Section 1317.16 and eliminated a cross-reference to a remedy or penalty provision.

The Court finds that this diversity case is governed by Ohio substantive law and that no published Ohio authority deals with the question of whether the amendments to Section 1317.16 repealed the right to recovery for notice and inspection violations. Therefore this Court is obligated, under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), to determine what Ohio courts would do if presented with this question. *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999).

The Court determines that Ohio courts would continue to provide damages for violations of Ohio Rev. Code § 1317.16. There is a strong line of precedent enforcing these violations and Ohio courts have consistently awarded damages for infractions of Ohio Rev. Code § 1317.16. The legislature has evidenced its concerned over the decades about potential consumer abuse and crafted two notice sections designed to give debtors more effective remedies. Further, HMFC's position that the 2001 amendments repealed the penalty for defective notices would effectively prevent any remedy for a violation of Section 1317.16. The cannons of construction provide that statutes should be construed in a manner that does not render any provision inoperable or surplusage. *Appeal of Crabtree*, 11 Ohio App. 114, 228 N.E.2d 923 (Ohio App. 1966). Further, it is the duty of the courts, if the language of the statute reasonably permits, to find a remedy for every right provided, because the "General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences." *State v. Parks*, 13 Ohio App. 3d 85, 468 N.E.2d 104 (Ohio Ct. App. 10th

Dist. 1983). For these reasons, HMFC's Motion is **DENIED** in this respect.

### b. Section 1317.12 - Failure to Permit Inspection

HMFC argues that Plaintiff has not stated a claim for a violation of Section 1317.12 because the language of the statute demonstrates that there is no cause of action for the failure to allow the vehicle to be inspected. HMFC contends that the remedy in Section 1317.12 applies only for the failure to give the notice, which, it maintains, is not at issue here because HMFC actually sent a Notice of Repossession and Right to Cure. HMFC argues that Section 1317.12 simply does not provide a remedy for failing to permit the consumer an opportunity to inspect the collateral. The Court agrees.

Unlike the historical efforts of the Ohio courts to enforce the notice violations of Section 1317.16, it appears that no cases have permitted a cause of action for similar inspection claims. Jenkins has not come forward with support for this proposition and the Court's independent review has uncovered none. Moreover, as HMFC points out, Ohio courts have declined to create remedies where none are expressly provided with respect to violations of other RISA sections. *Johnson v. Commerce Motors, Inc.*, 106 Ohio App. 376, 151 N.E.2d 656, 660 (Oho App. 8th Dist. 1958)(holding that a violation of R.C. 1317.02 does not allow for cancellation of purchase as a remedy); *Payton v. Auto Depot, Inc.*, 1990 WL 93125 (Ohio App. 11th Dist. June 29, 1990)(holding violation of R.C. § 1317.06 does not allow voiding of contract as a remedy). Accordingly, Defendant's Motion to Dismiss Plaintiff's inspection claim under Section 1317.12 is **GRANTED**.

### b. Statute of Limitations

HMFC also argues that, even if the Court finds that Jenkins has a cause of action, the claims under RISA are bared because they were not timely filed. HMFC contends that remedies afforded

under RISA are penalties, and therefore, the statute of limitations for a RISA claim is one year pursuant to Ohio Rev. Code § 2305.11(A). Because Jenkins alleges that HMFC unlawfully sold her car on November 22, 2002, her Complaint, filed August 6, 2004, is untimely.

RISA does not specify a statute of limitations. The Court therefore turns to Chapter 2305 of the Revised Code for the appropriate limitations period. *Cosgrove v. Williamsburg of Cincinnati Management Company Inc.*, 70 Ohio St.3d 281, 282, 638 N.E.2d 991 (Ohio 1994).

Ohio Rev. Code § 2305.07 provides in relevant part that, "an action upon . . . a liability created by statute other than a forfeiture or penalty . . . shall be brought within six years after the cause of action accrued." A one-year limitation period applies under Rev. Code § 2305.11 to "an action upon a statute for a penalty or forfeiture." Thus, the Court must determine whether RISA creates a statutory liability or whether it is a statute for penalty or forfeiture.

Most legislation "'has a dual purpose of remedying harm to the individual and deterring socially inimical business practices. . . . Therefore, the Court must determine whether *the primary purpose* of the Act is more like a penalty or a remedial action . . . .'" *Cosgrove*, 70 Ohio St.3d at 288, 638 N.E.2d 991 (quoting *Porter v. Household Finance Corp. of Columbus*, 385 F. Supp. 336, 340 (S.D. Ohio 1974)).

HMFC cites *Turnoff v. May Co.*, 531 F.2d 1357, 1326 (6th Cir. 1976), in support of its position. In *Turnoff,* the Court of Appeals for the Sixth Circuit noted, in dicta, that the statute of limitations for a RISA claim was one-year for a "penalty or forfeiture,"as set forth at Ohio Rev. Code § 2305.11(A). The Sixth Circuit, noted, without analysis, that the plaintiffs' "extended acquiescence barred [their] complaint, in view of the one year statute of limitations, O.R.C. 2305.11." *Id.* at 1326. The issue of the proper limitations period, however, was not before the court.

-13-

In the years since *Turoff*, the Sixth Circuit and the courts of Ohio have taken a different view. In *Martin v. First Nat. Bank of Massillon*, 573 F.2d 958 (6th Cir. 1978), for example, the court noted with approval the district court's holding that a claim under RISA is not one for "penalty or forfeiture." The court noted that, because RISA speaks in terms of "unenforceability," the one-year statute of limitations was inapplicable and Ohio's more generous six-year statute of limitations applied. *Id.*; *accord Pyles v. Johnson*, 2000 WL 33156509 (Ohio C.P. June 5, 2000); *Car Now Acceptance Co. v. Block*, 2002 WL 32001272 (Ohio C.P. 2002); *Northshore Auto Financing, Inc., v. Block*, 2003 WL 21714583 (Ohio Ct. App. 8th Dist. 2003).[7]

Based on the foregoing, Jenkins claims under RISA were filed within the time permitted by the statute of limitations. HMFC's Motion to Dismiss on this ground is therefore **DENIED**.

## 2. Consumer Sales Practices Act ("CSPA")

In her Second Cause of Action, Jenkins alleges that HMFC violated CSPA, directly and indirectly, through underlying violations of RISA and the Ohio UCC by failing to give proper notice of the disposition of the vehicle and by selling the vehicle in a commercially unreasonable manner. Jenkins also alleges that HMFC's attempt to collect the deficiency owed without having sent proper post-repossession notices constitutes a violation of RISA and the Ohio UCC, and is a deceptive act prohibited under CSPA. She also alleges that reporting the deficiency to the credit bureaus was an unfair and deceptive practice prohibited under CSPA. HMFC asserts, however, that CSPA is limited in scope and applies to acts of a "supplier" in a consumer transaction. It maintains that it is not a

---

[7]    The cases cited by HMFC, *Ralston v. Chrysler Credit Corp.*, 1999 WL 769564 (Ohio App. 6th Dist. Sept. 30, 1999) and *Elsea, Inc. v. Stapleton*, 1998 WL 391943 (Ohio App. 4th Dist. July 2, 1998) are not persuasive. The *Ralston* court made only passing reference to lower court's determination that one-year statute of limitations applied and the *Elesa* court addressed a separate issue of whether counterclaims were exempted from the statute of limitations.

supplier and was instead a mere assignee of Jenkins' contract from her vehicle supplier– Dennis Autopoint.

Ohio Revised Code § 1345.02(A), which prohibits unfair and deceptive practices, is limited by its terms to acts of a "supplier":

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

Section 1345.01(C) defines a "supplier" as follows:

> "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

In this case, Jenkins alleges that she purchased her vehicle at and financed it through Dennis Autopoint on July 7, 2001.   She maintains in her Memorandum in Opposition that HMFC was the "holder" of the Contract– a term mentioned generically but not defined in the Contract– and that HMFC therefore entered into the Contract simultaneously with Dennis Autopoint and Jenkins. The Court concludes that this theory is not supported.

In this case, Dennis Autopoint assigned the Contract to HMFC after Jenkins executed it on July 7, 2001. As Exhibit 2 to Jenkins' Complaint shows, the Assignment provision of the Contract was not executed at the time of the original Contract.  The Assignment provision clearly envisions that Dennis Autopoint would subsequently sell, assign and transfer all of its rights under the Contract to HMFC, subject to other contractual arrangements between Dennis Autopoint and HMFC. Jenkins has failed to demonstrate that HMFC was anything other than an assignee under the Retail Installment Contract.

"[A] mere assignee of the installment obligation is not a supplier within the meaning of R.C.

-15-

1345.01(C)." *Dartmouth Plan, Inc. v. Haerr*, 1990 WL 197884 (Ohio App. 3d Dist. December 4, 1990); *see also Hardeman v. Wheels, Inc.*, 565 N.E.2d 849 (Ohio App. 12th Dist. 1988). Accordingly, an assignee of the contract who provided financing for the supplier is not subject to CSPA, and in particular, Ohio Rev. Code § 1345.03.

*Martin v. General Motors Acceptance Corp.*, 160 Ohio App. 3d 19, 825 N.E.2d 1138 (Ohio App. 7th Dist. 2005), is instructive. The court determined that GMAC, as the secured lender, was not a "supplier" under CSPA. According to the court, CSPA "does not apply to GMAC . . . R.C. 1345.03 applies to 'consumers' and 'suppliers' who enter into 'consumer transactions.' GMAC is not a 'supplier' because it is not the seller. [The auto dealer] is the seller." *Martin*, 160 Ohio App. 3d at 28, 825 N.E. 2d at 1147. In this case, HMFC is similarly not a supplier.

Alternatively, Jenkins contends that HMFC is a supplier, and hence subject to CSPA, as a result of its engaging in the business of enforcing or attempting to enforce the collection of a debt in a consumer transaction. In effect, Jenkins contends the HMFC is a collection agency. Jenkins cites *Liggins v. May Co.*, 373 N.E.2d 404 (Ohio C.P. 1977), for the proposition that "[a] person who engages in the business of enforcing or attempting to enforce such claim is a 'supplier' as defined at R.C. 1345.01(C)." *Id.* at 405-06.

In *Liggins*, the court of common pleas found that CSPA applied to claims against Professional Services Unlimited, Inc., a "collection agency [that] sent the plaintiff two debt collection or 'dunning' notices on behalf of the May Company. . . ." *Id.* at 405. *Liggins* is distinguishable from the case at bar because HMFC is not a collection agency and was not hired to collect debts on behalf of Dennis Autopoint. HMFC was attempting to collect its own debt, not the debt of the supplier, Dennis Autopoint. As discussed by the court of appeals in *Dartmouth Plan*,

-16-

"the contract obligation was not assigned to Dartmouth for enforcement, but as a purchase of a security by it in its general business practice." 1990 WL 197884 at *2. Similarly, HMFC was not hired to enforce or collect the debts but received the rights under the Contract by assignment.

HMFC, as the secured lender, is not a supplier. Jenkins' claims under CSPA against HMFC fail as a matter of law. HMFC's Motion to Dismiss Jenkins' CSPA claim is therefore **GRANTED**.

### 3. Ohio Uniform Commercial Code ("UCC")

HMFC also alleges that Jenkins' Third Cause of Action under the Ohio UCC is time-barred. Jenkins alleges that the alleged defective notice and low-auction sale price render the disposition of the vehicle commercially unreasonable under Ohio Rev. Code §§ 1309.610-614. HMFC again contends that the claim is controlled by Ohio Rev. Code § 2305.11(A), the one-year statute of limitations governing actions for penalties or forfeitures. HMFC maintains that the purpose of Section 1309.625 is to penalize noncompliance with the statute, not to compensate injured consumers.

Ohio Rev. Code § 1309.625 provides the remedies available for to a debtor when the secured party fails to comply with the article. The relevant provisions specify that the secured party is liable for any loss caused by its non-compliance with the article:

(B)     Subject to divisions (C), (D), and (F) of this section, a person is liable for damages in the amount of any loss caused by a failure to comply with this chapter. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

(C)     Except as provided in section 1309.628 of the Revised Code:

(1)     A person who, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under division (B) of this section for its loss; and

-17-

> (2)　If the collateral is consumer goods, a person who was a debtor or a secondary obligor at the time a secured party failed to comply with sections 1309.601 to 1309.628 of the Revised Code may recover for that failure in any event an amount not less than the credit service charge *plus ten per cent of the principal amount of the obligation or the time-price differential plus ten per cent of the cash price.*

Ohio Rev. Code § 1309.625(emphasis added).

Like RISA, the Ohio UCC and, in particular, Ohio Rev. Code § 1309.625 for a commercially unreasonable sale, does not specify a statute of limitations. The Court therefore again turns to Chapter 2305 of the Revised Code for the appropriate limitations period. *Cosgrove,* 70 Ohio St.3d at 282, 638 N.E.2d 991. Thus, the issue once again becomes whether the primary purpose of Ohio Rev. Code § 1309.625 is more like a penalty or a remedial action, and, more specifically, whether it creates a statutory liability or is a statute for penalty or forfeiture.

*Kruse v. Voyager Insurance Cos.,* 72 Ohio St. 3d 192, 648 N.E.2d 1370 (Ohio 1995), makes clear that the statutory minimum damages of Rev. Code § 1309.625(C)(2)[8] are available to a debtor whenever a secured party fails to provide proper notice of sale. In describing the damages available to a *consumer* under this Section, the Ohio Supreme Court found:

> The statutory award cannot really be characterized as compensatory damages, because the amount of the award is unrelated to the degree of harm suffered, and is also unrelated to the actual degree of wrongdoing by the secured party. The award is more in the nature of a punishment imposed upon the secured party to ensure that procedures for disposition of the collateral are strictly complied with when the collateral is a consumer good.

*Kruse,* at 194. The consumer-goods portion of the statute, in particular, 1309.625(C)(2), is penal in nature. "This sentence is a penalty– a "minimum recovery" . . . – and the consumer is entitled to

---

[8]　Section 1309.625(C)(2) was formerly Rev. Code § 1309.50(A) before the 2001 amendments to the State UCC were made to come into alignment with the national UCC.

it even if he has not suffered a penny's loss.  Furthermore, if the court denies a deficiency judgment, the debtor is still entitled to the full recovery of the penalty . . . ."  James J. White & Robert S. Summers, *Uniform Commercial Code*, § 34-19 (4th Ed. 1995)(interpreting UCC 9-507).

An aggrieved consumer, however, is not *limited* to the pecuniary damages available under Section 1309.625(C)(2).  The consumer has the option of recovering actual damages and minimum statutory damages amount under RC § 1309.625(B) and RC § 1309.625(C). Both types of damages are available to consumer debtors. Rev. Code § 1309.625(B) provides for actual damages in the amount caused by the secured party's failure to comply with disposition pursuant to Chapter 1309. In the case of consumer debtors, Rev. Code § 1309.625(C)(2) provides for a minimum statutory amount to be awarded to them.

Further, Ohio Rev. Code § 1301.06(A) provides:

The remedies provided by Chapters . . . 1309.. . .of the Revised Code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed, but neither consequential or special nor penal damages may be had except as specifically provided in those chapters or by other rule of law.

The Court concludes that the remedy provisions of the Ohio UCC set forth at Section 1309.625 include both remedial and penal/forfeiture aspects.  As such, the six-year statute of limitations of Ohio Rev. Code § 2305.07 applies, and the claim is not time barred.  HMFC's Motion to Dismiss the Ohio UCC claims is therefore **DENIED**.

### 4.    Claims Relating to Refunds

Jenkins' Fourth, Fifth, Sixth, Seventh and Eighth causes of action under common law theories of unjust enrichment, conversion, breach of contract, breach of the duty of good faith and fair dealing and breach of fiduciary duty, respectively, are based on the premise that HMFC

-19-

wrongfully applied the refunds of the credit insurance and service contract premiums to her outstanding loan balance after disposition of the vehicle.

HMFC argues that each of these claims should be dismissed for failure to state a claim upon which relief may be granted.  HMFC contends that Jenkins expressly granted a security interest in "the returned premiums of any insurance or service contract obtained in connection with this Contract." (Complaint ¶ 15, Exh. 2.)  The contract is otherwise silent as to how these proceeds should be applied.

The Ohio Supreme Court has held as follows:

> A creditor which holds a security interest in the proceeds of a refund from cancellation of an automobile service contract financed contemporaneously with an automobile does not commit conversion, fraud, or breach of contract when it applies the refund proceeds to reduce the principal amount due on the loan.

*Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, Syl. ¶ 3, 519 N.E.2d 363 (Ohio 1988).  In *Blon*, the terms of the service contract required, upon notice of cancellation as given by the Blons, a full refund to be issued by the warranty provider to the creditor-bank and Blons as joint payees. The purchase and security agreement was silent regarding the policy refunds, other than providing a security interest to the creditor-bank in the refunds.  The court determined that the bank had applied the refund for the benefit of the debtors and that the prepayment of the loan principal reduced the number of total loan payments due on the note.  On these facts, the Ohio Supreme Court found no prejudice to the plaintiffs.

Here, Jenkins' claim, properly characterized, is that she purchased the disability insurance, that HMFC was fully aware that she was disabled and trying to qualify for the insurance but still HMFC wrongfully repossessed her car.  Jenkins does not merely claim that HMFC breached the

contract by applying the refund proceeds to reduce the principal amount due. According to the Complaint, Jenkins purchased credit disability insurance for a term of 66 months through the creditor, HMFC, and, thereafter, became disabled and unable to make payments on the vehicle as required. HMFC was aware of the disability and Jenkins' requests for benefits under the insurance plan. Jenkins asserts that HMFC refused to assist her by providing the necessary information to Credit Life. Whether or not this constitutes a breach of the contract is a matter of proof. At this point, however, Jenkins has asserted a claim sufficient to withstand HMFC's Motion to Dismiss. HMFC's Motion to Dismiss these claims on this basis, therefore, is **DENIED**.[9]

### 5.    Breach of Fiduciary Duty

In her Eighth Cause of Action, Jenkins alleges that HMFC owed her a fiduciary relationship. She alleges that HMFC breached this purported fiduciary relationship by failing to send proper post-repossession notices, failing to dispose of the vehicle in a commercially reasonable manner and by applying unearned premium balances to her loan balance. HMFC argues that the breach of fiduciary duty claim should be dismissed because, as her creditor, HMFC did not owe her, as the debtor, a fiduciary duty as a matter of law.

The relationship between a debtor and creditor, without more, is not generally "a fiduciary one, but is one governed by freedom on contract." *Needham v. The Provident Bank*, 110 Ohio App.3d 817, 675 N.E.2d 514 (Ohio App. 8 Dist.,1996). A fiduciary relationship may be created out of an informal confidential relationship "only when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d

---

[9]    To the extent that the remainder of HMFC's arguments for dismissal of Jenkins' common law claims depends on HMFC's position that it had an unqualified and unconditional right to apply refunded premiums to the Contract balance, those arguments likewise fail.

320 (Ohio 1979).

Jenkins asserts that her breach of fiduciary duty claim is valid because HMFC "touted and sold" the credit disability insurance to Jenkins, thus creating a special relationship of trust. This argument, however, is not supported by case law. Jenkins relies on *Crow v. Fred Martin Motor Co.*, 2003 WL 1240119 (Ohio App. 9 Dist. March 19, 2003), in which a purchaser of a vehicle attempted to buy credit disability insurance, but was disapproved due to a heart condition. The buyer was unaware for a year that her insurance application had been denied. The insurance company returned the premiums to the car dealer, who kept the funds and failed to reimburse the buyer. Under these circumstances, the court found that there was "an informal trust relationship" because the dealer held her money in trust, not as a result of the creditor-debtor relationship. *Id.* at *3.

Here, Jenkins has not demonstrated that her business relationship with HMFC created a special trust or confidence and has therefore failed to state a claim for breach of fiduciary duty. HMFC's Motion to Dismiss this claim is therefore **GRANTED**.

**6. Declaratory and Injunctive Relief Claims**

Finally, HMFC argues that Jenkins' causes of action for declaratory and injunctive relief should be dismissed. To the extent HMFC argues that Jenkins' claims for declaratory and injunctive relief must be dismissed because she has failed to state underlying causes of action, such argument fails as to the claims that survive HMFC's Motion to Dismiss.

HMFC otherwise argues that the claims fail because Jenkins lacks standing to obtain the declaratory and injunctive relief she requests here because the violations of which she complain have already occurred. HMFC essentially agues that Jenkins cannot show the possibility of future or irreparable harm. This argument is premature as it relates to the remainder of the putative class and

-22-

is best addressed in the context of determining whether there are questions of law or fact common to the class during the class certification stage under Federal Rule of Civil Procedure 23.  At this juncture, the Motion to Dismiss the claims for declaratory and injunctive relief will be **DENIED WITHOUT PREJUDICE**.

**IV.**

For the foregoing reasons, Defendant Hyundai Motor America's Motion to Dismiss (Doc. # 7) is **GRANTED**.  Defendant Hyundai Motor Finance Company's Motion to Dismiss (Doc. # 9) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

_9-30-2005_
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**