### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

**Vicki D. Jenkins**, individually and on behalf of all similarly situated persons,

       Plaintiff,

       **v.**

**Hyundai Motor Finance Company**,

       Defendant.

**Case No. 2:04-CV-720**

**Judge Edmund A. Sargus, Jr.**

**Magistrate Judge Norah McCann King**

---

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION FOR CLASS CERTIFICATION

Plaintiff Vicki Jenkins' ("Jenkins") seeks to certify a Class consisting of all individuals who were the victims of Hyundai Motor Finance Company's ("HYUNDAI") failure to issue the statutory post-repossession notice of intent to dispose of the vehicles financed by HYUNDAI (the "Class" or "Class Members").[1]

As a result of the failure to properly issue the statutory notices, HYUNDAI's repossession and disposition of Class Members' motor vehicles, that served as collateral for HYUNDAI's loans, violated the Ohio Retail Installment Sales Act (and corollary "RISA" statutes in numerous other states) and Ohio's U.C.C. Article 9 Secured Transactions Statute (and nearly uniform statutes in a number of other states).[2] The uniformity of the applicable laws and the uniform manner in which HYUNDAI violated those laws by failing to issue the statutory

---

[1] The Class that the Plaintiff seeks to certify in this case excludes those consumers residing in the State of California who were issued a pre-disposition notice by HYUNDAI. On April 15, 2005, approximately eight (8) months following the filing of the instant action, a California resident filed a putative class action in California State Court against Hyundai on behalf of California residents who receive defective statutory notices from HYUNDAI. A motion to certify the California-only class was filed on March 23, 2007.

[2] .*See,* Plaintiff's Motion to Compel Exhibit 1, Document 47.

post-repossession notice of intent to dispose of the vehicles makes this an ideal case for class treatment.

The RISA type statutes applicable to this case require notice to the debtor of the intent to dispose of the repossessed collateral while the U.C.C. statutorily requires the creditor to notify the debtor of certain information concerning the disposition of the collateral. HYUNDAI failed to provide the statutorily mandated notices after repossessing the vehicles belonging to Jenkins and Class Members. Since Hyundai failed to comply with its statutory notice requirements, it is liable to the Class Members. Indeed, the failure to certify the proposed class would affectively preclude thousands of financially vulnerable consumers from obtaining the statutory relief to which they are entitled as a result of HYUNDAI's failure to comply the law.

Given the uniformity of the actions of HYUNDAI and the applicable statutes, the four requirements of Rule 23(a) and one or more of the alternative requirements of Rule 23(b) are easily satisfied in this case. As required by Rule 23(a), there are numerous Class Members (numerosity), who were subjected to the same wrongful acts by HYUNDAI (commonality), whose claims are typical of the claims of other Class Members (typicality) and whose claims will be vigorously prosecuted by the more than adequate class representative, Jenkins (adequacy). As required by Rule 23(b)(3), there are common questions of fact and law at the very heart of this case (predominance) and the class action procedural device is the only effective way to resolve the claims of Jenkins and other Class Members (superiority).

## I.     FACTS PERTINENT TO CLASS CERTIFICATION

Jenkins' facts are similar or identical to those of other Class Members.  On or about July 7, 2001, Jenkins purchased a new 2002 Pontiac Sunfire ("Sunfire").[3]  To purchase the Sunfire, Jenkins entered into a "Motor Vehicle Retail Installment Contract" ("Contract") with HYUNDAI to finance the remaining $21,316.49 balance.[4]  Pursuant to the Contract, Jenkins took possession of the Sunfire on or about July 7, 2001.[5]

Jenkins made the payments due pursuant to the Contract for approximately one year.  However, after the first year, Jenkins became unable to work.[6]  As a result, Jenkins became delinquent on her account. On October 20, 2002, HYUNDAI repossessed Jenkins' Sunfire.[7]

On October 22, 2002, HYUNDAI sent Jenkins a brief letter explaining that her Sunfire had been repossessed because she had not made the required payments.[8]  The letter stated that Jenkins would have 15 days from the date of the notice to pay the entire amount due and owing, including repossession expenses, and that payments must be made to HYUNDAI's California office.[9]  The only statement concerning post-repossession sale in the letter stated, "[I]f you are late in making your payments or otherwise in default again during the term of your contract we may exercise our rights without sending you another notice like this one."[10]  HYUNDAI did not inform Jenkins of its intent to dispose of her Sunfire or disclose any of the information required by the applicable notice of disposition statutes.

---

[3] Plaintiff's Class Action Complaint, ¶14 (hereinafter cited to as "Compl. ¶_____.")
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶¶16, 19.
[8] *Id.* at ¶20.
[9] *Id.*
[10] *Id.*

On November 22, 2002, HYUNDAI sold Jenkin's Sunfire at auction.[11]  Even though HYUNDAI was statutorily required, by the Ohio Retail Installment Sales Act (O.R.C. §1317.12, *et seq.*) and Ohio's U.C.C. Article 9 (as with other state statutes), to send Jenkins notification of specific issues related to the disposition of her Sunfire, no such notice was sent to Jenkins prior to the disposition of her Sunfire.[12]  Accordingly, HYUNDAI's sale of Jenkins' Sunfire violated the statute and Jenkins is entitled to relief.  Nevertheless, HYUNDAI sought to illegally collect the deficiency balance of $18,900.02 from Jenkins[13]

In the same manner that HYUNDAI acted with respect to Jenkins, HYUNDAI also failed to provide Class Members with the statutorily proscribed pre-disposition notice.[14]  Moreover, when HYUNDAI did provide some form of notice to Class Members, the notice provided did not contain all of the information that was required by statute prior to disposition of Class Member's vehicles.[15]  Notwithstanding these failures, HYUNDAI still improperly proceeded with collection efforts and wrongfully advised the Class that they would be liable for any resulting deficiency balance.[16]

## II.  LEGAL ANALYSIS

Jenkin's experience is typical of the experiences of each Class Member and she is a conscientious representative who has chosen experienced counsel.  Identical legal theories and shared factual issues will dominate this litigation, making a class action the most efficient procedure in this case.

---

[11] *See, Id.* at ¶31; Answer ¶101.
[12] Compl. at ¶20.
[13] *Id.*; Answer ¶102.
[14] *Id.* at ¶23; *see also,* ¶30 (HYUNDAI's "disposition of the Named Plaintiff's vehicle resulted in a deficiency in excess of $14,000 for a vehicle that was sold for $21,316 approximately 1 year prior to [HYUNDAI's] commercially unreasonable disposition of the Named Plaintiff's vehicle").
[15] *Id.*
[16] *Id.*

The trial court has broad discretion in deciding whether to certify a class action.[17]  When determining the appropriateness of class certification, the Court may only consider matters pertinent to the requirements of Rule 23.  The underlying merits of the case play no role in the class certification determination[18] and the Court must resolve all doubts in favor of the moving party.[19]

### A.    The Underlying Principals of Class Certification Support Certification.

When "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they … employ the class action device."[20]

Here, individual suits by Class Members are not economically feasible due to the size of their individual damages in comparison with HYUNDAI's incentive to painstakingly litigate each and every claim (hoping to eventually rely upon the doctrine of collateral estoppel).  The number of Class Members is so numerous that HYUNDAI has the incentive to litigate each individual claim as if it were a *de facto* class action, thus exploiting economies of scale and making individual litigation financially impossible.  Further, the typical Class Member (whose vehicle was repossessed for failure to make timely payment) is likely unable to afford an attorney, and the value of Class Members' claims is too small for an attorney to take an individual case on a contingency basis. Denial of class certification would essentially sound the death knell for the Class Members' ability to effectively seek the statutory relief to which they are entitled.

---

[17] *Kennedy v. United Healthcare of Ohio*, 206 F.R.D. 191, 195 (6th Cir. 2002).
[18] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *see also*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).
[19] *Thompson v. Community Ins. Co.*, 213 F.R.D. 284, 291 (S.D. Ohio 2002) ("[t]he district court must take the allegations of plaintiffs as true and any doubts as to certification should be resolved in favor of plaintiffs").
[20] *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

**B.     The Requirements of Rule 23 are Satisfied**

A class should be certified where the movant satisfies the four requirements of Rule 23(a), and one or more of the requirements of  Rule 23(b).

**1.     All Requirements of Rule 23(a) are Satisfied**

Rule 23(a) has four requirements:  (1) numerosity; (2) commonality; (3) typicality; and, (4) adequacy, each of which is satisfied in this case.

**a.     Rule 23(a)(1) – Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder is impracticable." Joinder is impracticable when individual adjudication would take an extended period of time and joinder of all Class Members' claims would be expensive and time consuming.[21]  Numerosity is typically presumed when there are 40 or more class members; however, "there is no general rule or single 'magic number' for determining how many parties make joinder impracticable."[22]

Numerosity is satisfied in this case.  The number of repossessions and dispositions by HYUNDAI coupled with HYUNDAI's standardized repossession and disposition procedure (including the use of form letters/notices) make it clear that the number of Class Members greatly exceeds the number necessary to make joinder impracticable.[23]  Moreover, HYUNDAI admits there are at least 445 potential Class Members just in Ohio alone.[24]

---

[21] *In Re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2nd Cir. 1992).
[22] *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996)
[23] Compl. ¶7.
[24] HYUNDAI's Response to Jenkins' Interrogatory 10.

### b.     Rule 23(a)(2) – Commonality

Commonality is satisfied either by a common nucleus of operative facts **or** the existence of legal questions common to the class.[25]   Courts have consistently labeled the commonality requirement a "low hurdle, easily surmounted."[26]

Class Members' claims need not be identical; and, class certification is proper where a common course of wrongful conduct is alleged.[27]   Potential differences in remedies and/or varying amounts of damages do not bar the certification of a class action when the complaint establishes a common course of conduct.[28]

Further, the mere fact that separate transactions are involved does not preclude a finding of the requisite community of interest.[29]   Courts have uniformly held that where the same scheme and/or course of action operate on a class (even if over an extended period of time and even if in different transactions) the commonality requirement is satisfied.[30]

A critical inquiry is whether common questions of law and/or fact form the core of a plaintiff's cause(s) of action.[31]   Factual distinctions that may exist amongst class members are "far less important than the common issues bearing on the existence of a 'common scheme'."[32]

Common questions of law and/or fact at the core of Class Members' claims include, but are not limited to, the following:

---

[25] FED. R. CIV. P. 23(a)(2).
[26] *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill 1992); *see also, In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)
[27] *Coley v. Clinton*, 635 F.2d 1364, 1378 (6th Cir. 1980).
[28] *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326 (E.D. Mich. 2001) (holding that "individual class members [receiving] varying damage amounts for their claimed injury does not defeat class certification").
[29] *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 242 (E.D. N.Y. 1998) (stating that "there is nothing in Rule 23(a)(3) which requires the named plaintiffs to be clones of each other or clones of other class members").
[30] *See, e.g., Neilan v. Value Vacations, Inc.*, 603 F.Supp. 1227 (S.D.N.Y. 1985); *see also, Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968), *cert denied*, 395 U.S. 977 (1969).
[31] *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D. N.Y. 1995).
[32] *In re Am. Med. Sys.*, 75 F.3d at 1080 (holding that the test for commonality is "qualitative rather than quantitative, that is there need only be a single issue common to all members of the class.")

(a)     Whether HYUNDAI and the Class entered into substantively similar and/or identical contracts;

(b)     Whether HYUNDAI failed to send Jenkins and the Class proper statutorily mandated pre-disposition notices; and

(c)     Whether HYUNDAI breached provisions in the retail installment sales contracts it entered into with Class Members.

Each of these pertinent questions of law and/or fact is applicable to the claims of all Class Members, and the commonality requirement is therefore satisfied.

### c.     Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims be typical of the claims of the class members.  A plaintiff's claim is typical if it "arises from the same event, practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[33]  Typicality is not defeated by differing fact situations between class members, potential variations in the amount of individual damages, nor the potential existence of defenses applicable only to certain class members, so long as the representative plaintiff's and class members' claims are based on similar legal theories.[34]

Here, Jenkins and the Class share the same legal theory – HYUNDAI served statutorily deficient pre-disposition notices in violation of state retail installment type statutes and/or state U.C.C. provisions.[35]  Jenkins is a member of the Class and her claims originate from the same course of conduct that gives rise to the claims of the other Class Members.  Accordingly, the typicality requirement is satisfied.

---

[33] *Id*. at 1082.
[34] *See,* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3.12 (4th ed. 2002)
[35] Compl. ¶9.

### d. Rule 23(a)(4) – Adequacy

Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class." The adequacy of representation is a two-pronged analysis: (1) adequacy of the class representative(s); and, (2) the adequacy of class counsel. Jenkins satisfies both of these requirements, as she has a common interest with the absent Class Members and she will vigorously prosecute the interests of the Class through qualified counsel.

#### i. The class representative is adequate

Jenkins is familiar with the facts of her claims and is not aware of any personal interests that are adverse or antagonistic to those of the Class.[36] Jenkins fully understands the claims of the other Class Members because they were victims of the same illegal actions of HYUNDAI that she experienced. Accordingly, Jenkins is a more than adequate representative of the Class.

#### ii. Class counsel is adequate

Plaintiff has selected and retained the law firms of DAVID P. MEYER & ASSOCIATES CO., L.P.A., STARR AUSTEN MYERS AND MILLER, LLP, and MADDOX, HARGETT & CARUSO, P.C. as Counsel in this action. These firms possess extensive experience prosecuting complex class action litigation. All three firms have served in leadership roles, negotiated multimillion dollar settlements and in one instance, received a jury verdict of approximately $266 million for a class.[37] These firms are well-qualified and will vigorously protect the interests of the Class.

Per the above analysis, the Rule 23(a) requirements are satisfied and, therefore, class certification is proper if **<u>any</u>** of the alternative requirements of 23(b) are met.

---

[36] Compl. at ¶8.
[37] *See generally, Burns v. Prudential Sec., Inc.*, 857 N.E.2d 621 (Ohio Ct.App. 2006).

### 2.        The requirements of Rule 23(b)(3) are Satisfied

Class certification is appropriate under Rule 23(b)(3) where common questions of law and fact predominate over individual issues, and when the class action is superior to other procedures for efficiently resolving the litigation.

### a.        Predominance

When confronted with a group of persons that have been victimized by similar deceptive acts and/or schemes "courts have taken the common sense approach that the class is united by a common interest in determining whether the defendant's course of conduct is in its broad outlines actionable … and that the issue may be profitably tried in one suit."[38]   The predominance requirement is satisfied where the claims of the class members are based on a common nucleus of operative facts, and the success of each individual claim will depend, to a great extent upon a favorable disposition of the questions common to all class members.

Here, the claims of Jenkins and Class Members are bound by HYUNDAI's uniform course of conduct.  As discussed previously, HYUNDAI sent the same, or substantially similar, pre-disposition notices to Class Members nationwide.   The notices failed to satisfy the requirements of similar state statutes.  Individual nuances pale in comparison to the central issue of HYUNDAI's conduct concerning the statutorily deficient notices sent to Jenkins and every other Class Member.

The Court's interest in avoiding the multiplicity of potential lawsuits concerning HYUNDAI's conduct greatly outweighs any problems of managing this suit as a class action. There are no individual issues that would require the amount of time and consideration by this Court that the common issues require—Class claims are all predicated on HYUNDAI's deficient

---

[38] *In Re Amerifirst Sec. Litg.*, 139 F.R.D. 423, 433 (S.D. Fla. 1991) (citations omitted).

form notices.  The individual issues that remain, if any, after resolution of the predominate issues such as whether HYUNDAI pre-disposition notices satisfied state statutory requirements, are relatively minor or insignificant.  Accordingly, the common issues are predominate and the Rule 23(b)(3) predominance requirement is satisfied.

**b.      Superiority**

In determining whether a class action is superior, courts must compare the other procedures available to determine whether a class action would be sufficiently efficient.  Joinder and intervention are not practical alternatives when a class meets the numerosity requirement.[39] Coordination and consolidation are likewise available only for those able to initiate individual lawsuits.  Accordingly, the need to provide a forum for claimants who would otherwise have no effective judicial redress in the absence of a class action plays an important role in the superiority determination.[40]

In the present case, the Class is too numerous for joinder to be practicable since its members are believed to number in the thousands and the economies of scale make individual lawsuits economically impractical for the Class Members thereby making coordination and consolidation impracticable.   Further, the four non-exhaustive superiority considerations expressly set forth by Rule 23(b)(3) all weigh heavily in favor of the superiority of class action treatment for this case.

**i.      Individual interest in the case**

Pursuant to Rule 23(b)(3), the trial court should consider "the interests of members of the class in individually controlling the prosecution or defense of separate actions."  Considerations relevant to this inquiry include the degree of cohesion among class members, whether the

---

[39] Conte, *supra* note 33, at § 4.27.
[40] *See e.g., Eisen*, 417 U.S. at 156.

11

amounts at stake for individuals are so small that separate suits would be impracticable, and the extent to which separate suits would impose burdens on the party opposing the Class, or upon the Court calendars."[41]

In the case *sub judice,* economic realities make it virtually impossible for individual Class Members to prosecute individual claims against HYUNDAI. The Class is estimated to encompass thousands of persons who received deficient pre-disposition notices. Class Members' individual stakes are relatively small when compared to HYUNDAI's incentive to exhaustively litigate each individual claim. Moreover, most Class Members are unable to afford individual litigation as evidenced by the fact that their vehicles have been repossessed by HYUNDAI. Thus, as discussed previously, the class action procedure is not only superior to individual actions; it is the only viable alternative for Class Members to seek relief. Consideration of the precarious economic positions of the individual Class Members in seeking statutory relief weighs heavily in favor of class certification in this case.

### ii.    Other pending proceedings

The trial court should consider the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class.[42] Jenkins is unaware of any individual lawsuits currently pending against HYUNDAI regarding the issues in this case, suggesting that the Class Members in this matter do not possess the financial ability to pursue individual cases against HYUNDAI for its deficient post-repossession notices. Jenkins is only aware of one other lawsuit that purports to be brought only on behalf of a class of California residents. That action was filed subsequent to this case. Thus, the scarceness of individual

---

[41] *See* Federal Rules of Civil Procedure Advisory Committee Notes to the 1966 Amendments to Rule 23, 39 F.R.D. 69, 104 (1966*).*
[42] *See*, FED. R. CIV. P. 23(b)(3).

litigation confirms the economic realities that Class Members find themselves in when attempting to retain individual counsel: economically vulnerable consumers, faced with deficient balances on automobile loans will not be able to obtain attorneys on a contingency fee basis to represent their statutory interests.

### iii.    Forum

The third factor is the desirability of conducting the litigation in a particular forum. HYUNDAI operates and conducts substantial business throughout Ohio; Jenkins lives in Ohio and purchased her vehicle (executing all applicable contracts) in Ohio, making this Court a desirable forum.  Moreover, this Court has ample experience with class actions and a proven track record of successfully overseeing the prosecution and settlement of those class actions.

### iv.    Manageability

Finally, the Court should consider "the difficulties likely to be encountered in the management of a class action."[43]  Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."[44]

> When courts and counsel work together to manage increasingly complex and large-scale litigation, 'experience ... shows that visions of unmanageability soon disappear.'  Moreover, most courts hold that manageability difficulties cannot support denial of class certification when no other practical litigation alternative exists.[45]

The manageability requirement is more than satisfied for this Class; adjudicating these issues on a class-wide basis will eliminate the probability of repetitious litigation or inconsistent rulings on the same operative facts concerning the adequacy of HYUNDAI's pre-disposition

---

[43] *Amchem Products v. Windsor,* 521 U.S. 591, 625 (U.S. 1997).
[44] *See e.g., Eisen,* 417 U.S. at 164.
[45] *See e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 525 (D. N.J. 1997) *rev'd in part on other grounds* (certifying nationwide class of eight million policyholders).

notices, thus promoting judicial economy. Moreover, no other practical litigation alternative exists, and without a class action the Class will find itself without any practicable and economically feasible alternative to seek redress for HYUNDAI's illegal conduct.

## III. CONCLUSION

For the forgoing reasons, Jenkins respectfully requests that the Court grant her Motion for Class Certification, certify the Class defined herein, designate Jenkins as the Class Representative and appoint her counsel as Class Counsel.

Respectfully submitted,

/s/ David P. Meyer
David P. Meyer (0065205)
dmeyer@dmlaws.com
Trial Attorney for Plaintiff
Patrick G. Warner (0064604)
pwarner@dmlaws.com
DAVID P. MEYER & ASSOCIATES CO., LPA
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone:     (614) 224-6000
Facsimile:      (614) 224-6066

Thomas A. Hargett
tahargett@mhclaw.com
MADDOX HARGETT & CARUSO
10100 Lantern Road
Fishers, Indiana 46038
Telephone: (317) 598-2052
Facsimile: (317) 598-2050

Barbara Quinn Smith
bqsesq@aol.com
MADDOX HARGETT & CARUSO
6685 Beta Drive
Cleveland, Ohio 44143
Telephone: (440) 605-7297
Facsimile: (440) 646-1615

14

Scott L. Starr
starr@starrausten.com
Andrew B. Miller
miller@starrausten.com
STARR AUSTEN MYERS & MILLER
201 South Third Street
Logansport, Indiana 46947
Telephone: (574) 722-6676
Facsimile: (574) 753-3299

Counsel for Plaintiff Vicki Jenkins

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2007, a copy of the foregoing was filed electronically with the Court.  Notice of this filing will be sent to all parties registered for electronic service by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ David P. Meyer
David P. Meyer (0065205)
dmeyer@dmlaws.com
Trial Attorney for Plaintiff
Patrick G. Warner (0064604)
pwarner@dmlaws.com
DAVID P. MEYER & ASSOCIATES CO., LPA

16