**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

| | | |
|---|---|---|
| Vicki D. Jenkins, individually and on behalf of all similarly situated persons | ) ) ) | CASE NO: C2 04 720 |
| | ) | JUDGE SARGUS |
| Plaintiff, | ) ) | MAGISTRATE JUDGE KING |
| v. | ) ) | |
| Hyundai Motor Finance Company, et al | ) ) | |
| Defendants. | ) | |

# RESPONSE OF HYUNDAI MOTOR FINANCE COMPANY
# TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## SUMMARY OF ARGUMENTS

### I.   INTRODUCTION

Plaintiff Vicki D. Jenkins ("Jenkins") attempts but fails to convert her individual claim that she did not receive disability insurance benefits and as a result her vehicle should not have been repossessed by Hyundai Motor Finance Company ("HMFC"), into a 49-state class claiming violations of each states' differing commercial code statutes, consumer finance statutes and common law relating to contracts. Jenkins' Motion for Class Certification should fail because:

- A 49-state class action based on each state's laws is inherently uncertifiable due to the wide variations in the interpretation and application of those laws;
- Individual questions as to each putative class member's transaction predominate and make the class action procedure an inferior method of resolving these claims;
- The predominance of individualized facts makes any class based on these claims unamangeable;
- Jenkins fails to identify a class whose membership can be ascertained without a pre-determination of liability; and
- Jenkins is not typical of the class she seeks to represent and is not an adequate representative.

### II.   FACTUAL BACKGROUND

Jenkins purchased a vehicle from Dennis Autoplex on July 7, 2001 and Dennis Autoplex assigned her retail installment sales contract to Hyundai Motor Finance Company ("HMFC"). Only eight months after the purchase, Jenkins became incapacitated and could not work. She submitted a claim under the credit disability insurance she purchased with her vehicle but alleges HMFC did not process her claim. Jenkins' vehicle was repossessed on October 20, 2002. Following the repossession, HMFC sent a notice specific to Ohio informing her that her vehicle had been repossessed and notifying her of her right to cure. Jenkins currently owes HMFC a deficiency balance of approximately $21,900.[1]

---

[1] *Id.* at 2-4.

## III.   RULE 23 REQUIREMENTS AND BURDEN OF PROOF

Jenkins bears the burden of demonstrating that the Rule 23 requirements of commonality, typicality and adequacy are met, that the class action based on the claims asserted is superior to other available methods of resolution for the putative class members, that common issues predominate and that despite individual issues and the variations in state laws, trial of the claims on a class basis is manageable.  As a threshold issue, Jenkins bears the burden of providing a precise definition of the proposed class so that membership in the class is readily ascertainable.[2]

## IV.   JENKINS DOES NOT MEET THE REQUIREMENTS OF RULE 23.

### A.   Nationwide Classes of this Nature Based on State Law Are Not Certifiable.

Where claims must be adjudicated under the laws of many jurisdictions, a single nationwide class is not manageable.  One finds significant substantive differences in the contract laws, consumer laws and common law jurisprudence of each state.  There are hundreds of differences among the state consumer laws relevant to Jenkins' class claims, including the existence and application of a motor vehicle retail installment sales act, application of choice of law provisions and the availability of damages under various state laws.[3]

### 1.   The UCC Is Not Uniform.

Jenkins provides no meaningful way of managing the hundreds of factual and legal issues raised in analyzing and applying the laws of 49 states to her causes of action.  Nationwide classes related to issues arising out of post-repossession notice and UCC claims cannot be certified

---

[2] *Id.* at 4-6.  Charles A. Wright, Arthur R. Miller and Mary K. Kane, 7A FEDERAL PRACTICE AND PROCEDURE §§ 1760-61, 1766, 1785.1 (2d ed. 1986 and updates). *Amchem Products,* Inc. *v. Windsor*, 521 U.S. 591, 623 (1997); *Faralli v. Hair Today, Gone Tomorrow*, 2007 WL 120664 *10 (N.D. Ohio 2007), citing *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3rd Cir. 1996); *Washington Mutual Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 922-23 (Cal. 2001) (surveying federal decisions in the Fifth Circuit, Sixth Circuit and Kansas and New York district courts); *Reeb v. Ohio Dep't. of Rehab.*, 435 F.3d 639, 644 (6th Cir. 2006); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Eisen v. Carlyle and Jacqueline*, 417 U.S. 156, 177 (1974).

[3] Response at 6-9.  *In re American Medical Systems*, 75 F.3d 1069 (6th Cir. 1996); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 741-42 (5th Cir. 1996); *Bridgestone/ Firestone, Inc., In re Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002); *In re Asbestos School Litigation*, 789 F.2d 996, 1010 (3rd Cir.1986), *cert. denied*, 107 S.Ct. 318 (1986); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016-1017 (D.C. Cir. 1986) (Ruth Bader Ginsberg, J.); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995); Exhibit "E;" Exhibit "G," Expert Report of Barkley Clark, attached hereto as Exhibit "D" and Declaration of Linda Mullenix at 36-37, attached hereto as Exhibit "J."

182467.11

because of the myriad differences in the jurisprudence covering such claims.  The UCC notice requirements are only the beginning of the inquiry--UCC provisions are often modified or superseded by provisions contained in other statutes and UCC sections are designed to be interpreted by the courts of each state.  By focusing on the notice issue only, Jenkins has ignored all the other elements related to her UCC claims which prohibit certification, including counterclaim issues, the interaction of the specific, named UCC provision with other state consumer laws and state law variations on available damages, defenses and other relief.[4]

## 2.  Commercial Reasonableness Inquiries Are Individualized.

Historically, different jurisdictions construing UCC section 9-507 employed what is called the "rebuttable presumption," the "absolute bar rule" or the "set-off approach."  Revised Article 9-626 does not explicitly adopt any approach with regard to consumer transactions because although 9-626(a) codifies the rebuttable presumption, many states include a 9-626(b) in their version of 9-626 that leaves to the court the determination of the proper rules in consumer transactions.  In this case, the Court would be required to determine whether the "rebuttable presumption" applies under each state's jurisprudence.  Where the "rebuttable presumption" approach is used, HMFC will be allowed to put on evidence as to each class member to overcome the presumption by establishing that it acted in a commercially reasonable manner.  In addition, putative class members may claim individualized damages under his or her own state's laws that will require individual interpretation.[5]

## 3.  Unique Individual Issues Make an Ohio Only Class Uncertifiable.

Even under the Ohio UCC, Jenkins' claims are not certifiable.  Ohio has several unique provisions in its Consumer Protection and UCC-based statutory provisions.  Individual factual

---

[4] Response at 9-11.  *Walsh v. Ford Motor Co.*, 807 F.2d at 1017, citing James J. White and Robert S. Summers, 7 UNIFORM COMMERCIAL CODE (2d ed. 1980); *Henry v. Consumer Portfolio*, No. 0047979 (Cal.Ct.App. Apr. 10, 2007) at 7-18, attached hereto as Exhibit "F;" James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE § 34-14(b) (5th Ed. 2006).
[5] Response at 11-14.  Expert Report of Barkley Clark, attached hereto as Exhibit "D;" James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE, § 34-14 (5th Ed. 2006); Richard C. Tinney, J.D., Annotation, *What Is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9-504(3)*, 7 A.L.R. 4th 308 (1981).
182467.11

issues predominate in determining the sufficiency of notice sent to individual class members, demonstrating the unmanageability of a class that is limited to Ohio.  Each class member's claim would have to be examined to determine if HMFC acted in a commercially reasonable manner, thereby rebutting the presumption.  HMFC then would be entitled to recover its deficiency from the class member, net of any actual or statutory damages.[6]

**B.    Variations in Statutes of Limitations Make Jenkins' Claims Uncertifiable.**

Limitations periods applicable to the claims asserted are unclear and require a thorough analysis of each state's common law and statutory provisions.  A jury would be required to determine when claims under each state's laws accrued and whether state-specific issues such as the discovery rule affect accrual and how such issues as tolling and accrual would be addressed on a class-wide basis.[7]

**C.    Compulsory Counterclaims for the Recovery of Deficiency Balances Make the Class Claims Unmanageable and Uncertifiable.**

HMFC intends to pursue counterclaims for all deficiencies under Federal Rule of Civil Procedure 13(a).  Such counterclaims are compulsory and affect a significant portion of the class, rendering any class action unmanageable.[8]

**D.    Variations in Compensatory Damages Make the Class Uncertifiable.**

The laws of 49 states must be examined to determine what damages are allowed, how they are calculated and whether each plaintiff's repossession sale was commercially reasonable. Such a time consuming individual evaluation makes class treatment inappropriate.[9]

---

[6] Response at 14-17.  Expert Report of Barkley Clark, attached hereto as Exhibit "D;" *GMAC v. Stoval*, 872 N.E.2d 91 (Ill. App. 2007); *Tex Star Motors, Inc. v. Regal Finance Co., Ltd.*, No. 14-05-00215-CV (Tex. App.--Houston [14th Dist.], July 19, 2007), attached hereto as Exhibit "H."
[7] Response at 17-18.  Expert Report of Barkley Clark, attached hereto as Exhibit "D;" *Pettrey v. Enterprise Title Agency*, 241 F.R.D. 268, 284 (N.D. Ohio 2006); Declaration of Linda Mullenix at 36, attached hereto as Exhibit "J."
[8] Response at 18-19.  *Heaven v. SunTrust Company Bank*, 118 F.3d 735 (11th Cir. 1997); *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1363 (5th Cir. 1979); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), aff'd 445 U.S. 326 (1980); *Demmler v. Bank One NA*, No. 2:05-cv-322 (S.D. Ohio March 9, 2006) at 9-10, citing *Rettig Enterprises, Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994), attached hereto as Exhibit "I."
[9] Response at 19-20.  *Reeb v. Ohio Dep't of Rehabilitation & Correction*, 435 F.3d 639 (6th Cir. 2006); *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003).
182467.11

## V.    JENKINS HAS NOT DEFINED AN ASCERTAINABLE CLASS.

Membership in the proposed class cannot be determined without a predetermination of liability. Jenkins has not defined an ascertainable class, a prerequisite to the Rule 23 analysis. Jenkins' proposed fail-safe class definitions do not satisfy Rule 23(c)(3)'s provision that a judgment adverse to the class will bind all class members.[10]

## VI.    JENKINS IS AN INADEQUATE AND ATYPICAL CLASS REPRESENTATIVE.

### A.    Jenkins' Claims Differ from Those of the Class.

Jenkins' injuries regarding her repossession and insurance premiums are not common to the class and make her an inadequate representative. Jenkins' notice issues are atypical of the class.[11]

### B.    Jenkins' Mental Health Issues Prohibit Her from Being an Adequate Representative.

Jenkins' current mental health disability prevents her from adequate representation of the class and raises issues about her fitness to carry out the duties of class representation. Other class members would be penalized because the principle of *res judicata* would bar them from raising unasserted claims in the future.[12]

---

[10] Response at 21-22. MANUAL ON COMPLEX LITIGATION FOURTH 270 §21.222 (4th ed. 2004); MANUAL ON COMPLEX LITIGATION 3rd § 30.14 (1995); *see also Miller v. University of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Bentley v. Honeywell International, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001)(reversing certification order for one-way intervention); Declaration of Linda Mullenix at 16-19, attached hereto as Exhibit "J."
[11] Response at 22-25. *In re Foundry Resins Antitrust Litigation*, 242 F.R.D. 393, 407 (S.D. Ohio 2007); Declaration of Linda Mullenix at 26-29, attached hereto as Exhibit "J;" NEWBERG ON CLASS ACTIONS § 3:26; *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).
[12] Response at 25. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1075 (6th Cir. 1996); Declaration of Linda Mullenix at 33, attached hereto as Exhibit "J."
182467.11

v

# TABLE OF CONTENTS

I.        INTRODUCTION ............................................................................................... 1

II.       FACTUAL BACKGROUND ............................................................................. 2

III.     RULE 23 REQUIREMENTS AND BURDEN OF PROOF FOR
        CERTIFICATION ............................................................................................. 4

IV.     JENKINS DOES NOT MEET THE REQUIREMENTS OF RULE 23. ..................... 6

      A.    Nationwide Classes of This Nature Based on State Law Are Not Certifiable. ... 6

          1.    The UCC Is Not Uniform. .............................................................................. 9
          2.    Commercial Reasonableness Evaluations Vary Widely Among the States. .. 11
          3.    Even Under Only the Ohio UCC, Jenkins' Claims Are Not Certifiable. ........ 14

      B.    Variations in Statutes of Limitation Make Jenkins' Claims Uncertifiable. .... 17

      C.    Counterclaims Make Class Claims Unsuitable for Class Treatment ............... 18

      D.    Variations In Compensatory Damages Make the Class Uncertifiable. ........... 19

      E.    Class Treatment Is Not Superior Due to Incentive for Individual Actions. ..... 20

V.       JENKINS HAS NOT DEFINED AN ASCERTAINABLE CLASS ........................... 21

VI.    JENKINS IS AN INADEQUATE AND ATYPICAL CLASS
        REPRESENTATIVE. ..................................................................................... 22

      A.    Jenkins' Claims Differ From Those of the Class ................................................. 24

      B.    Jenkins' Mental Health Issues Make Her an Inadequate Representative. ....... 25

VII.   CONCLUSION ............................................................................................. 25

182467.11

**TABLE OF AUTHORITIES**

**Federal Cases**

*Adashunas v. Negley,* 626 F.2d 600 (7ᵗʰ Cir. 1980) .................................................................. 22
*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5ᵗʰ Cir. 1998)............................................. 20
*Amchem Products,* Inc. *v. Windsor*, 521 U.S. 591 (1997) ................................................... passim
*Bacon v. Honda of America Mfg.*, 205 F.R.D. 466 (S.D. Ohio 2001) .................................. 22, 23
*Barbour v. United States*, 562 F.2d 19 (10th Cir. 1977)........................................................... 12
*Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) ...................................... 6, 20
*Bentley v. Honeywell International, Inc.*, 223 F.R.D. 471 (S.D. Ohio 2004).............................. 21
*Bridgestone/Firestone, Inc., In re Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002) ............. 6, 7
*Buford v. H&R Block*, 168 F.R.D. 340 (S.D. Ga. 1996)............................................................ 21
*C.F. Ridley v. First Nat'l Bank in Albuquerque*, 531 P.2d 607 (N.M. 1975) ............................. 11
*Castano v. Amer. Tobacco Co., Inc.*, 84 F.3d 734 (5th Cir. 1996)............................... 6, 7, 20, 21
*Demmler v. Bank One NA*, No. 2:05-cv-322, slip op. at 9-10 (S.D. Ohio March 9, 2006) .......... 19
*East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395 (1977)............................................. 23
*Eisen v. Carlyle and Jacqueline*, 417 U.S. 156 (1974)................................................................ 6
*Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414 (S.D. Ohio 2002) .................................................. 22
*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)............................................. 5
*Faralli v. Hair Today, Gone Tomorrow*, 2007 WL 120664 *10 (N.D. Ohio 2007)................... 4, 5
*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995) ......................................... 21, 22
*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)............................................ 6, 23
*Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430 (M.D. Fla. 2000) ................................ 21
*Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135 (D.Mass. 1988) ..................................................... 6
*Hagan v. City of Winnemucca,* 108 FRD 61 (D. Nev. 1985) ...................................................... 22
*Haywood v. Barnes*, 109 F.R.D. 568 (1986)............................................................................. 23
*Heaven v. SunTrust Bank,* 118 F.3d 735 (11th Cir. 1997)......................................................... 18
*Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5ᵗʰ Cir. 1982)..................................... 23
*In re American Medical Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)................................. 6, 7, 23, 25
*In re Excello Press, Inc.*, 890 F.2d 896 (7th Cir. 1989).............................................................. 12
*In re Foundry Resins Antitrust Litigation*, 242 F.R.D. 393 (S.D. Ohio 2007) ............................ 23
*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7ᵗʰ Cir. 1995).......................................... 8, 20
*In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203 (S.D. Ohio 1996) ................................. 7
*Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001) .................................................................. 22
*Jones v. Allercare, Inc.*, 203 F.R.D. 290 (N.D. Ohio 2001) ......................................................... 7
*Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564 (N.D. Ohio 2003)................................................. 8
MANUAL FOR COMPLEX LITIGATION FOURTH (4th ed. 2004) §21.222........................................... 22
*Miles v. Merrill Lynch & Co.* (In re: Initial Public Offering Secs. Litig.), 471 F.3d 24 (2d Cir. 2006). ...................................................................................................................................... 6
*Miller v. University of Cincinnati*, 241 F.R.D. 285 (S.D. Ohio 2006)................................. 21, 27
*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5ᵗʰ Cir. 1999) ...................................... 22
*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)............. 5, 6
*Ostler v. Level 3 Communications, Inc.*, 2002 WL 31040337 at *2 (S.D. Ind. Aug. 27, 2002)... 22
*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5ᵗʰ Cir. 2003)............................. 20
*Pettrey v. Enterprise Title Agency*, 241 F.R.D. 268 (N.D. Ohio 2006) ...................................... 17

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 20

*Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir. 1979)...................................... 19

*re Asbestos School Litigation*, 789 F.2d 996, (3rd Cir.1986), *cert. denied*, 107 S.Ct. 318 (1986) 6

*Reeb v. Ohio Dep't. of Rehab.*, 435 F.3d 639 (6th Cir. 2006).................................................. 6, 19

*Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), aff'd 445 U.S. 326 (1980) ................. 19

*Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998) ............................................. 23, 24

*Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976)................................................... 22

*Spence v. Glock*, 227 F.3d 308 (5th Cir. 2000)............................................................................. 5

*Wong v. PartyGaming, Ltd.,* 2007 WL 851879, *2 (N.D. Ohio 2007)......................................... 8

## State Cases

*Barnett Recovery Corp. v. Fornasari*, 655 So. 1274 (Fl. App. 1995) ......................................... 18

*Bernal v. Southwestern Refinery*, 22 S.W.3d 425 (Tex. 2000)..................................................... 4

*Duvall v. TRW, Inc.*, 578 N.E.2d 556 (Ohio App. 1991).............................................................. 6

*GMAC v. Stoval*, 872 N.E.2d 91 (Ill. App. 2007)....................................................................... 15

*Henry v. Consumer Portfolio*, No. 0047979 (Cal.Ct.App. Apr. 10, 2007)................................. 10

*Oxford Resources Corp. v. Jenkins*, 642 N.Y.S. 2d 488, 31 UCC 2d 575................................... 12

*Tex Star Motors, Inc. v. Regal Finance Co., Ltd.*,  No. 14-05-00215-CV, slip op. at 3-5, n. 8

   (Tex. App.--Houston [14th Dist.], July 19, 2007) .................................................................... 16

*Trust Co. Bank v. State*, 420 So.2d 10 (Ala. 1982)..................................................................... 18

*Washington Mutual Bank, F.A. v. Superior Court*, 24 Cal. 4th 906 (Cal. 2001)........................... 5

*Weaver v. Amer. Nat'l Bank*, 452 So.2d 469 (Ala. 1984) ........................................................... 18

*Woodward v. Resource Bank*, 436 S.E.2d 613 (Va. 1993) .......................................................... 12

## Statutes

A.C.A. §16-56-115 ...................................................................................................................... 18

A.C.A. §4-9-625 .......................................................................................................................... 18

Ala. Code 1975 §6-2-34(9)........................................................................................................... 18

Alaska Statute §9.10.070 .............................................................................................................. 18

Fla. Stat. §95.11(3)(f), (n)............................................................................................................ 18

O.R.C. §1309.613 ........................................................................................................................ 14

O.R.C. §1309.625 ........................................................................................................................ 15

O.R.C. §1309.626 ........................................................................................................................ 15

O.R.C. §1309.627 ........................................................................................................................ 15

O.R.C. §1317.16 .......................................................................................................................... 14

## Treatises

Barkley Clark, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL

   CODE ¶ 4.08 (Rev. Ed. 2000). ................................................................................................ 14

Charles A. Wright, Arthur R. Miller and Mary K. Kane, 7A FEDERAL PRACTICE AND

   PROCEDURE §§ 1760-61, 1766, 1785.1 (2d ed. 1986 and updates). ..................................... 4, 5

James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE § 34-14(b)

   (5th Ed. 2006) ...................................................................................................................... 11, 13

MANUAL ON COMPLEX LITIGATION  3rd § 30.14 (1995)................................................................ 21

MANUAL ON COMPLEX LITIGATION FOURTH 270 §21.222 (4th ed. 2004) .................................... 21

NEWBERG ON CLASS ACTIONS.................................................................................................. 24
Richard C. Tinney, J.D., Annotation, *What Is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9-504(3)*, 7 A.L.R. 4th 308 (1981)...................................... 13, 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Vicki D. Jenkins, Individually and on behalf of all similarly situated persons, | ) ) | CASE NO.  2:04-CV-720 |
| | ) | |
| Plaintiff, | ) ) | JUDGE SARGUS MAGISTRATE JUDGE KING |
| | ) | |
| v. | ) ) | **RESPONSE OF DEFENDANT** |
| | ) | **HYUNDAI MOTOR FINANCE** |
| Hyundai Motor Finance Company, et al., | ) | **COMPANY TO PLAINTIFF'S** |
| | ) | **MOTION FOR CLASS** |
| Defendants. | ) | **CERTIFICATION** |

**I.      INTRODUCTION**

Plaintiff Vicki D. Jenkins ("Jenkins") cannot certify a 49-state class.  Jenkins attempts,

but fails to convert her individual claim that she did not receive disability insurance benefits and

her vehicle was wrongfully repossessed by Hyundai Motor Finance Company ("HMFC"), into a

49-state class action based on the alleged violations of 49 states' differing commercial code

statutes, retail installment sales statutes, contract law and common law.

Throughout her multiple, disparate attempts to define the putative class there are common

threads: (1) Jenkins cannot formulate an appropriate class definition; (2) Jenkins cannot

overcome the problems of a 49-state class with varying laws; (3) Jenkins' proposed class requires

the Court to examine a plethora of individualized fact issues as to each individual putative class

member; and (4) Jenkins is not a suitable class representative.  Jenkins' proposed class fails to

meet the requirements for typicality, adequacy or that common issues of law or fact predominate.

She also cannot show that a class action is a superior method of handling the claims, and does

not, and cannot, provide a manageable plan to deal with the numerous differences in the laws of

the 49 states in question.  In fact, the individual issues prohibit even an Ohio-only class.  Because

Jenkins cannot define an ascertainable class, cannot meet her burden under Rule 23 and cannot

point to any workable plan for managing a proposed class action of this complexity, Jenkins' motion for class certification must be denied.

## II.    FACTUAL BACKGROUND

On July 7, 2001, in Columbus, Ohio, Jenkins purchased a Pontiac Sunfire from Dennis Autopoint and financed the vehicle by way of a retail installment sale contract.[13]   Jenkins also purchased and financed gap insurance,[14] credit disability insurance[15] and mechanical breakdown insurance.[16]   The total amount of the purchases was $21,316.49.[17]   Dennis Autoplex assigned Jenkins' retail installment sales contract to HMFC.

As of March, 2002, Jenkins claimed she was totally incapacitated and could not work.[18] Jenkins has been unable to work since that date and continues to suffer from depression, anxiety and self-esteem problems.[19]   The Social Security Administration found Jenkins disabled and has been providing Jenkins with disability benefits--her only source of income since she last worked.[20]   Jenkins made only one payment to HMFC after claiming she was disabled.[21]   Jenkins submitted a claim under her credit disability insurance but claims HMFC did not process her disability claim form and as a result, her vehicle was repossessed on October 20, 2002.[22]

After the repossession of her vehicle, HMFC sent an Ohio-specific notice to Jenkins, informing her that her vehicle had been repossessed and notifying her of her right to cure.[23] HMFC utilizes a variety of state-specific notice forms and letters to notify account holders

---

[13] See Declaration of Aaron Cervantes and Exhibit "A(4)" thereto, attached hereto as Exhibit "A."

[14] Declaration of Aaron Cervantes and Exhibit "A(2)" thereto, attached hereto as Exhibit "A."

[15] Declaration of Aaron Cervantes and Exhibits "A(1)" and "A(6)" thereto, attached hereto as Exhibit "A."

[16] Declaration of Aaron Cervantes and Exhibit "A(4)" thereto, attached hereto as Exhibit "A."

[17] Deposition of Jenkins at p. 116, ln. 11–p. 117, ln. 8, attached hereto as Exhibit "B."

[18] Deposition of Jenkins at p. 55, ln. 16-24; p. 61, ln. 11–p. 62, ln. 16, attached hereto as Exhibit "B."

[19] Deposition of Jenkins at p. 58, ln. 23--p. 59, ln. 17 and p. 61, ln. 11–p. 62, ln. 16, attached hereto as Exhibit "B."

[20] Deposition of Jenkins at p. 59, ln. 15–p. 60, ln. 11 and p. 62, ln. 11–16, attached hereto as Exhibit "B."

[21] Deposition of Jenkins at p. 87 ln. 9–14, attached hereto as Exhibit "B."

[22] Deposition of Jenkins at p. 41, ln. 1–10, attached hereto as Exhibit "B."

[23] Exhibit 3 to Complaint; Deposition of Aaron Cervantes at p. 250, ln. 20--p. 251, ln. 8, attached hereto as Exhibit "C."

throughout the country that their vehicle securing a retail installment contract has been repossessed and that HMFC will be selling the vehicle.[24]

Jenkins' Pontiac Sunfire was sold at auction on November 22, 2002, for $6,250.[25] After repossession-related costs were paid and warranty and insurance refunds were applied, the remaining balance due to HMFC was $11,953.70.[26] The current deficiency balance on Jenkins' account exclusive of any available attorneys' fees is approximately $21,900.[27] Jenkins claims individual damages including loss of use of her vehicle, alternative transportation expenses and additional damages equal to the amount she paid for the Pontiac Sunfire and insurance which were financed.[28]

Jenkins proposes at least two competing class definitions. In her Complaint, Jenkins defines the class as "all persons who were not provided proper post-repossession notice by Defendants and/or had refunded unearned payments misappropriated by the Defendants between January 1, 1999 and the date that this Complaint is filed." In her Motion for Class Certification ("Motion"), however, Jenkins proposes the more limited definition: "all persons (except residents of California) who were not issued statutorily mandated post-repossession notices of intent to dispose of the vehicles financed by Defendant Hyundai Motor Finance Company." Jenkins repeatedly distinguished her claims from those of the proposed class during her deposition.[29]

Jenkins apparently seeks to pursue the following individual and class causes of action: violation of the Ohio Retail Installment Sales Act and "substantively identical statutes of other states," violation of the State Disposition of Secured Collateral Statutes (UCC statutes) in Ohio

---

[24] Declaration of Aaron Cervantes, attached hereto as Exhibit "A." At least 48 various forms of post-repossession notices have been used since 1999.
[25] Declaration of Aaron Cervantes and Exhibit "A(7)" thereto, attached hereto as Exhibit "A."
[26] *Id.*
[27] Declaration of Aaron Cervantes, attached hereto as Exhibit "A."
[28] *See* Deposition of Jenkins at p. 41, ln. 21 to p. 45, ln. 11, attached hereto as Exhibit "B."
[29] *See* deposition of Jenkins at 63, ln. 4-8; p. 74, ln. 12-p. 75, ln. 16; p. 76, ln. 11-p. 77, ln. 11, attached hereto as Exhibit "B."

and other states, conversion under the laws of 49 states, breach of contract under the laws of 49 states and common law breach of the implied terms of good faith and fair dealing under the laws of 49 states.

## III. RULE 23 REQUIREMENTS AND BURDEN OF PROOF FOR CERTIFICATION

Rule 23(a) requires that a class may only be certified when: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). In addition to the Rule 23(a) requirements, Rule 23(b)(3) mandates that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("predominance," "superiority" and "manageability"). The matters pertinent to such a finding include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum and (4) the difficulties likely to be encountered in the management of a class action.[30]

The predominance requirement tests whether the putative class is "sufficiently cohesive to warrant adjudication by representation."[31] The United States Court of Appeals for the Fifth

---

[30] *See, generally,* Charles A. Wright, Arthur R. Miller and Mary K. Kane, 7A FEDERAL PRACTICE AND PROCEDURE §§ 1760-61, 1766, 1785.1 (2d ed. 1986 and updates).

[31] *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Following *Amchem,* the Rule 23(a) commonality requirement has largely been subsumed under the Rule 23(b)(3) requirement that common questions of law or fact predominate. *Faralli v. Hair Today, Gone Tomorrow,* 2007 WL 120664 *10 (N.D. Ohio 2007), citing *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3rd Cir. 1996). If presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, after common issues are resolved, then common issues do not predominate. *See, e.g., Bernal v. Southwestern Refinery,* 22 S.W.3d 425, 434 (Tex. 2000).

Circuit has found that plaintiffs' failure to carry their burden to provide an "extensive analysis" of state law variations and the court's unwillingness to hold plaintiffs to their proof resulted in insufficient evidence of predominant common legal issues—a critical legal deficiency.[32] Rule 23(a)(2) requires questions of law or fact that are common to the class.[33] Commonality is only established when there is at least one issue whose resolution will advance the litigation by affecting a significant number of the proposed class.[34] In classes seeking Rule 23(b)(3) certification, the commonality requirement has been largely subsumed by the predominance requirement of Rule 23(b)(3).[35] The predominance criterion is far more demanding than the Rule 23(a) commonality requirement and requires an examination of the "greater number of questions peculiar to the categories of class members, and to individuals in each category, and the significance of those uncommon questions."[36]

In addition to the explicit requirements of Rule 23, a plaintiff must satisfy additional implicit threshold requirements, including a valid, objectively ascertainable class definition.[37] If Jenkins cannot satisfy the implicit threshold requirements for proceeding as a class action, then the other Rule 23 requirements need not be addressed by the court.

Where Rule 23(b)(3) multi-state class actions are concerned, it is incumbent upon the class action proponent to prove each required element.[38] Jenkins bears the burden of submitting

---

[32] *Spence v. Glock*, 227 F.3d 308, 313 (5th Cir. 2000).

[33] FED. R. CIV. P. 23(a)(2).

[34] *Id.*; *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998); Declaration of Linda Mullenix at 21, attached hereto as Exhibit "J."

[35] *Faralli v. Hair Today, Gone Tomorrow*, 2007 WL 120664 *10 (N.D. Ohio 2007), citing *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3rd Cir. 1996).

[36] *Amchem*, 521 U.S. at 624; *see also Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001).

[37] *See generally* Charles A. Wright, Arthur R. Miller, and Mary K. Kane, 7A FEDERAL PRACTICE AND PROCEDURE §§ 1760-61, 1766, 1785.1 (2d ed. 1986 and updates).

[38] *Washington Mutual Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 922-23 (Cal. 2001) (surveying federal decisions in the Fifth Circuit, Sixth Circuit and Kansas and New York district courts).

evidence and demonstrating that the requirements for class certification are satisfied.[39] Under the "rigorous analysis" standard, the court must look beyond the pleadings to assess whether a class may be certified in light of the "underlying claims, defenses, relevant facts, and applicable substantive law."[40] Although courts do not consider the merits of the named plaintiff's claims in addressing class certification, a court must evaluate the substantive legal elements of the named plaintiff's claims in determining whether the requirements of Rule 23 have been satisfied.[41] The Court is required to make findings on each element of certification and certification can be reversed for an inadequate showing on the predominance requirement.[42]

## IV. JENKINS DOES NOT MEET THE REQUIREMENTS OF RULE 23.

### A. Nationwide Classes of This Nature Based on State Law Are Not Certifiable.

Virtually every federal court that has addressed the issue has found that a nationwide class action asserting state-law-based claims which requires a court to analyze and apply the law of 49 states cannot be certified.[43] Courts uniformly reject certification of nationwide state law class action claims of this nature. Jenkins has the extraordinary burden – not met here – of demonstrating through an "extensive analysis" of state law variances, that "class certification does not present insuperable obstacles."[44] This Court cannot accept "on faith" Jenkins' assertion that the applicable laws are uniform.[45] Plaintiff has not even bothered to attempt to provide this Court with any meaningful roadmap as to how to navigate through the hundreds of issues raised

---

[39] *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)(citations omitted); *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

[40] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), quoting *Castano v. Amer. Tobacco Co., Inc.*, 84 F.3d 734, 744 (5th Cir. 1996); *see also Reeb v. Ohio Dep't. of Rehab.*, 435 F.3d 639, 644 (6th Cir. 2006); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

[41] *Eisen v. Carlyle and Jacqueline*, 417 U.S. 156, 177 (1974); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166-67 (3d Cir. 2001).

[42] *Miles v. Merrill Lynch & Co.* (In re: Initial Public Offering Secs. Litig.), 471 F.3d 24 (2d Cir. 2006).

[43] *In re American Medical Systems*, 75 F.3d 1069 (6th Cir. 1996); *see also Castano*, 84 F.3d at 741-42; *Bridgestone/Firestone, Inc., In re Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002); Exhibit "E."

[44] *In re Asbestos School Litigation*, 789 F.2d 996, 1010 (3rd Cir.1986), *cert. denied*, 107 S.Ct. 318 (1986); *see also Duvall v. TRW, Inc.*, 578 N.E.2d 556 (Ohio App. 1991); *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135 (D.Mass. 1988).

[45] *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016-1017 (D.C. Cir. 1986) (Ruth Bader Ginsberg, J.).

in analyzing and applying the laws of 49 states to the eight separate causes of action she asserts and seeks to certify nationwide. The United States Court of Appeals for the Fifth Circuit has reversed an order certifying a national class based on state law claims, finding that the district court's review of surveys, including consumer fraud class actions, punitive damage law surveys, sample jury instructions and two district court opinions merely "cursory" and insufficient to meet the predominance requirements of Rule 23.[46] Jenkins' effort here cannot even be characterized fairly as "cursory."

As noted by the Sixth Circuit, manageability issues abound where the laws of 50 states differ because the district judge would face "an impossible task of instructing a jury on the relevant law."[47] The Seventh Circuit has found no commonality or superiority under Rule 23(a), (b)(3) unless all litigants are governed by the same legal rules.[48] That court has also found that where "claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."[49]

The United States District Court for the Southern District of Ohio has refused to certify a nationwide product liability class because **any nuances or differences** in state law would render a class action not the superior method of handling the matter.[50] The United States District Court for the Northern District of Ohio has refused to certify a consumer products class action because the substantive law of 50 states would need to be applied to the class.[51] That court referenced a

---

[46] *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).
[47] *In re American Medical Systems*, 75 F.3d at 1085, *Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 850 (9th Cir. 1982)(commonality requirement not met where fifty jurisdictions in which cases arose did not apply same punitive damages standards).
[48] *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).
[49] *Id.* at 1018.
[50] *In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996)
[51] *Jones v. Allercare, Inc.*, 203 F.R.D. 290 (N.D. Ohio 2001).

previous decision decertifying a product class on predominance grounds because differences in the laws of more than 40 states would overwhelm the court.[52]

Based primarily on the burden of applying multiple states' laws, federal courts around the country have almost uniformly denied nationwide certification of state-law class actions.[53] While the differences in state law may only be in nuance, "**nuance can be important**, and its significance is suggested by a comparison of differing state pattern instructions ... and differing judicial formulations."[54] Significant substantive differences can be found in each state's contract law, consumer laws, the common law interpretation of those provisions and in the state's advisory notes and legislative history which may be part of its statutory provisions.

Jenkins' Complaint asserts claims under both common law and statutes which are not uniformly interpreted or applied across the country.[55] With regard to her breach of contract cause of action, Jenkins alleges nothing more than that HMFC and the class members entered into a "substantively similar or identical retail installment sales contracts," but makes no effort to explain how those contracts would be interpreted by each state.[56] In fact, there is wide variation among the contracts executed by potential class members across the country.[57] Where breach of contract claims are governed by the laws of multiple jurisdictions, multi-state class certification is inappropriate.[58]

---

[52] *Id.* at 304-05, citing *Ilhardt v. A.O. Smith Corporation,* 168 F.R.D. 613 (S.D. Ohio 1996)).

[53] See Appendix of district court cases that rejected nationwide classes because of the need to apply the laws of multiple states, attached hereto as Exhibit "G."

[54] *In re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 (7th Cir. 1995) (emphasis added).

[55] "The Named Plaintiff brings this action pursuant to Ohio Revised Code 1317.01 et seq, Ohio Revised Code 1309.610 et seq, Ohio Revised Code 1345.01 et seq, common law and other applicable laws..." Class Action Complaint at 1. "The Defendants violated state consumer protection statutes..." Complaint at 6. Specific common law causes of action alleged include Unjust Enrichment (Complaint at 30), Conversion (Complaint at 31); Breach of Contract (Complaint at 34) and Breach of the Implied Terms of Good Faith and Fair Dealing (Complaint at 35).

[56] *See* Complaint at 5, 34-35.

[57] Declaration of Aaron Cervantes, attached hereto as Exhibit "A"

[58] *Lichoff v. CSX Transp., Inc.,* 218 F.R.D. 564, 572-74 (N.D. Ohio 2003); *see also Wong v. PartyGaming, Ltd.,* 2007 WL 851879, *2 (N.D. Ohio 2007).

182467.11

A summary of some of the hundreds of differences among relevant state consumer laws relevant to Jenkins' class claims include: (a) who has standing to seek class relief under state consumer protection laws; (b) the amount and types of damages recoverable under various state laws; (c) whether each state has a unfair or deceptive trade practice or other consumer protection statute that might apply, and who and what is covered by those provisions; (d) whether a state has a motor vehicle Retail Installment Sales Act that modifies or supplements the UCC; (e) what differences may exist with regard to the timing of notices; (f) whether a state provides for a private right of action for particular violations; (g) the impact of each state's administrative rules and regulations affecting consumer claims, and their effect on construing and applying various statutes; (h) how to apply choice of law provisions in 50 states for this suit brought in Ohio; (i) the conditions precedent under state law to the right to pursue claims; (j) which statutes of limitations apply to which class members, and the effect of each state's tolling provisions; and (k) other issues defined, as well as undefined, that could only be identified by an unreasonably time consuming review and detailed review of each state's laws.[59]

### 1.    The UCC Is Not Uniform.

Courts regularly refuse to certify nationwide classes related to issues arising out of post-repossession notice and UCC claims because of the insurmountable differences in the jurisprudence governing such claims. The revised UCC was not adopted on the same date or uniformly by every state and in every jurisdiction, has its own nuances of interpretation and application.[60] In *Walsh v. Ford Motor Co.*, then Judge Ginsberg noted the "general unstartling statement" that "[t]he Uniform Commercial Code is not uniform."[61] The individual variations

---

[59] *See* Exhibit "G," Expert Report of Barkley Clark, attached hereto as Exhibit "D" and Declaration of Linda Mullenix at 36-37, attached hereto as Exhibit "J."

[60] *See, e.g.* Expert Report of Barkley Clark, attached hereto as Exhibit "D."

[61] *Walsh v. Ford Motor Co.*, 807 F.2d at 1017, citing White & Summers, UNIFORM COMMERCIAL CODE Vol. 7 (2d ed. 1980).

182467.11

among the states' UCC statutes overwhelm and make wholly unmanageable any proposed nationwide class.[62]

By suggesting that Rule 23 criteria can be met because UCC notice requirements are similar in various states, Jenkins ignores that a thorough analysis must take into account that: (1) multiple UCC sections govern the claims of putative class members in states other than Ohio; (2) in many states, UCC provisions are modified or superseded by provisions contained in other statutes; (3) the proposed class straddles two versions of the UCC which were enacted differently in each state; (4) certain UCC sections are designed to be interpreted by the courts of each state, requiring this Court to decide issues of first impression for multiple distant jurisdictions; and (5) Plaintiff has asserted other claims that are not uniformly applied across the country. [63]

In *Henry v. Consumer Portfolio*, a California court has recently denied nationwide class certification where plaintiffs similar to Jenkins alleged defective UCC post-repossession notices.[64] Individualized questions of law and fact regarding alleged violations of the UCC, consumer protection statutes and statute of limitations defenses and damages predominated and the proposed class was therefore unmanageable.[65] In addition, the plaintiff's claims arose prior to the 2001 revisions to the UCC, therefore his claims were atypical of many in the class. Jenkins' proposed six year class likewise straddles the revisions to the UCC notice provisions implemented in most states.[66]

---

[62] *See, e.g., Arons v. Rite Aid Corp.*, No. BER-L-4641-03, 2005 WL 975462, * 22 (N.J. Super. L. March 23, 2005) (rejecting nationwide claim because "[p]laintiffs have not presented a workable trial plan and has not convinced me of the similarities of among fifty states' breach of warranty law. This, at first blush, might seem ridiculous, since plaintiffs seek remedies under a uniform law, the UCC. However, the UCC is not uniform [citations omitted]. There are significant differences among many of the states that would materially affect the outcome").

[63] Expert Report of Barkley Clark at 9-11, 20-27, attached hereto as Exhibit "D"; *see also* Appendix summarizing differences in state laws, attached hereto as Exhibit "E."

[64] *Henry v. Consumer Portfolio*, No. 0047979 (Cal.Ct.App. Apr. 10, 2007) at 7-18, attached hereto as Exhibit "F."

[65] *Id.; see also* Declaration of Linda Mullenix at 36, attached hereto as Exhibit "J."

[66] Each state ratified the changes to the UCC at different times within the past six years and many have made subsequent changes. Therefore this Court would have to examine each state's law to determine which version of the UCC was in effect at a particular time in relation to any claim. Even a few days difference in the date of ratification

Under either version of the UCC, all inquiries related to the purported class claims are individualized and highly fact-intensive. Indeed, this fundamental principal – UCC class actions cannot be certified – is expressly recognized by one of the nation's leading treatises on the UCC:

> In general, these cases do not make particularly good candidates for class actions. Typically, each case rests upon its own facts, its own mode of sale, its own notice, and its own circumstances of resale. Thus, it is hard to make a case for a class action, for such an action must involve the same or similar circumstances with respect to each member of this class.[67]

Plaintiff has not begun to meet her burden of providing this Court with an analysis of the 49 states' laws related to the numerous elements of her UCC claims by addressing solely the narrow, notice issue under the post-2001 revised UCC provision. Plaintiff has wholly ignored all the other elements related to her UCC claims, including issues covering HMFC's right to counterclaim for and collect a deficiency balance, the interaction of that specific UCC provision with other state consumer laws, the statute of limitations and tolling issues and state law variations on available damages and other relief.

## 2. Commercial Reasonableness Evaluations Vary Widely Among the States.

Jenkins bases her UCC claims on Ohio Revised Code Sections 1309.610, 1309.611, 1309.612, 1309.613 and 1309.627, and the remedies provided in Sections 1309.625 and 1309.626. Ohio has several unique provisions and nuances of application in these consumer protection and UCC-based provisions.[68] Even in instances where statutory language based on the UCC is substantially similar among the states, the interpretation and application of those consumer protection and UCC-based provisions deviates widely.[69]

---

would cause a significant burden in any legal analysis. In his Expert Report, Barkley Clark analyzes the Ohio statutory revisions at 22-25, attached hereto as Exhibit "D."

[67] James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE § 34-14(b) (5th Ed. 2006); *see also C.F. Ridley v. First Nat'l Bank in Albuquerque*, 531 P.2d 607 (N.M. 1975)(commercial unreasonableness under § 9-504 [the UCC notice requirement prior to New Mexico's enactment of revised UCC 9-611] requires an individualized inquiry, precluding certification of a class challenging sufficiency of post-repossession notices).

[68] *See* Expert Report of Barkley Clark at 20-27, attached hereto as Exhibit "D."

[69] *See, e.g.,* Expert Report of Barkley Clark at 6-7, 9-11, attached hereto as Exhibit "D."

182467.11

Revised Article 9-626 and its predecessor 9-507 address the burden on the creditor to establish commercial reasonableness in the disposition of collateral if compliance with Article 9 is called into question by the debtor. Historically, courts interpreting 9-507 fell into three camps. First were those courts which construed 9-507 as establishing a presumption in favor of the debtor that the creditor acted in a commercially unreasonable manner if the creditor acted in violation of Article 9. The creditor could overcome this presumption by establishing it acted in a commercially reasonable manner. If the creditor established commercial reasonableness of its actions, then the creditor was entitled to recover the deficiency balance remaining after sale of the collateral. Jurisdictions following this construction of 9-507 employed what is called the "rebuttable presumption."[70] Other jurisdictions construed 9-507 to preclude recovery of any deficiency balance by the creditor deemed in violation of Article 9, regardless of whether it acted in a commercially reasonable manner.[71] These jurisdictions followed what has been called the "absolute bar rule."[72] Yet other jurisdictions employ the "set-off" approach.[73]

Revised Article 9-626 does not explicitly adopt either the "rebuttable presumption" or the "absolute bar rule" with regard to consumer transactions.[74] Although 9-626(a) codifies the rebuttable presumption with regard to non-consumer transactions, some states (but not Ohio) include 9-626(b) in their versions of 9-626 which "leave[s] to the court the determination of the proper rules in consumer transactions. The court may not infer from that limitation the nature of

---

[70] See Woodward v. Resource Bank, 436 S.E.2d 613, 617 (Va. 1993) and Expert Report of Barkley Clark at 14, attached hereto as Exhibit "D."

[71] See Oxford Resources Corp. v. Jenkins, 642 N.Y.S. 2d 488, 31 UCC 2d 575 (N.Y. City C.V. 1996) and Expert Report of Barkley Clark at 14, attached hereto as Exhibit "D."

[72] Expert Report of Barkley Clark at 14, attached hereto as Exhibit "D."

[73] As a third option, some courts allow the debtor to setoff the amount of the deficiency by any amount the debtor proves the creditor could have obtained for the collateral but did not as a consequence of a commercially unreasonable sale. See, e.g., In re Excello Press, Inc., 890 F.2d 896, 900 (7th Cir. 1989), citing Commercial Credit Corp. v. Wollgast, 521 P.2d 1191 (Wa. 1974); Barbour v. United States, 562 F.2d 19, 21-22 (10th Cir. 1977) (Kansas law) and Expert Report of Barkley Clark at 14, 23, attached hereto as Exhibit "D."

[74] Expert Report of Barkley Clark at 14-15, attached hereto as Exhibit "D."

the proper rule in consumer transactions…"[75]   As such, it is up to the courts in each state when applying 9-626 to consumer transactions to determine whether that jurisdiction will utilize the "rebuttable presumption" in consumer transactions.   In those states in which the courts have not addressed this issue subsequent to revision of the UCC, there may be no clear-cut answer.   As a result, this Court would be required, as a matter of first impression, to determine whether the "rebuttable presumption" applies under each state's jurisprudence as evidenced by clear legislative intent or based on what that state's "established approach" was under the prior UCC.

Where the "rebuttable presumption" approach is used, HMFC is entitled to present evidence to overcome the presumption by establishing that it acted in a commercially reasonable manner.[76]   UCC 9-627 addresses commercial reasonableness relating to disposition of collateral. With regard to each class member's individual disposition of collateral, HMFC may put forth evidence of the amount obtained and the circumstances surrounding the sale, the condition of the collateral and whether the sale was in accordance with "reasonable commercial practices among dealers in the type of property that was the subject of the disposition."[77]   Whether or not the creditor complied with notice provisions is only one factor a court should consider when determining whether "collection, enforcement or disposition" was conducted in a commercially reasonable method.[78]   Among other factors courts look at when determining commercially reasonableness are: (1) whether sale was public or private; (2) the time of sale, including how long after repossession, the time of day and the time of year; (3) whether an appraisal of the

---

[75] UCC Section 9-626, codified in Ohio as O.R.C. 1309.626.
[76] James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE, § 34-14 (5th Ed. 2006).
[77] 9-627(b)(3).
[78] Richard C. Tinney, J.D., Annotation, *What Is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9-504(3)*, 7 A.L.R. 4th 308 (1981); Expert Report of Barkley Clark at 12-13, attached hereto as Exhibit "D."

property was obtained; (4) whether repairs were made before the sale; (5) whether the sale was publicized; and (6) the number of bidders and bids.[79]

This list is not exhaustive as courts have frequently held that the commercial reasonableness of a disposition of collateral is an individual fact issue which requires consideration of all aspects of the sale.[80] This analysis applies following the revision of Article 9.[81] With the commercial reasonableness of each of thousands of dispositions of collateral being of primary importance in the establishment of each class member's claim, a mini-trial of each class member's claim would be required, thereby making trial of this case as a class action grossly unmanageable based on the predominance of individual fact issues.

### 3. Even Under Only the Ohio UCC, Jenkins' Claims Are Not Certifiable.

Even had Plaintiff limited the scope of the proposed class solely to Ohio residents, the same obstacles to certification would exist, as becomes apparent when looking at how individual and class claims would be tried under Ohio law for any class. Jenkins claims she received some notice of HMFC's repossession from HMFC, but not all required notices. At trial, the first issue Jenkins will raise as to whether HMFC complied with the UCC and Ohio RISA with respect to notices will concern which notices Jenkins did or did not receive. However, receipt of notice is not required under the UCC or the Ohio RISA.[82] Rather, it is whether notices were sent by the creditor that determines potential liability.[83] Therefore, at Jenkins' trial, HMFC will put on evidence as to the notices that were sent to Jenkins.

---

[79] Expert Report of Barkley Clark at 17, 20, attached hereto as Exhibit "D;" Barkley Clark, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 4.08 (Rev. Ed. 2000).
[80] Richard C. Tinney, J.D., Annotation, *What Is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9-504(3)*, 7 A.L.R. 4th 308 (1981).
[81] Expert Report of Barkley Clark at 17, 20, attached hereto as Exhibit "D;" Barkley Clark, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 4.08 (Rev. Ed. 2000).
[82] UCC 9-613; O.R.C. §1309.613; O.R.C. §1317.16.
[83] *Id.*

Expanding just this factual issue of the sufficiency of notice to individual class members demonstrates the predominance of individual issues and unmanageability of even a class that is limited to Ohio.[84] During the relevant period, as defined by Jenkins, HMFC utilized at least five different post-repossession notice forms for Ohio accounts.[85] A trial of the class claims would require a class-member-by-class-member determination of which forms (and which version of each form) HMFC alleges were sent to each class member and the individual circumstances of sending and receiving notices.[86] In the event an individual class member denies receipt of certain forms (as does Jenkins), a jury must determine whether a particular form was in fact sent to that particular class member.

Even if class members could establish a violation of Ohio's version of Article 9 or the Ohio RISA, in order to determine the appropriate remedy under O.R.C. §1309.625, transaction-specific fact finding must occur. Ohio's O.R.C. §1309.626(c) specifically applies the fact-intensive "rebuttable presumption" to consumer transactions.[87] Therefore, as to the disposition of collateral for each class member, HMFC would be entitled to put on evidence of commercially reasonable disposition, which depends on the facts of each individual transaction.[88]

During the relevant period, HMFC utilized three auction facilities for disposition of Ohio collateral. One was in each of Pennsylvania, Indiana and Ohio.[89] A threshold question would be whether the procedures utilized by each auction were within "reasonable commercial practices among dealers..."[90] Then the question would be, as to each disposition, whether those

---

[84] Expert Report of Barkley Clark at 19-20, attached hereto as Exhibit "D."
[85] Declaration of Aaron Cervantes, attached hereto as Exhibit "A."
[86] Expert Report of Barkley Clark at 19, attached hereto as Exhibit "D."
[87] O.R.C. §1309.626; Expert Report of Barkley Clark at 26, attached hereto as Exhibit "D."
[88] *GMAC v. Stoval*, 872 N.E.2d 91 (Ill. App. 2007) is very instructive on this issue. The Illinois court reviews issues relating to (1) evidence and burden of proof regarding sending of notice, (2) the effect under the Illinois version of the UCC of an absence of notice, (3) interaction between the Illinois RISA and the UCC, (4) proper application of the rebuttable presumption, and (5) discussion of facts and evidence relating to commercial reasonableness.
[89] Declaration of Aaron Cervantes, attached hereto as Exhibit "A."
[90] O.R.C. §1309.627.

182467.11

procedures were followed during the relevant time period. Although not dispositive of commercial reasonableness, HMFC would be entitled to put on evidence including expert testimony that the amount obtained for the vehicle as to each sale was commercially reasonable, taking into consideration the year, make, model, appearance and mechanical condition of the vehicle.[91] A fact finder may also have to consider the time of year a vehicle was sold, whether it had been offered at prior auctions and not sold and whether there was an over-supply of this make and model in the market at that time.

As to class members for whom it is determined that HMFC acted in a commercially reasonable manner, thereby rebutting the presumption that the value of the collateral was equal to the amount of the outstanding debt, HMFC would be entitled to recover its deficiency from the class member, net of any actual or statutory damages. As a result, due to their status as class members, they could end up with a judicial finding of the dollar amount for which they are liable to HMFC.

With regard to class members' individual damages, Ohio's Sections 1309.625 and 1309.626 provide for the recovery of actual damages, but that amount is offset by any deficiency owed. In Jenkins' case, the current deficiency balance including accrued interest is approximately $21,900. The original amount financed by Jenkins was $21,316.49 and the disclosed finance charge was $8,775. Under Ohio law, if HMFC were able to overcome the rebuttable presumption, Jenkins would still owe HMFC approximately $11,000 if she "succeeded" in prosecuting her claims. This number is reached by taking the disclosed finance charge ($8,775), plus ten percent of the amount financed ($2,132) and offsetting the total ($10,907) against the current deficiency balance of $21,900 (not including any allowable

---

[91] *Tex Star Motors, Inc. v. Regal Finance Co., Ltd.*, No. 14-05-00215-CV, slip op. at 3-5, n. 8 (Tex. App.--Houston [14th Dist.], July 19, 2007) (discussion of factors relating to commercial reasonableness and potential need for expert testimony on this issue), attached hereto as Exhibit "H."

attorneys fees).[92] Jenkins' best case scenario should HMFC not be able to overcome the rebuttable presumption would be to eliminate her liability for a deficiency.[93] As with Jenkins, a separate hearing would be required for each class member to determine actual damages.

As is the case for Jenkins, it can be assumed that a proximate cause finding or proportioning of damages would need to occur as to class members to distinguish the amount of damages attributable to class versus individual claims that are not part of this case or which they choose to forego due to joinder as a class member. Although Jenkins has dismissed her emotional distress claims, presumably there are putative class members who may also claim these types of individualized damages that will require individual interpretation.

> **B.**    **Variations in Statutes of Limitation Make Jenkins' Claims Uncertifiable.**

As exemplified by this Court's analysis in its ruling on Defendants' Motion to Dismiss, the limitations period applicable to the causes of action asserted by Jenkins on behalf of the putative class are often unclear. Because there was no specific statute of limitations within the Ohio statutes, this Court engaged in a thorough evaluation of Ohio common law to apply a statute of limitations to Jenkins' Ohio-based claims.[94] Analysis of these causes of action in the other 48 states would require an examination of the common law of each state to determine the statute of limitations for consumer claims, as well as each state's commercial code, tort and contract causes of action.[95] This Court, or a jury, would then be required to analyze each class member's claims in relation to his or her own state's laws to determine whether they were barred by the statute of limitations, a factor weighing against certification under Rule 23(b)(3).[96]

---

[92] Declaration of Aaron Cervantes and Jenkins Retail Installment Contract, attached hereto as Exhibit "A(6)."
[93] Expert Report of Barkley Clark at 25, attached hereto as Exhibit "D."
[94] Expert Report of Barkley Clark at 10, 17-18, 26, attached hereto as Exhibit "D."
[95] *Id.*
[96] *Pettrey v. Enterprise Title Agency,* 241 F.R.D. 268, 284 (N.D. Ohio 2006); Declaration of Linda Mullenix at 36, attached hereto as Exhibit "J."

Other than the Ohio limitations period as found by this Court, other states have limitation periods ranging from one to six years.[97]  These periods can be altered by discovery rules which vary from state to state.  Thus, the Court would have to review each state's statutory limitations period and then perform an individual discovery analysis for each claim.  Alabama has a six-year statute of limitations for breach of the UCC notice requirement.[98]  Alaska has a two-year statute of limitations for actions brought upon a liability created by statute.[99]  Florida has a four-year statute of limitations for actions founded on statutory liability and actions for statutory penalty or forfeiture.[100]  Arkansas has a five-year catchall statute of limitations.[101]  Which statute of limitations is appropriate varies greatly from state to state, with at least five possible statutes of limitation applicable for each state based on the claims made and remedies sought.[102]

### C.    Counterclaims Make Class Claims Unsuitable for Class Treatment.

Federal Rule of Civil Procedure 13(a) provides a pleading shall state as a counterclaim any claim which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.[103]  HMFC's claims for deficiencies in this case are compulsory counterclaims that must be brought in conjunction with the class claims.  The United States Court of Appeals for the Eleventh Circuit recognized and followed this principle in *Heaven v. SunTrust Company Bank*.[104]  The court denied class certification, reasoning in part that the

---

[97] *Id.*

[98] Ala. Code 1975 §6-2-34(9) (2007); *Weaver v. Amer. Nat'l Bank*, 452 So.2d 469 (Ala. 1984) (breach of Article 9 requirements is a breach of contract); *see also Trust Co. Bank v. State*, 420 So.2d 10 (Ala. 1982) (Alabama UCC has no express statute of limitations governing actions for breach of warranty, therefore the general statute of limitations governing contract controls).

[99] Alaska Stat. §9.10.070 (2007).

[100] Fla. Stat. Ann. §95.11(3)(f), (n) (West 2006); *see also Barnett Recovery Corp. v. Fornasari*, 655 So. 1274 (Fl. App. 1995) (four year statute of limitations on actions under the UCC provision governing a creditor's ability to dispose of property securing a debt and five year statute of limitations on actions arising out of installment contracts).

[101] Ark.Code Ann. §4-9-625; A.C.A. §16-56-115 (2001).

[102] Expert Report of Barkley Clark at 17-18, attached hereto as Exhibit "D."

[103] Fed. R. Civ. P. 13(a).

[104] 118 F.3d 735 (11th Cir. 1997) (class plaintiff sued SunTrust on the terms of her lease agreement and SunTrust counterclaimed for the collection of the debt).

exposure of individual class members as counterclaim defendants could well exceed the amount they might recover as statutory penalties as class members.[105] Many other jurisdictions have followed the holding in *Heaven* that debt counterclaims are compulsory.[106] Ohio state and federal courts have found a "logical relationship" between a debtor's claims against a creditor and an action on the debt due to default, which make such claims compulsory counterclaims.[107] In this case, HMFC intends to pursue counterclaims for all deficiencies, which are compulsory and affect most if not all members of the proposed 49-state class, rendering any class action entirely unmanageable.

### D.   Variations In Compensatory Damages Make the Class Uncertifiable.

Jenkins, on behalf of the putative class seeks, "compensatory damages in an amount to be determined at trial . . ."[108] Compensatory damages vary by individual and there is little consensus regarding the types and quantities of damages that are permitted for consumer claims.[109] Even variations in damages and the types of damages recoverable will render a class uncertifiable. In denying class certification, the Sixth Circuit has "found persuasive the fact that the compensatory damages request would have to be determined by an individual inquiry... which would predominate over the requested injunctive or declaratory relief."[110] The Fifth Circuit has found:

---

[105] *Id.* at 738.

[106] *See Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1363 (5th Cir. 1979) (holding debt counterclaims are compulsory in Truth in Lending Act cases); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), aff'd 445 U.S. 326 (1980) (district court denied certification on mere possibility or speculation that defendant would assert counterclaims when none had been filed).

[107] *Demmler v. Bank One NA*, No. 2:05-cv-322, slip op. at 9-10 (S.D. Ohio March 9, 2006), citing *Rettig Enterprises, Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994), attached hereto as Exhibit "I."

[108] Complaint at 41.

[109] *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D. Ill. 1998)(citing Sandra Benson Brantley & Beverly C. Moore, Jr., *Commonality of Applicable State Law in Nationwide or Multistate Class Actions – Deceptive Trade Practices*, 18 CLASS ACTION REPORTS 188, 214-215 (1995); *see also Klay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999); Declaration of Linda Mullenix at 24, attached hereto as Exhibit "J."

[110] *Reeb v. Ohio Dep't of Rehabilitation & Correction*, 435 F.3d 639 (6th Cir. 2006).

Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, where the formula by which the parties propose to calculate individual damages is clearly inadequate. Thus, the Fourth Circuit held in *Windham v. American Brands, Inc*, that where the issue of damages 'does not lend itself to . . . mechanical calculation, but requires 'separate "mini-trial[s]"' of an overwhelming large number of individual claims,' the need to calculate individual damages will defeat predominance . . . "The need for individual proof of damages" will bar class certification.[111]

The complexity of the damage calculation makes class certification inappropriate. The damage analysis is so highly individualized and fact-bound that it forces the case into "multiple lawsuits separately tried."[112] Each plaintiff's damage claims will focus almost entirely on facts and issues specific to individuals, rather than the class as a whole.[113] In this instance, assessment of each claim will require a separate mini-trial for each class member. Not only will this Court be required to examine the law of 49 states to determine what damages may be allowed and how they are calculated, but each plaintiff's repossession sale must be examined for commercial reasonableness. This inquiry would swamp the Court for years.

### E.    Class Treatment Is Not Superior Due to Incentive for Individual Actions.

Superiority is lacking because "the most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case."[114] Individual suits are highly feasible in this case where individual damage claims are potentially high and the

---

[111] *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003).

[112] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744 (5th Cir. 2003)(apportioned calculation of damages as required by Texas Unauthorized Practice of Law statute led to finding that individual issues predominate), quoting *Castano v. Amer. Tobacco Co., Inc.*, 84 F.3d 734, 745 n. 19 (5th Cir. 1996).

[113] *Bell Atlantic Corporation v. AT&T Corp.*, 339 F.3d 294, 308 (5th Cir. 2003)("class certification is not appropriate" because plaintiffs "fail to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement of Rule 23(b)(3)"); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998)(certification improper where "plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole").

[114] *See, e.g., Castano*, 84 F.3d at 748, *accord, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *In re Rhone-Poulenc v. Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995).

182467.11

prevailing party may recover attorneys' fees.[115]

## V. JENKINS HAS NOT DEFINED AN ASCERTAINABLE CLASS

Jenkins has yet to describe a class that could overcome the initial hurdle of ascertainability, requiring denial of the proposed class.[116]

> Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the "best notice practicable" in a Rule 23(b)(3) action. The definition must be precise, objective and presently ascertainable.[117]

A class definition must avoid subjective standards that depend on resolution of the merits.[118] While the "rigorous analysis" standard requires an assessment of the underlying factual and legal basis for a proposed class action, as well as defenses, defining the membership of a class based on a finding of liability is another matter entirely.[119]

Jenkins' proposed class definitions are fundamentally flawed because they depend upon a subjective finding of liability.[120] There is no objective way to know whether a claimant was a "victim" of HMFC's alleged improper repossession, or failure to send notices and/or complying notice(s), or commercially unreasonable post-repossession sale, without painstaking evaluation of the facts of each individual's case. **Under any of Jenkins' proposed definitions, liability has to already have been established: potential class members already know they cannot**

---

[115] *Castano*, 84 F.3d at 748, citing *Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5th Cir. 1975)(acknowledging the availability of attorneys' fees is a common basis for finding non-superiority); *see also* Expert Report of Barkley Clark at 16, attached hereto as Exhibit "D;" Declaration of Linda Mullenix at 39-40, attached hereto as Exhibit "J."
[116] Declaration of Linda Mullenix at 16-19, attached hereto as Exhibit "J."
[117] MANUAL ON COMPLEX LITIGATION FOURTH 270 §21.222 (4th ed. 2004); MANUAL ON COMPLEX LITIGATION 3rd § 30.14 (1995); *see also Miller v. University of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); *Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430, 442 (M.D. Fla. 2000); *see also Buford v. H&R Block*, 168 F.R.D. 340 (S.D. Ga. 1996) (class definition is an implicit requirement that must be met before a Rule 23 analysis can be undertaken by the district court).
[118] *See, e.g., Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995)("defining the purported class as 'all residents and businesses who have received unsolicited facsimile advertisements' requires addressing the central issue of liability" and "[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each case.").
[119] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Bentley v. Honeywell International, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004) ("[b]efore delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class.").
[120] Declaration of Linda Mullenix at 16-19, attached hereto as Exhibit "J."

lose, and HMFC cannot win, because **any class member who could be found not to have a valid claim is automatically defined out of the class.**[121]  Such a fail-safe class is prohibited under Rule 23 because it is manifestly unfair to the defendant, and provides the plaintiffs a no-lose proposition at trial.[122]

Jenkins' proposed fail-safe class definitions are inconsistent with Rule 23(c)(3)'s provision that a judgment adverse to the class will bind all class members.[123]  Defining persons out of the class who lack valid claims would give HMFC no *res judicata* protection because it does not bar the "losing" claimant from re-litigating any claim against HMFC.[124]

## VI.    JENKINS IS AN INADEQUATE AND ATYPICAL CLASS REPRESENTATIVE.

The proposed class representative must show that he or she will fairly and adequately protect the interests of the class.[125]  Without adequate representation, "there can be no preclusive effect of the judgment."[126]  An adequate representative "must have common interests with the unnamed members of the class" and "it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel."[127]  The adequacy inquiry uncovers conflicts of interest between the proposed class representative and the proposed class.[128]

---

[121] *See, e.g., Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980)(class would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment).

[122] *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681(7th Cir. 2001); *Ostler v. Level 3 Communications, Inc.*, 2002 WL 31040337 at *2 (S.D. Ind. Aug. 27, 2002)(plaintiffs sought improper "fail-safe" or "one-way intervention" class because class definition made membership depend on ability to bring successful merits claim); Declaration of Linda Mullenix at 16-19, attached hereto as Exhibit "J."

[123] *Isaacs* at 681-82 (reversing certification order for one-way intervention), citing *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999).

[124] *See Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 405 (E.D. Pa. 1995)(cannot define class as all persons who received "unsolicited" fact advertisements); *Hagan v. City of Winnemucca*, 108 FRD 61, 63 (D. Nev. 1985) (certification denied where class defined as individuals who had been discriminated against because it required reaching the merits of the case in order to ascertain class membership); MANUAL FOR COMPLEX LITIGATION FOURTH (4th ed. 2004) §21.222 (class definition should not include terms that depend on resolution on the merits, *e.g.* "persons who were discriminated against.").

[125] FED. R. CIV. P. 23(a)(4).

[126] *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002).

[127] *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citations omitted); *see also Amchem*, 521 U.S. at 626, n.20; *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).

[128] *Amchem*, 521 U.S. at 625; *Bacon v. Honda of America Mfg.*, 205 F.R.D. 466, 481 (S.D. Ohio 2001); *see also* Declaration of Linda Mullenix at 26, attached hereto as Exhibit "J."

182467.11

The proposed class representative also must have claims or defenses that are typical of the class.[129] The class representative must be "part of the class and possess the same interest and suffer the same injury as the class members."[130] To be typical, the representative's claims must arise from the same event or course of conduct giving rise to the claims of other class members and must be based on the same legal theories.[131] Typicality is not met where a "named plaintiff who has proved his own claim would not necessarily have proved anybody else's claim."[132]

The United States Supreme Court has suggested the typicality and adequacy requirements are related and intertwined.[133] A class representative whose factual and legal claims and defenses differ from those of other class members renders the class representative both atypical and inadequate to represent all class members. Class certification can be denied based on the possibility of antagonism in the proposed class; the defendant's evidentiary burden is slight.[134]

In analyzing Jenkins' adequacy to represent the class, "there can be no conflict between the named plaintiffs and other members of the class, and the named plaintiffs must be able to fulfill their various duties."[135] "Theoretically, a class representative who has a conflict with the class ... will not prosecute the class claims as vigorously as when there is no conflict or, if the

---

[129] FED. R. CIV. P. 23(a)(3); *see also* Declaration of Linda Mullenix at 36, attached hereto as Exhibit "J.".
[130] *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 430 (1977); Declaration of Linda Mullenix at 22, attached hereto as Exhibit "J."
[131] *Haywood v. Barnes*, 109 F.R.D. 568, 578 (1986); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.
[132] *Bacon v. Honda of America Mfg.*, 205 F.R.D. 466, 479 (S.D. Ohio 2001), citing *Sprague v. GMC*, 133 F.3d at 399; Declaration of Linda Mullenix at 25, attached hereto as Exhibit "J."
[133] *Amchem* at 626 n.20; *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998); *see also General Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)(in order to demonstrate they are adequate representatives, named plaintiffs must show their claims are typical of putative class members' claims); *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)(adequate representation requirement overlaps with typicality requirement because in the absence of typical claims, class representative has no incentive to pursue claims of other class members); *see also* Declaration of Linda Mullenix at 26-27, attached hereto as Exhibit "J."
[134] *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485-86 (5th Cir. 1982).
[135] *In re Foundry Resins Antitrust Litigation*, 242 F.R.D. 393, 407 (S.D. Ohio 2007); Declaration of Linda Mullenix at 26-29, attached hereto as Exhibit "J."

182467.11

conflict is sufficiently basic to the class claims, the plaintiff will not prosecute the class claims at all when the plaintiff prosecutes his or her individual claims."[136]

### A.    Jenkins' Claims Differ From Those of the Class.

Jenkins has claims regarding her repossession and insurance premiums for which she apparently does not now seek class certification.[137] Either she is willing to shortchange others by not asserting these claims as class claims or she acknowledges she does not have much in common with the putative class.  That Jenkins does not necessarily share a common injury with the members of the class makes her inadequate to represent the class.[138]

Jenkins also apparently foregoes class claims for actual damages.  Jenkins asserts she has suffered significant actual damages and presumably will continue to pursue her own damage claims, yet is aware that determining actual damages for each class member would make the class claims uncertifiable.  Jenkins' actions penalize the other class members because the principle of *res judicata* would bar them from raising their unasserted claims in the future.

Jenkins cannot meet her burden of proof that her situation was typical of a near-nationwide class.  Jenkins' vehicle was repossessed on October 20, 2002, allegedly because her credit accident and health insurance did not make her vehicle payments. Jenkins alleges she did not receive any post-repossession form that complies with the UCC, only a Repossession and Right to Cure notice.[139]  Jenkins' situation was not necessarily typical of Ohio residents because presumably some Ohio residents during the relevant time period did received notice which Jenkins asserts she not receive.[140]  Whereas a special post-repossession notice is required in states such as Connecticut, Illinois, Louisiana, Maryland and Pennsylvania, Ohio is the only state

---

[136] NEWBERG ON CLASS ACTIONS § 3:26.
[137] Complaint at 10.
[138] *See Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).
[139] Complaint at 10-11, 17-21, 27-30; Exhibit 3 to Complaint.
[140] Declaration of Aaron Cervantes, attached hereto as Exhibit "A."

182467.11

where the debtor is required to receive three notices, making Jenkins' notice claim atypical of any near-nationwide class.[141]

### B. Jenkins' Mental Health Issues Make Her an Inadequate Representative.

Jenkins' current mental health disability raises issues about her fitness to carry out the duties of a class representation. In *American Medical Systems*, the Sixth Circuit de-certified a class where the class representative "had a history of psychiatric problems, for which he received total and permanent disability benefits from the State of Ohio," including "memory loss, impaired concentration, and a lack of common sense."[142] A "plaintiff's history of physical ailments and corresponding neurosis 'may affect plaintiff's ability to vigorously participate in the prosecution of a class action.'"[143]

Jenkins has been disabled since March 2002, suffers from depression, anxiety and self-esteem problems and the depression and anxiety continue to make her unable to work.[144] The Social Security Administration found Jenkins disabled and has been providing disability benefits to her from at least March 2003 through the present.[145] Jenkins' significant mental health issues make her unfit to adequately represent the class.[146]

## VII.  CONCLUSION

Jenkins cannot succeed in her attempts to certify a class with regard to one state, much less forty-nine states. For the foregoing reasons, Defendant Hyundai Motor Finance Company respectfully requests that Plaintiff's Motion for Class Certification be denied.

---

[141]Expert Report of Barkley Clark at 9, attached hereto as Exhibit "D."
[142] *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1075 (6th Cir. 1996).
[143] *American Medical*, 75 F.3d at 1083 (citing *Roundtree v. Cincinnati Bell, Inc.*, 90 F.R.D. 7, 10 (S.D.Ohio 1979)) (court denied class certification where the representative was inadequate based on his physical, mental, and financial situation).
[144] *See* deposition of Jenkins at p. 58, ln. 23--p. 59, ln. 17 and p. 61, ln. 11--p. 62, ln. 16, attached as Exhibit "B."
[145] Deposition of Jenkins at p. 59, ln. 15--p. 60, ln. 11, attached hereto as Exhibit "B."
[146] Declaration of Linda Mullenix at 33, attached hereto as Exhibit "J."

182467.11

Respectfully submitted,

s/ Jeffrey R. Seewald
Jeffrey R. Seewald (Texas Bar No. 17986640)
**McGlinchey Stafford, PLLC**
1001 McKinney, Suite 1500
Houston, TX 77002
Phone: (713) 520-1900
Fax:    (713) 520-1025
jseewald@mcglinchey.com

Anthony Rollo (Louisiana Bar No. 01133)
**McGlinchey Stafford, PLLC**
One American Place, 14th Floor
301 Main Street
Baton Rouge, Louisiana 70825
Phone: (225) 382-3685
Fax:    (225) 343-3076
arollo@mcglinchey.com

James S. Wertheim (0029464)
**McGlinchey Stafford, PLLC**
25550 Chagrin Blvd., Suite 406
Cleveland, OH 44122
Phone: (216) 378-9905
Fax:    (216) 378-9910
jwertheim@mcglinchey.com

*Attorneys for Defendant*
*Hyundai Motor Finance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Response of Defendant Hyundai Motor Finance Company to Plaintiff's Motion for Class Certification* has been sent via electronically, this 29th day of October, 2007, to the following:

David P. Meyer, Esq.
Patrick G. Warner, Esq.
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Arena District
Columbus, Ohio 43215

Thomas A. Hargett, Esq.
Thomas K. Caldwell, Esq.
Maddox, Hargett & Caruso
10100 Lantern Road
Fishers, Indiana 46038

Scott L. Starr, Esq.
Andrew B. Miller, Esq.
Starr Austen Tribbett Myers & Miller
201 South Third Street
Logansport, Indiana 46947


s/ Jeffrey R. Seewald
Jeffrey R. Seewald

182467.11