## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Vicki D. Jenkins**, individually and on behalf of all similarly situated persons,

     Plaintiff,

     **v.**

**Hyundai Motor Finance Company**,

     Defendant.

**Case No. 2:04-CV-720**

**Judge Edmund A. Sargus, Jr.**

**Magistrate Judge Norah McCann King**

---

## NAMED PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO NAMED PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# SUMMARY OF ARGUMENT

## I.    INTRODUCTION – (pp. 1-3 )

The laws of all 49 states at issue in this case[1] require creditors to send a written, post-repossession/pre-disposition notice (hereinafter "Notice") to debtors before creditors sell the vehicles.  Plaintiff Vicki D. Jenkins (hereinafter "Jenkins" or "Plaintiff") alleges that Hyundai failed to send the Notice.  The burden falls on Hyundai to prove that it sent the Notice.[2]  This question is best resolved on a class-wide basis.  Not certifying this case would send the wrong message to creditors: that creditors need not abide by statutory notice requirements in liquidating repossessed collateral, because debtors have no ability to hold them responsible.

## II.    FACTUAL BACKGROUND – (pp. 3-4 )

Hyundai's Asset Remarketing Department is responsible for the only thing relevant to this case: Hyundai's procedures related to the disposition of repossessed vehicles.[3]  For each repossessed vehicle, the Asset Remarketing Department creates a paper file which contains identical documentation.[4]  This file is created by a single employee (hereinafter the "Notice Person") who is also responsible for sending the Notice to debtors.

The Notice Person relied on a single, four-page document (the "Notice Manual") which contained all of the instructions and "requirements" regarding the sending of Notices.[5]

---

[1] This case excludes consumers residing in the State of California.  Hyundai and California consumers recently settled the claims in that class action, which were based on the same conduct as is alleged in this case.  The California court granted preliminary approval of a California statewide class settlement.

[2] UCC § 9-626.

[3] Deposition of Aaron Cervantes attached as Exhibit 1 (hereinafter "Cervantes Depo." or "Ex. 1" p. 35, ll. 4-16.

[4] *Id.* at 26, ll. 12-23; 27, ll. 1-4 and 17-25.

[5] *Id.* at 53, ll. 10-18; 54, ll. 15-18; 143, ll. 18-25; 144, ll. 1-13; and Notice Manual attached as Exhibit 2 (hereinafter "Notice Manual" or "Ex. 2")

Hyundai's Notices were merely "fill in the blank forms" completed by the Notice Person. The generic Notice used in 39 states was printed from Hyundai's computer system.[6] The substantially similar Notices used in the other 11 states were printed from the Notice Person's desktop computer hard drive.[7]

## III.    RULE 23 STANDARDS – (pp. 5-6 )

Jenkins satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements.

## IV.    JENKINS SATISFIES THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(B)(3) – (p. 6 )

Hyundai's most knowledgeable employee testified that residents of 39 states were to receive identical Notices. Residents of the remaining 11 states were to receive substantially similar Notices. The common legal issue is whether these Notices, if Hyundai can prove it sent them at all, satisfy the uniform requirements found in each state's version of the UCC.

### A.    Multi-State Classes of this Nature are Certifiable – (pp. 7-9)

The Notice statutes at issue in this case have been adopted in all 50 states and the District of Columbia. Certification of a nationwide class asserting claims under the UCC is appropriate under Civ. R. 23.[8] Moreover, claims based upon standardized form documents are particularly appropriate for class treatment.

#### 1.    The Particular UCC Provisions Actually at Issue in this Case are Nearly Uniform – (pp. 9-11 )

---

[6] *Id.* at 47, ll.19-24; 49, ll. 2-8; and 50, ll. 17-21.
[7] *Id.* at 50, ll. 22-25; 51, ll. 1-2 and 21-25; and 52, ll. 1-4.
[8] *See, e.g., Allapattah Servs. v. Exxon Corp.*, 188 F.R.D. 667, 671 (S.D. Fla. 1999) (internal citations omitted) (noting that "[a]s a threshold matter, the Court recognizes the policies and principles which underlie the Uniform Commercial Code … 'to make uniform the law among the various jurisdictions'," and certifying a nationwide class asserting claims for breach of a sales contract under the UCC).

First, the issue of whether Hyundai can prove that it sent any pre-disposition Notice at all to the class members can be litigated collectively. The requirement that a notice be sent is **uniform** in all 49 states.[9] Second, if Hyundai can prove that it sent a notice, the question of whether Hyundai sent the **proper** Notice with the required contents can be litigated collectively. In every state (except North Dakota), eight distinct items must be present in the Notice.[10] Although damages should not figure into the Rule 23(b)(3) analysis, the damages available to class members in the 49 states are also nearly uniform.[11] Slight variations in the law regarding the content of the Notice and the damages available to class members may be resolved by the use of a handful of subclasses, if that becomes necessary.

### 2. **Commercial Reasonableness Does Not Impede Certification** – (pp.11-12)

This is not a commercial reasonableness case, and does not involve the plethora of issues found in cases challenging commercial reasonableness. With respect to the notice requirement, there is no "reasonableness" to it. Either Hyundai sent the Notice or it did not; either the Notice included the required items or it did not.

### 3. **A Class May Be Properly Certified Based Upon Claims Under Ohio's Version of the UCC** – (pp. 12-13 )

Since Ohio is an "absolute bar" state, there is no individualized commercial reasonableness problem.[12] As previously determined by the Court, despite the deletion of any express reference to

---

[9] *See* Analysis of Hyundai's Notice Manual attached as Exhibit 3 (hereinafter referred to as "Analysis of Notice Manual" or "Ex. 3"); Cervantes Depo. at 254; Notice Manual; and Affidavit of Jeffrey T. Ferriell attached as Exhibit 4. Plaintiff has moved to strike the expert "testimony" Hyundai submitted in support of its Response on the basis that they are nothing more than thinly veiled supplemental legal briefing masquerading as opinion "testimony." They are intended solely to circumvent the Court's rules regarding the length of legal memoranda. However, since Plaintiff's Motion to Strike is pending, Plaintiff attaches the report of her Article 9 rebuttal expert, to be considered if the Court decides that it needs such materials to rule on Plaintiff's Motion for Class Certification.
[10] *Id*.
[11] Exhibit 3.
[12] *See infra* at 17 for a description of the absolute bar rule.

a penalty provision in Ohio Rev. Code § 1317.16 by the 2001 amendments, "Ohio courts would continue to provide damages for violations" of that statute.[13]

**B.      Variations in Statutes of Limitations Do Not Impede Certification** – (pp. 14-15)

As this Court has recently held, differences in statutes of limitations do not automatically undermine predominance, and indeed, the limitations question itself can "serve to bind the class with yet another common question."[14]   In addition, because of the timing of the filing of this case and the enactment of revised Article 9, few if any class members' claims will be barred by any statute of limitations.

**C.      Hyundai's Compulsory Counterclaims Will Not Render This Action Unmanageable** – (pp. 16-17 )

The Court has held that compulsory counterclaims, even if they are against an entire class, should not impede class certification.[15]   Additionally, with respect to class members in "absolute bar" states, Hyundai will have no available counterclaims.

**D.      Variations in Compensatory Damages Do Not Preclude Certification** – (pp.17-18)

Without a certified class, virtually no class member will get any relief.   However, if the Class prevails at trial, class members in every state will be able to have their deficiency balances completely extinguished or significantly reduced.   Additionally, many class members will be eligible to receive statutory damages.   These damages are calculated mathematically, and they amount to thousands of dollars for some class members.

---

[13] *See Jenkins v. Hyundai Motor Fin.*, 389 F. Supp. 2d 961, 967-68 (S.D. Ohio 2005).
[14] *Tomlison v. Kroger Co.* , 2007 U.S. Dist. LEXIS 23805, *21 (S.D. Ohio 2007). Attached as Exhibit 5.
[15] *Owner-Operator Indep. Drivers Ass'n v. Arctic Express*, 2001 U.S. Dist. LEXIS 24963, *32 (S.D. Ohio 2001) (*citing Heaven v. Trust Co. Bank,* 118 F.3d 735 (11th Cir. 1997).  Attached as Exhibit 6.

**E.  Class Treatment is the Superior Method of Resolution** – (pp. 18-19 )

The typical class member has no idea that Hyundai has illegally disposed of his or her

vehicle.  Few class members will sue individually when they are unlikely even to know that they

have a claim.  Class certification is not only the superior method of resolving class members'

claims; for virtually all class members, it is the only method.

## V.  JENKINS PROPOSES A CLASS DEFINITION THAT AVOIDS ANY "FAILSAFE CLASS" PROBLEMS – (pp. 19-20)

Based on discovery recently produced, Plaintiff proposes the following definition:

Consumers in all states, except California, whose vehicles were repossessed by Defendant after the states' enactment of section 9-611 of the Uniform Commercial Code ("UCC") and subsequently disposed of by Defendant.

## VI.  JENKINS IS AN ADEQUATE AND TYPICAL REPRESENTATIVE

**A.  Any difference in Jenkins' claims does not affect Class Certification** – (pp. 20-21 )

Hyundai's failure to send the Notice is at the center of this dispute, and is the common

course of conduct that unites all class members.  In Jenkins' own words, the class members "are

similar because the notices that were supposed to have been sent out weren't sent out."[16]

**B.  Jenkins does not have mental health issues that make her inadequate** – (pp.21-22)

Jenkins suffers from anxiety and depression, which are both common ailments.  Jenkins'

adequacy was amply demonstrated during her deposition, where she thoroughly answered each of

Hyundai's questions.  Jenkins has demonstrated that she understands her role in this litigation and

her responsibility to the class members.  She takes her duties seriously and makes an excellent class

representative.

---

[16] Deposition of Vicki Jenkins attached as Exhibit 7 (hereinafter "Jenkins Depo." or "Ex. 7"), p. 26, ll. 3-4.

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   FACTUAL BACKGROUND ...................................................................3

III.  RULE 23 STANDARDS .........................................................................5

IV.  JENKINS SATISFIES THE PREDOMINANCE AND
SUPERIORITY REQUIREMENTS OF RULE 23(B)(3) ...........................6

    A.    Multi-State Classes of this Nature are Certifiable ...............................7

          1.    The Particular UCC Provisions Actually at Issue
                 in this Case are Nearly Uniform ..............................................9

          2.    Commercial Reasonableness is not an
                 Impediment to Certification.....................................................11

          3.    A Class May Be Properly Certified Based Upon
                 Claims Under Ohio's   Version of the UCC................................12

    B.    Variations in Statutes of Limitation Do Not Impede
        Certification........................................................................................14

    C.    Hyundai's Compulsory Counterclaims Will Not Render
        This Action Unmanageable ..................................................................16

    D.    Variations in Compensatory Damages Do Not Preclude
        Certification .......................................................................................17

    E.    Class Treatment is the Superior Method of Resolution .....................18

V.   JENKINS PROPOSES A CLASS DEFINITION THAT
AVOIDS ANY "FAILSAFE CLASS" PROBLEMS ..................................19

VI.  JENKINS IS AN ADEQUATE AND TYPICAL
REPRESENTATIVE................................................................................20

    A.    Any Difference in Jenkins' Claims Does Not Affect
        Class Certification..............................................................................20

    B.    Jenkins does not have Mental Health Issues that make
        her Inadequate ...................................................................................21

VII.  CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

**Federal Cases**

*Allapattah Servs. v. Exxon Corp.*, 188 F.R.D. 667 (S.D. Fla. 1999) .......................................... ii, 7

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997) ...................................................................... 5,6

*Chisolm v. TranSouth Fin. Corp.,* 194 F.R.D. 538 (E.D. Va. 2000) ..................................... 10, 11

*Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998)............................................................................. 15

*Coleman v. Gen. Motors Acceptance*, 296 F.3d 443 (6th Cir. 2002).......................................... 18

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) .............................. 5

*Daffin v. Ford Motor Co*., 458 F.3d 549 (6th Cir. 2006)............................................................. 20

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)................................................................................. 8

*Haynes v. Logan Furniture Mart*, 503 F.2d 1161 (7th Cir. 1974).............................................. 19

*Heaven v. Trust Co. Bank*, 118 F.3d 735 (11th Cir. 1997) ........................................................ 16

*In Re American Medical Systems, Inc*., 75 F.3d 1069 (6th Cir. 1996)......................................... 21

*In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig*., 155 F. Supp. 2d 1069
   (S.D. Ind. 2001) ................................................................................................................. 15

*In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297 (E.D. Mich. 2001) ..................................... 6

*In re Foundry Resins Antitrust Litig*., 242 F.R.D. 393 (S.D. Ohio 2007)..................................... 6

*In re Potash Antitrust Litig*., 159 F.R.D. 693 .............................................................................. 6

*In re Telectronics Pacing Sys.*, 172 F.R.D. 271 (S.D. Ohio 1997)...................................... 8, 9, 10

*Jenkins v. Hyundai Motor Fin.*, 389 F. Supp. 2d 961 (S.D. Ohio 2005) ................................ iv, 12

*Leszczynski v. Allianz Ins*., 176 F.R.D. 659 (S.D. Fla. 1997) .................................................... 8

*McCabe v. Crawford & Co.,* 210 F.R.D. 631 (N.D. Ill. 2002) ..................................................... 19

*Ostler v. Level 3 Commc's* 2002 U.S. Dist. LEXIS 17366 (S.D. Ind. 2002) .............................. 20

*Owner-Operator Indep. Drivers Ass'n v. Arctic Express*, 2001 U.S. Dist. LEXIS 24963
   (S.D. Ohio 2001).............................................................................................................. iv, 17

*Pitt v. City of Portsmouth*, 221 F.R.D. 438, 446 (E.D. Va. 2004) ................................................ 19

*Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592
   (6th Cir. 2007)................................................................................................................. 19, 20

*Schwab v. Philip Morris USA, Inc,* 449 F.Supp. 992 (E.D.N.Y. 2006).................................. 10, 19

*Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) ........................................ 10

*Steinberg*, *supra,* 224 F.R.D. at 77-78; *Schwab, supra,* 449 F. Supp. 1119 ............................... 12

*Tomlison v. Kroger Co.* , 2007 U.S. Dist. LEXIS 23805 (S.D. Ohio 2007)................................ iv

**State Cases**

*Cleveland Mobile Radio Sales v. Verizon Wireless*, 865 N.E.2d 1275 (Ohio 2007) ................... 13

*Lewis v. Steinreich*, 652 N.E.2d 981 (Ohio 1995) ..................................................................... 14

*Males v. W.E. Gates & Associates*, 29 Ohio Misc.2d 13, 504 N.E.2d 494 (1985)...................... 15

*MP Star Fin. v. Cleveland State Univ.*, 837 N.E.2d 758 (Ohio 2005)........................................ 13

*Myers v. City of Toledo*, 852 N.E.2d 1176 (Ohio 2006)............................................................... 13

*Ridley v. First Nat'l Bank of Albuquerque* 531 P.2d 607 (N.M. Ct. App. 1974) ........................ 11

**Statutes**

O.R.C. § 1309.625 ............................................................................................ 13

O.R.C. § 1309.626 ............................................................................................ 13

O.R.C. § 1317.12(B) ........................................................................................... 4

O.R.C. § 1317.16 .............................................................................................. 13

O.R.C. § 1317.16(A) .......................................................................................... 12

O.R.C. § 1317.16(C) .......................................................................................... 13

U.C.C. § 1-103(a)(3) ......................................................................................... 10

U.C.C. § 9-626 ........................................................................................... i,1,10

U.C.C. § 9-613(1)(A) ........................................................................................... 1

U.C.C. § 9-613(1)(B) ........................................................................................... 1

U.C.C. § 9-613(1)(C) ........................................................................................... 1

U.C.C. § 9-613(1)(D) ........................................................................................... 1

U.C.C. § 9-613(1)(E) ........................................................................................... 1

U.C.C. § 9-614(1)(B) ........................................................................................... 1

U.C.C. § 9-614(1)(C) ........................................................................................... 1

U.C.C. § 9-614(1)(D) ........................................................................................... 1

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................ 5, 6

Fed. R. Civ. P. 23(b)(3) .............................................................................. 6, 14, 18

**Treatises**

*Newberg on Class Actions, 3d ed.* § 3.05, at 3-25 .................................................. 5

*Restatement (Second) of Conflict of Laws* ......................................................... 14

**Other Authorities**

*The American Heritage Dictionary of the English Language* (4th ed. 2004,
   <http://dictionary.reference.com/browse/only> (accessed: Nov. 14, 2007) ............................ 13

## I.  INTRODUCTION

The laws of all 49 states at issue in this case require creditors to send a written, post-repossession/pre-disposition notice (hereinafter "Notice") to debtors before their vehicles are sold.  Plaintiff alleges that Hyundai failed to send the Notice.  The burden falls on Hyundai to prove that it sent the Notice.[17]  For two primary reasons, this straightforward question is best resolved on a class-wide basis.

First, the statutory Notice in all jurisdictions requires the following eight[18] identical pieces of information:

- A description of the debtor and the secured party;[19]
- A description of the collateral that is the subject of the intended sale;[20]
- A statement regarding the method of intended sale;[21]
- A statement that the debtor is entitled to an accounting of the unpaid debt and any charges imposed for the accounting of the unpaid debt;[22]
- The time and place of a public disposition of the collateral, or of the time after which any other disposition is to be made;[23]
- A description of any liability for a deficiency of the debtor or secondary obligor to whom the notification is sent;[24]
- A telephone number to use to contact the secured party to learn the amount necessary to redeem the collateral before the intended sale;[25] and
- A telephone number or mailing address to contact the secured party to obtain additional information about the obligation and the sale.[26]

---

[17] UCC § 9-626.
[18] North Dakota requires all but two of these items.
[19] UCC § 9-613(1)(A)
[20] UCC § 9-613(1)(B)
[21] UCC § 9-613(1)(C)
[22] UCC § 9-613(1)(D)
[23] UCC § 9-613(1)(E)
[24] UCC § 9-614(1)(B)
[25] UCC § 9-614(1)(C)
[26] UCC § 9-614(1)(D)

The uniformity of these requirements and Hyundai's similarly uniform implementation of them - by a single employee following a single four-page manual - is undeniable, and begs for class certification.

Second, class treatment is the only practical mechanism to enforce important statutory notice requirements before selling repossessed collateral. The proposed class is made up of individuals who have had their automobiles repossessed and illegally sold. The remedies involved and the subject matter make it difficult to find competent contingency fee lawyers willing to offer representation. Likewise, it is impracticable, if not impossible, for consumers whose life circumstances prevented them from making their automobile payments, to search out and retain an attorney on an hourly basis for this type of representation. Moreover, if creditors are not subject to class-wide liability, enforcement of the laws requiring creditors to give important notice to debtors would be ineffective. Not certifying this case would send the wrong message to creditors, *i.e.* creditors need not abide by statutory notice requirements in liquidating repossessed collateral, because debtors have no ability to hold them responsible in any significant manner.

Hyundai's materials opposing class certification shower the Court with conjured impediments to class certification. It is a bit like looking skyward in a ticker tape parade. The issues swirl, but there is no weight to any of them. The thrust of Hyundai's arguments is that class treatment of Ms. Jenkins' claims is too onerous. However, Hyundai's arguments are defeated by the facts, as established largely through the deposition testimony of the employee Hyundai itself designated as most knowledgeable, Aaron Cervantes.

The Notices were sent by a single person, working at a single desk, in a single department, in a single office at Hyundai's world headquarters at 10550 Talbert Avenue,

Fountain Valley, California. Hyundai's written company procedures dictated that an ***identical*** "generic" Notice was to be sent to customers residing in 39 states. Customers living in the 11 remaining states were supposed to have received Notices substantially similar to Hyundai's generic Notice.

## II.     FACTUAL BACKGROUND

The salient facts for class certification, and also ultimately for liability, begin with Hyundai's actions in response to a debtor's default. The reason for the debtor's default is immaterial. The conduct that matters is Hyundai's post-default business practice.

Defendant's Memorandum in Opposition details the facts and circumstances which led to Jenkins' default in an attempt to manufacture individualized issues that would preclude class certification. What caused class members to default on their loans is irrelevant. Hyundai's duty to provide the Notice was triggered by the repossession of its customers' vehicles.

Hyundai's Asset Remarketing Department is responsible for the only thing relevant to this case: the procedures related to the disposition of repossessed vehicles.[27] The Asset Remarketing Department consists of only five employees and a supervisor located at company headquarters in Fountain Valley, California.[28] Hyundai repossesses approximately thirty vehicles per day throughout the country.[29] For each repossessed vehicle, the Asset Remarketing Department creates a paper file which contains identical documentation.[30] This file is created by a single employee, the Notice Person, who is also responsible for sending the Notice to debtors.

---

[27] Cervantes Depo., at 35, ll. 4-16.
[28] *Id.* at 149, ll. 4-25; and 150, ll. 1-4.
[29] *Id.* at 198, ll. 3-4.
[30] *Id.* at 26, ll. 12-23; 27, ll. 1-4 and 17-25.

The Notice Person has the entry level position in the Asset Remarketing Department. The Notice Person position is always held by the person with the least experience on the team.[31]

The Notice Person relied on a single, four-page document, the Notice Manual, which contained all of the instructions and "requirements" regarding Hyundai's sending of Notices.[32] Neither the Notice Person nor any other employee working in the Asset Remarketing Department had any training or expertise regarding the sending of Notices beyond what was contained in the Notice Manual.[33] Unbelievably, it was only after Jenkins filed her Complaint that Hyundai used any sort of checklist or verification system to ensure that Notices were in fact properly sent.[34]

Hyundai's Notices were merely "fill in the blank forms" completed by the Notice Person. The generic Notice used in thirty-nine states was printed from Hyundai's computer system.[35] The substantially similar Notices used in the other eleven states were printed from the Notice Person's desktop computer hard drive.[36] Hyundai has a company policy that its Notices were to be placed in the customer's Asset Remarketing Department file. Jenkins alleges that Hyundai did not send her the proper Notice. [37]

---

[31] *Id.* at 26, ll. 12-23; 27, ll. 1-4 and 17-25; 28, l. 1-4; and 34, l. 22-24.)
[32] *Id.* at 53, ll. 10-18; 54, ll. 15-18; 143, ll. 18-25; 144, ll. 1-13; and Notice Manual.
[33] *Id.* at 254, ll. 20-25; 255, ll. 4-18; and 256, ll. 17-23.
[34] *Id.* at 204, ll. 24-25; and 205, ll. 1-18.
[35] *Id.* at 47, ll.19-24; 49, ll. 2-8; and 50, ll. 17-21.
[36] *Id.* at 50, ll. 22-25; 51, ll. 1-2 and 21-25; and 52, ll. 1-4.
[37]  The Notice should have alerted Jenkins to the time and place of the auction of her vehicle and the minimum price for which her vehicle would be sold. O.R.C. § 1317.12(B). The notice she received did not contain this information. *See* notice provided to Jenkins attached as Exhibit 8.

## III.    RULE 23 STANDARDS

Rule 23's requirements should be construed in light of the underlying objectives of class actions.   Rule 23 is designed to permit "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."[38]

The procedural requirements of Rule 23(a) must first be met to certify a class.  The requirements are: (1) the class must be so numerous that 'joinder of all members is impracticable' ("numerosity"); (2) there must be 'questions of law or fact common to the class' ("commonality"); (3) the claims of the representative party must be 'typical' of those of the class ("typicality"); and (4) the representative party must 'fairly and adequately protect the interests of the class' ("adequacy").  Fed. R. Civ. P. 23(a).

Furthermore, for a damages class under Rule 23(b)(3) to be certified, the Court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Rule 23(b)(3).

Hyundai does not challenge certification upon either numerosity[39] or commonality.[40]

---

[38] *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (U.S. 1997).

[39] Plaintiff has moved to strike Professor Mullenix's "testimony" in its entirety, including her argument regarding numerosity.  Because Plaintiff's motion is currently pending, Plaintiff will briefly address the substance of her legal argument.  Professor Mullenix argues that the numerosity requirement cannot be satisfied by a "conclusory allegation," suggesting that this is all Jenkins has offered to support her contention that numerosity is satisfied.  However, Hyundai's own representative has testified that it repossessed approximately 30 cars per day.  Cervantes Depo. at 198, ll. 3-4.  This testimony is sufficient to satisfy the numerosity requirement.  The preeminent authority on class action litigation has concluded that numerosity is presumptively satisfied with as few as 40 class members.  *See*, *1 Newberg on Class Actions, 3d ed.* § 3.05, at 3-25.  *See also, Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (*citing*,*1 Newberg On Class Actions 2d* (1985 Ed.) § 3.05), ("numerosity is presumed at a level of 40 members.")  Therefore, only two days' worth of Hyundai's business practice concerning dispositions would be enough to satisfy numerosity.

[40] Hyundai does not challenge commonality in its response brief, although Professor Mullenix makes the puzzling assertion that the class members do not share a common legal basis for their claims despite the fact that even one common issue is enough to satisfy Rule 23's commonality requirement.  Here, common issues predominate, so this requirement is easily met.

Rather, its defense focuses on the adequacy and typicality requirements of Rule 23(a), the predominance and superiority requirements of Rule 23(b)(3), and the implicit requirement that the class definition must be sufficiently definite as to allow the court to determine whether a particular individual is a member of the class. Despite Hyundai's arguments to the contrary, a class should be certified because Rule 23's requirements are met.

## IV.  JENKINS SATISFIES THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(B)(3)

In order to satisfy the requirements of Civ. R. 23(b)(3), Jenkins must demonstrate that common issues predominate over individual issues, and that a class action is the superior method of litigating the asserted claims. Jenkins satisfies her burden on these issues.

Rule 23(b)(3) is intended to be less stringent than either Rule 23(b)(1) or (b)(2). As the Supreme Court noted, "Rule 23(b)(3) permits certification where class suit 'may … be convenient and desirable,'" in circumstances in which a Rule 23(b)(1) or (2) class might not be.[41]

A claim will meet the predominance requirement when:

> there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position. *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 307 (E.D. Mich. 2001). Common questions need only predominate; they need not be dispositive of the litigation. *See*, *e.g.*, *In re Potash Antitrust Litig.*, 159 F.R.D. at 693. The existence of individual issues, therefore, do not defeat class certification. *In re Mercedes-Benz Antitrust Litig.,* 213 F.R.D. at 186.[42]

Hyundai's most knowledgeable employee testified that residents of 39 states received identical notices. Residents of the remaining 11 states received substantially similar notices. These standard form notices are the evidence Jenkins will use to prove the class members'

---

[41] *Amchem Prods.*, 521 U.S. at 615 (*quoting* Adv. Comm. Notes, 28 U.S.C. App., p. 697).
[42] *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007).

claims, and they are common to class members. The common legal issue is whether these notices, if Hyundai can prove they sent them at all, satisfy the uniform requirements found in each state's version of UCC 9-613 and 9-614. Where the issues central to the litigation are common, the predominance requirement is satisfied. In contrast to a "sprawling" settlement class in an asbestos case, the Supreme Court has held that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[43] The Court went on to note that "[e]ven mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement."[44] If a mass tort case, which inevitably will include a multitude of individual issues, can meet the predominance requirement in the right circumstances, then this consumer case based upon form documents, uniform laws, and only a few legal and factual issues, easily satisfies 23(b)(3)'s predominance requirement.

Hyundai takes great pains to inject other issues into the predominance analysis. However, neither unimportant variations in state law, affirmative defenses, damages, nor the existence of counterclaims operate to defeat predominance.

### A.      Multi-State Classes of this Nature are Certifiable

The Notice statutes at issue in this case have been adopted in all 50 states and the District of Columbia. Certification of a nationwide class asserting claims under the UCC is appropriate under Civ. R. 23.[45]

---

[43] *Amchem Prods., Inc.*, 521 U.S. at 625.
[44] *Id.*
[45] *See, e.g., Allapattah Servs. v. Exxon Corp.*, *supra,* 188 F.R.D. at 671 (internal citations omitted) (noting that "[a]s a threshold matter, the Court recognizes the policies and principles which underlie the Uniform Commercial Code … 'to make uniform the law among the various jurisdictions'," and certifying a nationwide class asserting claims for breach of a sales contract under the UCC).

Moreover, claims based upon standardized form documents are particularly appropriate for class treatment.   As one court has noted,

> When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such..…   Although the *Kleiner* court recognized that the loan agreements of class members would be governed by the laws of Virginia, Tennessee, South Carolina, Georgia, and North Carolina, it held that 'the application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform.'   *Id.* at 694.   *See also*, *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 98 F.R.D. 254 (D.Del.1983) (allowing class treatment of the issue of interpretation of bottler's consent decrees, even if other contract issues of law and fact which varied among class members had to be pursued separately).[46]

And although Hyundai points to one of this Court's decisions in *In re Telectronics Pacing Systems, Inc*., it fails to note that the Court did certify certain claims in that action for class treatment where those claims were based on the laws of several states.   In doing so, Judge Spiegel provided a roadmap for determining whether variations in state law should prevent certification:

> First, state law does not need to be universal in order to justify nationwide class certification.
>
> Secondly, while it is certainly true that state tort law varies, the question under the superiority prong of Rule 23(b)(3) is: can the relevant variations be dealt with in a simple and efficient manner?   It seems certain though that only particular nuances should be relevant to the question of class certification.   The Court must make a careful inquiry to determine which variations might impede class certification.   Obviously, the Court will have to determine whether the variations are significant and whether they are material to the issues contested in the case.   In other words, are there nuances in the state law at issue in the case which must be addressed in order to satisfy *Erie R.R. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938).   It seems that the Court has

---

[46] *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 672 (S.D. Fla. 1997).

three options in making this inquiry: (1) find that state law is sufficiently similar that a single class is appropriate, (2) find that the state law varies so much that class certification is inappropriate, or (3) find that state law variations can be categorized and then divided into subclasses.

Thus, if the elements of the cause of action are the same and the legal standards on "important/meaningful/significant/pivotal" issues are substantially similar the state laws can be grouped for purposes of class certification. In looking at the nuances of state law, it is important to distinguish between nuances that are pertinent to the issues being certified and those which are unimportant to these questions.[47]

In fact, it is well accepted that a claim or defense may be litigated collectively despite the existence of state law variations, as long as the elements of the claim or defense are substantially similar. And that is precisely the case here – variations in applicable law, where such variations exist at all, are minor.

### 1. The Particular UCC Provisions Actually at Issue in this Case are Nearly Uniform

The issues central to the determination of Hyundai's liability can be litigated collectively. First, the issue of whether Hyundai can prove that it sent any pre-disposition notice at all to the class members can be litigated collectively. The requirement that a Notice be sent is **uniform** in all 49 states.[48] Second, if Hyundai can prove that it sent a notice, the question of whether Hyundai sent the **proper** Notice with the required contents can be litigated collectively. Eight distinct items must be present in the Notice.[49] Although damages should not figure into the Rule 23(b)(3) analysis, the damages available to class members in the 49 states are nearly uniform.[50] Slight variations in the law regarding the content of the notice and the damages available to class

---

[47] *In re Telectronics Pacing Sys.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997).
[48] *See* Cervantes Depo. at 254; *See also* Ex. 2-4.
[49] *Id.* Only North Dakota requires fewer (six, rather than eight).
[50] *See* Ex. 3.

members may be resolved, as Judge Spiegel suggested in *Telectronics*, by the use of a handful of subclasses, if that becomes necessary.

Hyundai argues that the Uniform Commercial Code is not uniform.[51]  Although one of the "underlying purposes and policies" of having a uniform commercial code is "to make uniform the law among the various jurisdictions,"[52] the U.C.C. **as a whole** is admittedly not identical in every state.[53]  However, what Hyundai neglects to tell the Court is that the particular UCC provisions **pertinent to resolution of this case** are identical, or nearly identical, in every state.  First, all states require a creditor to send the Notice.  Second, the information which must be contained in that Notice is dictated by statute, and those statutes are nearly identical in each state.[54]  The only difference among the pertinent UCC provisions concerns the proper *remedy* available to class members, and that determination is capable of being grouped into subclasses of similar states' remedies at a later time, if it becomes necessary.[55]  In fact, the variance in the remedy is so slight that it could be easily managed through the use of special interrogatories, or special verdict forms tailored to address the minor variations in state law.  Nationwide classes with far greater variations have been certified.[56]

---

[51] *See* Hyundai Resp. at 9-11.

[52] U.C.C. § 1-103(a)(3).

[53] *See* U.C.C. § 9-626 Ed. notes.

[54] *See* Ex. 1-3

[55] *See* Ex. 3.  *See also* Hyundai Resp. at 12 (briefly summarizing the absolute bar rule, the rebuttable presumption, and the setoff approach) and *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 956-57 (E.D. Tex. 2000) (noting that 49 states and District of Columbia had enacted relevant U.C.C. statutes and that, although handful of those states adopted minor variations of uniform language, those variations did not affect particular claims in dispute). *See also Steinberg*, *supra*, 224 F.R.D. at 77-78 ("[I]f confusion involving the applicable law were to arise later, the Court may sub-classify the putative class."; and *Schwab v. Philip Morris USA, Inc,* 449 F.Supp. 992, 1119 (E.D.N.Y. 2006).

[56] *See Chisolm v. TranSouth Fin. Corp.,* 194 F.R.D. 538, 564 (E.D. Va. 2000) ("The [class] members . . . received standardized documents and correspondence as part of an alleged scheme to defraud the subclass members.  Where schemes are predicated on standardized frauds, especially frauds predicated upon documents, these are found traditionally to be suitable for class action treatment." (*citing Peterson v. H&R Block Tax Servs.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997)).

This is not a case in which the plaintiff is challenging the entire spectrum of commercial reasonableness in connection with repossessions. This case is focused on whether the Notice was sent and whether it contained the information mandated by law. This stands in stark contrast to *Ridley v. First Nat'l Bank of Albuquerque,*[57] a case cited by Hyundai to support its argument that challenges to commercial reasonableness are not subject to class treatment. *Ridley* was filed under the prior version of UCC Article 9 and challenged "the legal sufficiency and propriety of the notice of repossession and resale, the commercial reasonableness of the resale of the vehicles, and whether a public or private sale is appropriate."[58] Additionally, in *Ridley*, the plaintiffs alleged failures as to the date of receipt of notice and the related question of minimum time required for redemption. Here, Jenkins alleges only the failure to send the proper Notice. This case is not *Ridley*.[59]

## 2. Commercial Reasonableness is not an Impediment to Certification

Hyundai mistakenly argues that the Class cannot be certified because the commercial reasonableness evaluations implicated by Jenkins' class action vary widely among the states.[60] This argument has at least two fatal flaws. First, this is not a commercial reasonableness case. A commercial reasonableness case challenges all aspects of the repossession and sale of a vehicle. For example, many commercial reasonableness cases involve an issue of whether the vehicle was properly prepared for sale at auction. This case does not involve the plethora of issues found in cases challenging commercial reasonableness. While some courts have referred to the Notice as an indicator of commercial reasonableness or unreasonableness, the Notice requirement is an

---

[57] 531 P.2d 607 (N.M. Ct. App. 1974). *See* Hyundai Resp. at 11, n.67.
[58] *Ridley, supra,* 531 P.2d at 609.
[59] *See Chisolm*, 194 F.R.D. at 564, n.34 (distinguishing *Ridley*, where consumers whose used cars had been repossessed and resold without any surplus being credited to them brought class action lawsuit against various defendants, including financing corporation that financed used cars).
[60] *See* Hyundai Resp. at 11-14.

independent requirement apart from the commercial reasonableness requirements.  With respect to the Notice requirement, there is no "reasonableness" to it.  Either Hyundai sent the Notice or it did not; either it included the items required by the statutes or it did not.

Second, even if one were to assume Notice is a part of commercial reasonableness, any purported differences in commercial reasonableness among the states are not relevant to the management of this case as a class action.[61]  Only one aspect of commercial reasonableness, the Notice, is applicable to this case.  As already explained, all states require the Notice.  The slight variations in a handful of the States' Notice requirements are easily managed by establishing appropriate subclasses, special interrogatories, or special verdict forms for each rule or approach, if that becomes necessary as the case proceeds.[62]

### 3. A Class May Be Properly Certified Based Upon Claims Under Ohio's Version of the UCC.

Hyundai argues that even if Jenkins's class action were limited to Ohio residents, the same obstacles to certification would exist solely under Ohio's version of the U.C.C.  That argument is without merit.[63]  Given that Ohio is an "absolute bar" state, the individualized commercial reasonableness "problem" identified by Hyundai is does not even arise.[64]  As previously determined by Judge Sargus in this case, despite the deletion of any express reference to a penalty provision in R.C. § 1317.16 by the 2001 amendments, "Ohio courts would continue to provide damages for violations" of that statute.[65]

Additionally, by its plain and unambiguous terms, R.C. § 1317.16(A) provides that "[a] secured party whose security interest is taken pursuant to section 1317.071 of the Revised Code

---

[61]*See* Pl.'s Mem. at 2; Compl. ¶ 23.
[62]*See, e.g., Steinberg, supra,* 224 F.R.D. at 77-78; *Schwab, supra,* 449 F. Supp. at 1119.
[63]*See* Hyundai Resp. at 14-17.
[64] *See infra* at 12 for a description of the absolute bar rule for remedies.
[65]*See Jenkins, supra,* 389 F. Supp. 2d at  967-68.

may, after default, dispose of any or all of the collateral *only as authorized by this section*" (emphasis added). By stating that the secured collateral may "only" be disposed of as authorized therein, the statute intends for the secured creditor to obtain nothing if the collateral is disposed of by some *unauthorized* means.[66] If the Ohio legislature meant to include more types of authorized actions secured creditors could take, it easily could have done so.[67]

By its plain and unambiguous terms, R.C. § 1317.16(C) provides that, "[e]xcept as modified by this section, *sections 1309.610, 1309.611, 1309.615, 1309.617, and 1309.624 of the Revised Code govern disposition of collateral by the secured party*" (emphasis added). Although several provisions of Ohio's U.C.C. Art. 9 are listed therein, neither R.C. 1309.625 nor 1309.626 are included as applicable to R.C. 1317.16. Since the statute expressly lists several provisions from Article 9, without any language indicating that such list is non-exhaustive, the omission of R.C. § 1309.625 and § 1309.626 must be deemed intentional.[68] Therefore, R.C. § 1309.625 and § 1309.626 have no application to R.C. § 1317.16. Rather, the only provisions of Article 9 that are applicable to R.C. 1317.16 are those expressly set forth in subsection C. Yet none of those provisions have any effect, either expressly or impliedly, on the absolute bar rule for deficiency actions.[69]

---

[66]*See* The American Heritage Dictionary of the English Language (4th ed. 2004, <http://dictionary.reference.com/browse/only> (accessed: Nov. 14, 2007) (defining "only" as "[e]xclusively; solely").

[67]*See MP Star Fin. v. Cleveland State Univ.*, 837 N.E.2d 758, 761 (Ohio 2005) (when legislature wanted different meaning, General Assembly qualified particular term at issue elsewhere in Ohio U.C.C. Art. 9); *Cleveland Mobile Radio Sales v. Verizon Wireless*, 865 N.E.2d 1275, 1278 (Ohio 2007) ("A court is neither to insert words that were not used by the legislature nor to delete words that were used.").

[68]*See Myers v. City of Toledo*, 852 N.E.2d 1176, 1180 (Ohio 2006) ("The canon *expressio unius est exclusio alterius* tells us that the express inclusion of one thing implies the exclusion of the other").

[69]Moreover, it would be unreasonable to construe the 2001 amendment to R.C. 1317.16 as reducing the protections previously afforded consumers under RISA when the express purpose for the amendment was "to afford the consumer more effective remedies and more adequate notice of his rights than [was previously] provided for in Ohio law." Analysis of Bills of the Ohio General Assembly, 109th General Assembly, H.B. 350, House and Senate Readings 2-24-72, 3-12-72, 6-8-72, 6-13-72, and 6-14-72.

**B.** **Variations in Statutes of Limitation Do Not Impede Certification**

Hyundai argues that certification is not appropriate because there is a question of "which statutes of limitations apply to which class members, and the effect of each state's tolling provisions,"[70] so as to preclude certification under Rule 23(b)(3).[71] Hyundai is incorrect for four reasons.

First, the fact that some class members may be subject to a statute of limitations defense does not destroy predominance. As this Court recently held:

> While the necessity for individualized statute-of-limitations determinations weighs against class certification under Rule 23(b)(3), the presence of such issues does not automatically undermine the predominance factor…. As long as sufficient common issues bind class members, variations in the application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)…. Indeed, in this case, the limitations … issues serve to bind the class with yet another common question, although requiring individualized proof, and do not preclude a finding of predominance.[72]

In addition, as one court noted in deciding that variations in state law did not justify denying class certification, "[c]ourts have been nearly unanimous … in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification…."[73]

Second, Ohio courts have long held that statutes of limitations are procedural rather than substantive, and that, in choice of law situations, the procedural law of the forum state controls:

> The Ohio Supreme Court has adopted the *Restatement (Second) of Conflict of Laws* as the governing law for Ohio conflicts issues. *Lewis v. Steinreich* (1995), 73 Ohio St.3d 299, 1995 Ohio 133, 652 N.E.2d 981; *Morgan v. Biro Mfg. Co., Inc.* (1984), 15 Ohio St.3d 339, 15 Ohio B. 463, 474 N.E.2d 286. When a conflict arises between two states' statutes of limitations, the Restatement

---

[70] Hyundai Resp. at 9.
[71] *Id.* at 17-18.
[72] *Tomlison,* 2007 U.S. Dist. LEXIS 23805 at *20.
[73] *Steinberg,* 224 F.R.D. at 78.

14

> provides: "An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state." *Restatement (Second) of Conflict of Laws* § 142(2).  Section 142(2) thus requires Ohio courts to apply Ohio's statute of limitations to breach of contract actions brought in Ohio, even if the action would be time-barred in another state.  *See Males v. W.E. Gates & Associates* (1985), 29 Ohio Misc.2d 13, 29 Ohio B. 229, 504 N.E.2d 494 (applying Ohio's fifteen-year statute of limitations to a breach of contract action that would have been barred by Virginia's five-year statute).[74]

This principle has been applied in a UCC class action.[75]  Because Ohio's conflict of law analysis applies, Ohio's statute of limitations should apply to the claims of class members, regardless of which state provides the substantive law governing a particular class member's claim.

Third, in any event, very few class members' claims will be barred by a statute of limitations even if this Court were to determine that the limitations periods from each of the 49 states should apply.  Plaintiff filed her Complaint in August 2004 and revised Article 9 was adopted by every state within a relatively narrow timeframe around July 2001.  The vast majority of states' limitations periods exceeds three years.

Fourth, even if a limitations period has expired for any class member, remedies remain available to offset any deficiency.  This result makes perfect sense.  When used to offset the amount of a deficiency, the debtor may use the remedy as a shield rather than a sword, even if the debtor is nominally the plaintiff or a member of the plaintiff class.  If the creditor maintains that a debtor owes a deficiency, the debtor is entitled to defend herself by asserting defects in the Notice, in order to reduce or eliminate the alleged deficiency.

---

[74] *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998).
[75] *See, e.g.*, *In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1110 (S.D. Ind. 2001)(rev'd on other grounds, *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002).

### C. Hyundai's Compulsory Counterclaims Will Not Render This Action Unmanageable

Hyundai argues that its compulsory counterclaims (for deficiencies) that it must bring against each class member would render the class action unmanageable, relying on two Fifth Circuit cases from the 1970s and on *Heaven v. SunTrust Company Bank,* a more recent case from the Eleventh Circuit.[76] It is important to note that *Heaven* was an admittedly "very close" case regarding the Rule 23(b)(3) analysis, in which the compulsory counterclaims were only one of "several factors [that only] taken together tipped the balance against certification."[77] In fact, the *Heaven* court stressed that it did

> not intend to suggest that compulsory counterclaims should preclude the maintenance of class actions . . . as a general rule. . . . [but, rather,] only that it is a proper exercise of discretion for the district court to evaluate the nature of the counterclaims and the difficulties they present and to consider the usefulness of breaking the proposed class into subclasses to avoid those difficulties.[78]

Indeed, the *Heaven* court went on to note that if it "had faced the class certification issue in the first instance, [it] may well have found it appropriate to certify the class or to establish subclasses."[79] *Heaven*, then, is a slender reed upon which Hyundai attempts to support its argument that its counterclaims preclude class certification.

More important is what this Court has said about the relationship of counterclaims to class certification. In certifying a class in a case in which the defendant argued, as here, that its

---

[76]*See* Hyundai Resp. at 18-19 (citing, *inter alia*, *Heaven v. Trust Co. Bank*, 118 F.3d 735 (11th Cir. 1997)). The Fifth Circuit split into the Fifth and Eleventh Circuits on October 1, 1981.
[77]*Heaven, supra,* 118 F.3d at 738.
[78]*Id.* at 739, n.7.
[79] *Id.* at 739.

compulsory counterclaims against each class member would make a class hopelessly

unmanageable, Judge Marbley stated:

> Even if this Court were to conclude that the Defendants could bring compulsory counterclaims against the entire class, by either bringing counterclaims against each individual class member or by certifying a defendant class, certification of the Plaintiffs' proposed class at this time is still prudent. If necessary, this Court could create a subclass who would be subject to the Defendant's counterclaims.[80]

There is no reason to refuse to certify this case because of Hyundai's possible counterclaims.

Finally, Hyundai fails even to mention that with respect to class members in the "absolute

bar" states such as Ohio, Hyundai will have no possible counterclaim available to it. The

absolute bar rule holds that a creditor's compliance with proper disposition practices is a

condition precedent to the right to bring a deficiency action. A defective notice absolutely bars a

creditor from seeking a deficiency. The absolute bar rule applies in about half the states.[81] Thus,

for class members in these states, the "counterclaim problem," to the extent that it is a problem at

all, never even arises.

### D. Variations in Compensatory Damages Do Not Preclude Certification

Hyundai also argues that because Jenkins is forgoing a request for actual damages (as

opposed to statutory damages), such waiver penalizes other class members because the doctrine

of *res judicata* would bar them from raising their unasserted damage claims in the future as

well.[82] It would be a perverse result indeed if a potential inability to receive actual damages

through this class action were able to defeat class certification. If a class is not certified in this

---

[80] *Owner-Operator Indep. Drivers Ass'n v. Arctic Express*, 2001 U.S. Dist. LEXIS 24963 at *32.

[81] *See* Plaintiff's Ex. 1, column titled "Penalty for Non-Compliance," showing which states follow the absolute bar rule for remedies.

[82] *See* Hyundai Resp. at 24. Hyundai separately argues in section IV.D. of its Response that individualized actual damages claims would render the class uncertifiable (*Id.* at 19-20), but since the damages in this case are statutory and are mathematically calculable, they present no manageability problems. Thus, Hyundai's arguments in section IV.D. are of no consequence.

case, virtually no class member will get any relief at all: not actual damages, not statutory damages, not the elimination of deficiencies, nothing. The reality is that Hyundai debtors are not independently pursuing these claims. Any inability to receive actual damages in this class action should not stand in the way of certifying a class in this case.

In fact, the benefits that class members do stand to receive are far more substantial than whatever the nominal actual damages are likely to have been for the vast majority of class members. If the Class prevails at trial, class members in every state will be able to have their deficiency balances (many of which are in the thousands of dollars) completely extinguished or significantly reduced. Many class members will be eligible to receive statutory damages. These statutory damages are calculated mathematically, and they also amount to potentially thousands of dollars for some class members.

Moreover, Rule 23(b)(3) is an "opt-out" class provision, in that all class members are required to receive notice and "the opportunity to decline to participate in the action."[83] In a Rule 23(b)(3) class action, class members who prefer to assert individual damage claims may opt out and forgo participation in favor of pursuing Hyundai on their own in an individual action. Consequently, no class member will be involuntarily subjected to the doctrine of *res judicata*.

### E. Class Treatment is the Superior Method of Resolution

The typical class member has no idea that Hyundai has illegally disposed of his or her vehicle. The requirements are technical in nature, and although they provide important protections, there existence is not intuitive. Few class members can be expected to sue individually when they are unlikely even to know that they have a valid claim.

---

[83] *Coleman v. Gen. Motors Acceptance*, 296 F.3d 443, 448 (6th Cir. 2002).

A typical class member (whose vehicle was repossessed for failure to make timely payment) is likely unable to afford an attorney. Thus, denial of class certification would essentially sound the death knell for the class members' ability to effectively seek the relief to which they are entitled.[84] In addition to being the superior method of resolving class members' claims, class certification here, for virtually all class members, is the only method of resolving the class members' claims. "In such 'death knell' situations, as in the instant one, where the only possible litigation is a class action, the other requirements of Rule 23 are read broadly, since the court's obligation to protect the interests of absent class members is best served by allowing some form of adjudication, as opposed to none at all, to go forward."[85]

## V. JENKINS PROPOSES A CLASS DEFINITION THAT AVOIDS ANY "FAILSAFE CLASS" PROBLEMS

Based on discovery recently produced by Hyundai (as compelled by the Court), and to more accurately define the class, Plaintiff proposes defining the class as follows:[86]

> Consumers in all states, except California, whose vehicles were repossessed by Defendant after the states' enactment of section 9-611 of the Uniform Commercial Code ("UCC") and subsequently disposed of by Defendant.[87]

---

[84]*See also*, *Pitt v. City of Portsmouth*, 221 F.R.D. 438, 446 (E.D. Va. 2004) ("the absence of other litigation suggests that this is a negative value suit and, therefore, a class action is the superior method of adjudicating these issues"); *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 645 (N.D. Ill. 2002) ("A class action is the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the initiative to commence an action on their own behalf.") (*citing Haynes v. Logan Furniture Mart*, 503 F.2d 1161, 1165 (7th Cir. 1974)).

[85] *Schwab*, 449 F. Supp. 2d at 1123 (*citing Green v. Wolf Corp.*, 406 F.2d 291, 302 (2d Cir. 1968)).

[86] A trial court maintains broad discretion to modify a class definition. *Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 618-619 (6th Cir. 2007).

[87] Plaintiff acknowledges that the proposed class definition has changed since August 2004 when the Complaint was filed, and since April 2007, when the Motion for Class Certification was filed. Plaintiff has adjusted her class definition to best conform to the evidence, as it has been made available to her. As the Court is aware, Hyundai resisted Plaintiff's attempts to procure relevant discovery literally for years, and produced it only when compelled to do so by the Court. Plaintiff received virtually no discovery at all until February 2007, and the first deposition of a Hyundai employee was not taken until August 2007, at which time Hyundai finally produced more discovery. This recent deposition and discovery have led Plaintiff to seek the class definition currently proposed.

No doubt Hyundai will view this proposed class definition as impermissibly broad. However, Hyundai cannot have it both ways. A defendant may not complain that a class is too narrowly defined, encompassing only those actually injured by its conduct, while simultaneously arguing that a class defined more broadly, to include all those potentially injured by its conduct, is too extensive.[88] Hyundai itself cites to *Ostler v. Level 3 Commc's* in support for its argument that Plaintiff's class definition is improper.[89] Hyundai fails to mention, however, that the *Ostler* court also explained how such arguments create an inescapable whipsaw:

> In response to plaintiffs' redefinition of the class to avoid the fail-safe or one-way intervention problem, defendants object that the revised class is now over-inclusive because it includes persons without standing to sue. Although defendants use the jurisdictional term 'standing,' defendants really mean only that they believe they can easily defeat claims by many members of the proposed class because those members will not be able to show a fee simple interest in the relevant portion of the right-of-way. … The short and practical answer to this objection is that defendants cannot have it both ways. Defendants were right the first time, when they objected to the fail-safe class. As long as the proposed class definition attempts a reasonably close fit to those persons believed to have valid claims, the fact that not all members will have valid claims should not defeat class certification.[90]

More fundamentally, Plaintiff need not utter magic words to invoke the class action device. Class actions are meant to promote efficient resolution of claims with common elements. The Court can at any time alter the class definition, create subclasses, and the like.[91] If the Court feels the class definition proposed by Plaintiff is problematic, it can, and should, simply redefine the class.

## VI. JENKINS IS AN ADEQUATE AND TYPICAL REPRESENTATIVE

### A. Any Difference in Jenkins' Claims Does Not Affect Class Certification

---

[88] *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) (upholding certification of class broadly defined to include everyone who purchased or leased vehicle *containing defective throttle assembly*, without regard to whether defect had manifested).
[89] 2002 U.S. Dist. LEXIS 17366 (S.D. Ind. 2002) attached as Exhibit 9.
[90] *Id.* at *7-8.
[91] *Powers,* 501 F.3d at 618-619 . *See also Lichoff v. CSX Transp., Inc*, 218 F.R.D. 564, 569 (N.D. OH 2003).

A named plaintiff's claim is typical if it arises from the same practice or conduct that gives rise to the claims of other class members, and if the claims are based on the same legal theory.[92] Hyundai has repeatedly delved into the cause of Jenkins' default to attempt to distinguish her from the class, but how she defaulted is simply irrelevant to the claims of the class. The Notice requirements do not mandate that debtors be treated differently depending on how they came to default; every debtor is entitled to a proper Notice regardless of the reasons for default. Hyundai's failure to send the Notice is at the center of this dispute, and is the common course of conduct that unites all class members. In Jenkins' own words, the class members "are similar because the notices that were supposed to have been sent out weren't sent out."[93]

**B.      Jenkins does not have Mental Health Issues that make her Inadequate**

Hyundai argues that Jenkins' mental health issues should prevent her from representing the class. Hyundai spent a considerable amount of time during Jenkins' deposition attempting to exploit this issue, as was identified in its response to class certification.[94] All that Hyundai can establish, however, is that Jenkins has undergone outpatient treatment and counseling.[95] Unlike the case cited by Hyundai as authority on mental health issues in class action suits, Jenkins suffers merely from anxiety and depression, which are both common ailments.[96] Jenkins does not suffer the "memory loss, impaired concentration," or a "lack of common sense" that made the plaintiff in *In Re American Medical Systems, Inc.*, the case relied upon by Hyundai, an inappropriate class representative.[97] Jenkins' adequacy was amply demonstrated during her

---

[92] *Powers,* 501 F.3d at 618-619.
[93] Jenkins' Depo. at 26, ll. 3-4.
[94] Jenkins' Depo. at 58, ll. 1-15; ll. 20-24;  p. 59, ll. 8-24; p. 60-61, ll. 1-24.
[95] *Id*.
[96] *Id*.
[97] *In Re American Medical Systems, Inc*., 75 F.3d 1069, 1075 (6th Cir. 1996).

grueling seven-hour deposition, where she thoroughly and thoughtfully answered each of Hyundai's questions without difficulty.

Jenkins has demonstrated that she completely understands her role in this litigation and her responsibility to the class members.[98] She takes her duties seriously and makes an excellent class representative. During her deposition, when asked if she would still want to participate if she ended up owing money, she said, "Yes, because it's not about me, it's about the class."[99] When asked why she had to be the class representative, Jenkins testified: "I don't have to; I want to."[100] When asked how she protected class interests, she explained: "To make sure they get what they deserve and see that counsel does everything for them what they are doing for me."[101] In conclusion, she explains her duties: "To be the best representative I can for the people, to keep the interest of the class, and to keep my lawyers informed, put the class members ahead of myself."[102] Nothing more could be hoped of a class representative.

## VII. CONCLUSION

Jenkins moves the Court to certify a class consisting of:

Consumers in all states, except California, whose vehicles were repossessed by Defendant after the states' enactment of section 9-611 of the Uniform Commercial Code ("UCC") and subsequently disposed of by Defendant.

Jenkins has satisfied all the requisites for class certification under Rule 23, and thus, she respectfully requests that her Motion for Class Certification be granted.

Respectfully submitted,

---

[98] Jenkins Depo. at 23, ll. 21-24; p. 24, ll. 1-2; p. 83, ll. 12-22.
[99] *Id.* at 77, ll. 10-11.
[100] *Id.* at 83, ll. 14-15.
[101] *Id.* at 83, ll. 20-22.
[102] Jenkins Depo., at 23, ll. 21-24; p. 24, ll. 1-2.

22

/s/  David P. Meyer
David P. Meyer (0065205)
dmeyer@dmlaws.com
Trial Attorney for Plaintiff
Patrick G. Warner (0064604)
pwarner@dmlaws.com
DAVID P. MEYER & ASSOCIATES CO., LPA
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone:      (614) 224-6000
Facsimile:      (614) 224-6066

Thomas A. Hargett
tahargett@mhclaw.com
MADDOX HARGETT & CARUSO
10100 Lantern Road
Fishers, Indiana 46038
Telephone: (317) 598-2052
Facsimile: (317) 598-2050

Barbara Quinn Smith
bqsesq@aol.com
MADDOX HARGETT & CARUSO
6685 Beta Drive
Cleveland, Ohio 44143
Telephone: (440) 605-7297
Facsimile: (440) 646-1615

Scott L. Starr
starr@starrausten.com
Andrew B. Miller
miller@starrausten.com
STARR AUSTEN & MILLER, LLP
201 South Third Street
Logansport, Indiana 46947
Telephone: (574) 722-6676
Facsimile: (574) 753-3299

Counsel for Plaintiff Vicki Jenkins
and the putative class

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on December 10, 2007, a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties registered for electronic service by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

> /s/ David P. Meyer
> David P. Meyer (0065205)
> dmeyer@dmlaws.com
> Trial Attorney for Plaintiff
> Patrick G. Warner (0064604)
> pwarner@dmlaws.com
> DAVID P. MEYER & ASSOCIATES CO., LPA