# Exhibit 4
# Affidavit of Jeffrey Ferriell

EXPERT REPORT OF JEFFREY T. FERRIELL

**My Credentials.** My curriculum vita is attached as Exhibit A. I am a tenured Professor of Law at Capital University Law School, where I have been on the faculty as a teacher and scholar since 1987. At Capital I have taught Secured Transactions, Consumer Bankruptcy, Business Bankruptcy, Contracts, Consumer Law, Federal Courts, and Professional Responsibility. I have also taught commercial law subjects, including Secured Transactions and Bankruptcy as an Adjunct Professor of Law at Moritz College of Law at The Ohio State University for six of the last nine years, including the upcoming Spring 2008 Semester. Before joining the faculty at Capital I was a tenured Professor of Law at Ohio Northern University College of Law. I have been a Visiting Professor of Law and taught commercial law courses, including Secured Transactions, at the Moritz College of Law at Ohio State, at the University of San Diego School of Law, and at Santa Clara University Law School. I have been licensed to practice law in California since 1978.

Except for two years when I was on sabbatical leave from my position at Capital, I have taught the law of Secured Transactions under Article 9 of the Uniform Commercial Code every year since 1979, when I joined the law school faculty at Ohio Northern University. I have taught the course at Capital, Ohio State, Ohio Northern, and San Diego.

I am the author several books: a two volume treatise on the "Commercial Code" in Ohio, published in 1996 as part of Banks-Baldwin's Ohio Civil Practice series; "Understanding Bankruptcy" (Lexis/Nexis 2007) (with Edward J. Janger); and "Understanding Contracts" (Lexis/Nexis 2004) (with Michael Navin). I am also the author of a book-length chapter on bankruptcy courts and officers, as well as numerous law review articles on bankruptcy jurisdiction and procedure.

I was appointed in 2007 by Ohio Governor Ted Strickland as a member of the Ohio Council on Uniform State Laws and as a result I am a Commissioner representing Ohio on the National Conference of Commissioners on Uniform State Laws (NCCUSL). NCCUSL, together with the American Law Institute (ALI), is the body that is responsible for the promulgation and revision of the Uniform Commercial Code, as well as a variety of other Uniform and Model Acts and Statutes including the Uniform Consumer Credit Code, the Uniform Consumer Sales Practices Act, the Uniform Partnership Act, the Uniform Trusts Act, etc. I have also served as a member of the American Bar Association Business Law Section's Uniform Commercial Code Committee and its subcommittee on Secured Transactions. I have been a member of the Ohio State Bar Association's Study Committee on Article 2A of the Uniform Commercial Code (enacted as Chapter 1310 of the Ohio Revised Code), and was an advisor to Ohio State Senator Jeff Jacobson in connection with Ohio's 2001 adoption of the 1999 Amendments to Article 9 of the UCC (enacted as Chapter 1309 of the Ohio Revised Code). I have also served as an advisor to Ohio Secretary of State Jennifer Brunner in connection with her office's responsibilities as the filing office under Article 9 of the UCC in Ohio.

**Materials I have Reviewed for this Report.**

- Various pleadings, including the Class Action Complaint

1

- Plaintiff's Motion for Class Certification
- Defendant's Response to Plaintiff's Motion for Class Certification
- Judge Sargus' Opinion and Order dated September, 30, 2005
- Magistrate Judge Norah McCann King's Order dated November 22, 2006
- Expert Report of Barkley Clark
- Expert Report of Prof. Linda Mullenix
- Declaration of Aaron L. Cervantes
- Hyundai Notices and Form Notices sent to Ms. Vicki Jenkins
- Hyundai Notices and Form Notices Used in several states
- Article 9 of the Uniform Commercial Code
- The Ohio version of Revised Article 9 of the UCC in Chapter 1309 of the Ohio Revised Code and the Official Comments to Article 9.
- The Ohio Retail Installment Sales Act.
- The Ohio Consumer Sales Practices Act.
- A Chart summarizing state laws on repossession and foreclosure statutes of American jurisdictions prepared by Meyer & Associates.
- Charts designated as NOIL Guidelines for Foreclosure Notices by Hyundai
- A list of state laws on repossession and foreclosure statutes of American jurisdictions prepared by Meyer & Associates.
- Various court decisions applying state enactments of the Uniform Commercial Code and other state statutes.
- Various state consumer protection statutes, retail installment sales acts, and deceptive trade practices acts.
- Various secondary sources on the laws and practices governing secured transactions, retail installment sales of consumer goods, & unfair & deceptive acts and practices acts of different types

I have been engaged by the firm of Meyer & Associates in Columbus, Ohio to provide my professional academic opinion as to whether the laws governing notice of a secured creditor's foreclosure sale of consumer goods are uniform in several key respects, particularly regarding a secured party's duty to supply notice to the debtor of its intended sale of the collateral and the contents of the required notice.

This class action is predicated on whether the defendant sent the correct post-repossession notice. This issue is uniformly applicable to members of the class in all fifty states and the District of Columbia. Further, the content of the post-repossession notice is the same or nearly the same making certification as a class action possible. Any minor differences in law can be easily managed by sub-classes.

In my opinion, the laws governing these transactions are the same in nearly every state in the nation. There is uniformity in all 49 states and D.C. in the proposed class with respect to the secured party's duty to give notice of the intent to dispose of collateral to the debtor. Pursuant to UCC § 9-626(b), in all 49 states and D.C. in the proposed class, once the debtor places the creditor's compliance with the notice requirement at issue, the creditor has the burden of establishing compliance with the notice requirements. Thus, the issue of whether notice was provided, including the burden to prove that it was, is uniform.

If and only if the secured party can establish that notice was provided, the issue becomes whether the notice was proper – that is, did it contain the required contents.

**Background on Article 9 of the UCC**

Article 9 of the Uniform Commercial Code was developed in the 1950's and 1960's to consolidate and make uniform the variety of state statutes that had previously governed transactions in which personal property and fixtures were used to secure an obligation. Article 9 contains uniform rules regarding the creation, perfection, priority, and foreclosure of any interest in personal property or fixtures which secures payment or performance of an obligation.

The Code's rules governing default and foreclosure deal with several key aspects of the foreclosure process, including: (1) a secured party's right to repossess the collateral upon the debtor's default; (2) the secured party's right to sell or otherwise dispose of the collateral; (3) the secured party's obligation to give notice to the debtor concerning various aspects of the intended sale; (4) the secured party's obligation to conduct every aspect of the sale in a "commercially reasonable" manner; (5) limitations on the secured party's right to simply retain the collateral in satisfaction of the debt (sometimes referred to as "strict foreclosure"); (6) the debtor's right to redeem the collateral; and (7) remedies available to the debtor for the secured party's failure to comply with the Code's rules regarding the foreclosure process.

This class certification involves only item (3) – the secured party's obligation to give notice to the debtor concerning various aspects of the intended sale.

**Post-Repossession Notice to Debtor Required in All American Jurisdictions**

One clear rule applies in all 50 states: a secured party must send advance notice to the debtor concerning its disposition of the collateral. This was true under the pre-2001 version Article 9 and is true of the Revised 2001 version. Moreover, the 2001 revisions were designed to go into effect at the same time: July 1, 2001. Only four states missed this deadline. Revised Article 9 went into effect in Connecticut on October 1, 2001, and in Alabama, Florida, and Mississippi on January 1, 2002.

Both revised UCC §§ 9-613 and 9-614 and former UCC § 9-504, as adopted and applied in all 50 states and the District of Columbia, require a secured party to send notice to the debtor in advance of the secured party's sale of the collateral. Nothing in any state consumer protection statute eliminates the secured party's basic obligation to send notice of the sale.

**Near Uniformity of Contents of Post-Repossession Notice to the Debtor**

Forty-nine states and the District of Columbia, require notice to the debtor of nine key pieces of information concerning the secured party's disposition of the collateral under Article 9. One state, North Dakota, requires notice of all but two of these items of information. Only a few states require notice of additional items, beyond those required by the UCC.

These forty-nine states and the District of Columbia require the secured party to provide notice of the following all of which are specified by these jurisdictions' uniform enactment of UCC §§ 9-613 and 9-614. The first five of these requirements are contained in § 9-613(1). The remainder are in § 9-614(1). In cases involving consumer goods transactions, all items are required by UCC § 9-614(1), which incorporates the items listed in § 9-613(1), in its list of the items required to be contained in the notice of the secured party's intended sale.

These items are:

- A description of the debtor and the secured party (UCC § 9-613(1)(A));
- A description of the collateral that is the subject of the intended sale (UCC § 9-613(1)(B));
- A statement regarding the method of intended sale (UCC § 9-613(1)(C));
- A statement that the debtor is entitled to an accounting of the unpaid debt any charges imposed for the accounting of the unpaid debt (UCC § 9-613(1)(D));
- the time and place of a public disposition of the collateral, or of the time after which any other disposition is to be made (UCC § 9-613(1)(E));
- A description of any liability for a deficiency of the debtor or secondary obligor to whom the notification is sent (UCC § 9-614(1)(B));
- A telephone number to use to contact the secured party to learn the amount necessary to redeem the collateral before the intended sale (UCC § 9-614(1)(C)); and
- A telephone number or mailing address to contact the secured party to obtain additional information about the obligation and the sale; (UCC § 9-614(1)(D)).

The UCC supplements this list with a standardized safe-harbor notice provision that may be used by a creditor to comply with the Code's requirements. A creditor who sends the notice supplied in UCC § 9-614(3) and completes it with the items of information listed above, complies with the code's requirements regarding notice of an upcoming sale of the collateral, as a matter of law. Hyundai has failed to sustain its burden of proving that the notices it sent to debtors, including Vicki Jenkins, conforms to the statutory safe-harbor notice.

These items of information and the statutory safe-harbor notice form have been carefully crafted to enable the secured party to provide the necessary notice with a minimum of individualized details about the transaction between the secured party and the debtor. The only items of information that are specifically tied to the transaction between the parties are those found in UCC § 9-614(1)(A) (a description of the secured party and the debtor), UCC § 9-614(1)(B) (a description of the collateral), and UCC § 9-614(1)(E) (the time and place of a public sale or the time after which a private sale or other disposition will be held). All other pieces of information required to be included in this generic disclosure, can be standardized with respect to a large number of commonly recurring dispositions.

Creditors who regularly find it necessary to repossess and dispose of motor vehicles are likely to use the same method of disposing of the collateral. They are likely to routinely utilize the same motor vehicle auction facility, somewhere in geographic area near to the place where the collateral was repossessed. The notice does not require the secured creditor to disclose the amount necessary to redeem the collateral, which due to the accumulation of interest and storage charges, is likely to change on a daily basis. Instead, the secured creditor need only notify the debtor of the telephone numbers from which the amount necessary to redeem the collateral is available and a phone number or mailing address from which other information concerning the sale is available. As a quick examination of the statutory safe-harbor notice form reveals, other information required to be provided is completely generic and need not be tailored to any individual debtor, or for that matter, to any individual secured party.

This generic statutory safe-harbor notice provision makes it easy for secured parties, whose states adhere to the uniform version of § 9-614, to use a standardized notice, without the need to individualize notices from one state to the next, or to accommodate different choice of law rules that might affect the law applicable to variations in specific jurisdictions.

Former UCC § 9-504(3) required "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made." This earlier version, which was effective in all fifty states, did not contain the details now supplied by Revised § 9-614, nor did it specify what other items of information concerning the transactions and sale might be necessary to constitute "reasonable notification," but, like the current law in all states, notice of the time and place of a public sale was required or notice of the time after which a private sale or other disposition would be made.

**Non-Uniform Notice of Debtor's Right to Redeem or Reinstate**

All states give the debtor a right to redeem the collateral, by paying the full amount of the accelerated debt, together with the reasonable expenses of retaking, holding, preparing and

disposing of the collateral and agreed-upon attorney's fees and legal expenses. UCC §§ 9-623(a) & 9-615(a)(1). A few states require the secured party to notify the debtor of this right to redeem the collateral, and one requires the secured party's notice to include the amount necessary to redeem. With the exception of New York, where the secured party must notify the debtor of the amount necessary to redeem, these requirements can be satisfied by a modest amendment to the standard safe-harbor notice prescribed by § 9-614(3), and could possibly be satisfied even without adjustments to the standardized notice.

Four states give the debtor a post-repossession right to "cure" the default, de-accelerate the debt, re-acquire the collateral, and reinstate the contract as if there had been no default. This is sometimes referred to as "reinstatement." Thus, more particularized state-specific notices must be sent in Connecticut, Ohio, Maryland, and Pennsylvania.

**Commercially Reasonable Notice not a Separate Issue in this Case**

All state enactments of the Uniform Commercial Code independently require that "[e]very aspect of a disposition of collateral, including the method, time, place, and other terms, must be commercially reasonable." UCC § 9-610(b). This same requirement was imposed by every state under enactments of former UCC § 9-504(3). This requirement is independent of the secured party's duty to provide the debtor with notice of its disposition of the collateral that meets the requirements of UCC § 9-614.

The duty to conduct a "commercially reasonable" sale primarily governs the "method, time, place, and terms of the sale." It might, for example, affect whether the secured party may sell a motor vehicle at a "dealers-only" sale, or whether the sale must be a retail or wholesale sale, or may be held on the weekend, at night, or in an obscure location. It also affects the manner in which the secured party advertises the sale, though some states, like Ohio, impose additional specific requirements on the manner in which a sale must be advertised.

The content of the notice that must be sent to the debtor is now specified by § 9-614. It requires certain items of information to be supplied to the debtor and further specifies that if the notice form prescribed by § 9-614(3) is used to convey the required details, that the notification "provides sufficient information." These two rules together remove the ambiguity that the more abstract "commercial reasonableness" requirement created under the pre-2001 version of the Code. And, even under the pre-2001 version, it was clear that the secured party was required, at a bare minimum, to notify the debtor about the "time and place of any public sale" or "the time after which any private sale or other intended disposition is to be made."

The only aspect of notification of the sale that is now affected by the requirement of "commercial reasonableness" is the timing and format of the notification, which are not implicated by the plaintiff's claims in this case.

Thus, although variations may exist from one state to the next regarding what satisfies the requirement of a commercial reasonable sale, these variations are not relevant to the plaintiff's claims that the defendant's notice was not sent or contained less than all of the information required by UCC § 9-614 and former UCC § 9-504.

**Strict or Substantial Compliance with Notice Requirement**

There is no variation among the states in the requirement that a secured party supply some form of notice to the debtor about the secured party's disposition of the collateral. Moreover, the 2001 revisions to UCC § 9-614 require strict compliance with its provisions regarding items of information that "must" be included in notice to the debtor in consumer-goods transactions. These changes eliminate the "substantial compliance" approach to the notice requirement with respect to these specific matters that must be provided to the debtor.

Before the 2001 revisions, some courts held that mistakes in the notice sent to a debtor were not so substantial as to render the notice "commercially unreasonable." *E.g. *Ford Motor Credit Co. v. Hertzberg**, 511 N.W.2d 25 (Minn. Ct. App. 1994). However, before 2001, the Code only required that the notice advise the debtor of "the time and place of any public sale or . . . of the time after which any private sale or other intended disposition is to be made." U.C.C. § 9-504(3) (1972). Cases such as *Hertzberg*, that held that mistakes in the notice might not be substantial, dealt with matters other than the items of information that were expressly required to be included in the notice. In *Hertzberg*, for example, the notice sent to the debtor contained inaccurate information about the amount necessary to redeem the collateral.

In cases such as *Ford Motor Credit Co. v. Price***, 210 Cal.Rptr. 17 (Cal. Ct. App. 1985), on the other hand, courts took a "strict compliance" approach to the express statutory minimum requirement that the time and place of the sale be included in the notification sent to the debtor.

Changes made to Article 9 in 2001 expand the items of specific information that are required to be disclosed to the debtor in "consumer-goods transactions." Significantly, the code now specifies that the items of information in § 9-614(1) (including those in § 9-613(1)) "must" be provided in the "notification of disposition" sent to the debtor (and anyone else entitled to notice of the intended disposition).

Here, the code draws a sharp distinction between the notice sent in other transactions and those sent in consumer-goods transactions. In other transactions, the code provides secured party's with a safe-harbor provision that assures the secured party of compliance with Article 9's notice requirement if the notice (1) describes the debtor and the secured party, (2) describes the collateral that is the subject of the intended disposition, (3) states the method of disposition, (4) discloses the debtor's right to an accounting of the unpaid debt and any charge for providing this accounting, and (5) states the time and place of a public disposition or the time after which any other disposition is to be made." UCC § 9-613(1)(A)-(E) (2001). As the Official Comments to § 9-613 indicate: "Except in a consumer transaction, the contents of a notification that includes the information in [§ 9-613(1)] are sufficient as a matter of law, unless the parties agree otherwise." UCC § 9-613, Official Comment 2 (2001).

In consumer-goods transactions, the 2001 Revision of Article 9 expressly requires these items of information to be supplied in the notification to the debtor, together with additional information regarding the debtor's liability for a deficiency, information needed to contact the secured party regarding the amount that must be paid to redeem the collateral or to obtain further information

7

about the disposition of the collateral and the obligation involved in the transaction. Significantly, § 9-614(1) provides that in connection with "a consumer-goods transaction . . . [a] notification of disposition *must* provide the following information." Unlike the list of information that may be included to ensure compliance with the code's requirements in other transactions, the information specified by § 9-614(1) "must" be included for the secured party to satisfy its obligation to send notification of the disposition.

Moreover, the Official Comments to UCC § 9-614 expressly provide: "A notification that lacks *any* of the information set forth in [§ 9-614(1)] is insufficient *as a matter of law*." UCC § 9-614, Official Comment 2 (2001) (emphasis added). The text of the code itself buttresses this point by providing that "A notification . . . is sufficient, even if it includes errors in *information not required by paragraph (1)*, unless the error is misleading with respect to rights arising under [Article 9]." UCC § 9-614(5) (2001) (emphasis in original). The Official Comments contain a further explanation that "non-misleading errors in information contained in a notification are permitted if the safe-harbor form is used *and if the errors are in information not required by paragraph (1)* [of 9-614]." UCC § 9-614 Official Comment 3 (2001) (**emphasis in original**).

This express Code language and its explanatory comments should put to rest any suggestion that substantial compliance with the requirement of supplying the items of information specified in 9-614(1) is sufficient. The Code now makes it clear that in consumer-goods transactions, strict compliance is required.

Three treatises on Article 9 agree with this position: William D. Hawkland, & Neil B. Cohen, 9C Hawkland UCC Series § 9-614:2 (2007); Barkley Clark & Barbara Clark 1 The Law of Secured Transactions under the Uniform Commercial Code ¶ 4.08[7][3] (2007) ("mandatory content requirements"); James J. White and Robert A. Summers, Uniform Commercial Code § 25-11 at p. 913 (5th ed. 2000).

**Timing of Notice is not involved in this Case**

The timing of supplying notice is not a part of the plaintiff's claim. Thus, variations in the timing requirements do not present difficulties in establishing an appropriate class of plaintiffs from different states. The plaintiff's claims are based on the failure to give any notice and on the failure to supply notice that contains the information required by the code, rather than on any deficiency in the timing of the notice.

The appearance of the notice is rarely an issue. Revised UCC Article 9 contains a safe-harbor provision, which, if followed, provides sufficient notice. UCC § 9-614(3). If some other format is used, then common law or non-Code statutory determinations of what is commercially reasonable notice controls affects whether the notice is sufficient. UCC § 9-614(6). Again, however, it is the fact and content of the notice that is relevant in this case, not the format in which the notice appeared.

**No Impact of Variations in State Law on the Meaning of Default**

The plaintiffs claims in this case do not involve any allegations that members of the class were not in default. Thus, even though minor variations exist in various states with respect to the meaning of "default," these variations have no effect on the plaintiff's claims that the defendant failed to provide "post-default, post-repossession" notice of their intended disposition of the collateral.

**Notice Requirements In Ohio**

Ohio's post-repossession notice requirements are similar to those of other states. As suggested above, although Ohio appears to require three separate pre-sale, post-repossession notices, it merely supplements the standard UCC requirements with two sets of additional matters of which the debtor must be notified.

Ohio requires post-repossession notice to the debtor of standard uniform information required by UCC §§ 9-611 and 9-614. Ohio Rev. Code §§ 1309.611, & 1309.614. In addition, Ohio's Retail Installment Sales Act requires notice of the items of information required by Ohio Rev. Code § 1317.16, regarding additional details of the intended sale (including the minimum price for which the collateral will be sold and the debtor's liability for any deficiency). These notices are commonly sent simultaneously as specifically authorized by § 1317.12. The requirements of § 1317.16 require little more than two additional lines of information beyond what is required by the notice provisions of §§ 1309.611, and 1309.614.

Ohio also requires a post-repossession notice of the debtor's right to cure and reinstate the obligation as if there had been no acceleration. This requirement is imposed by Ohio Rev. Code § 1317.12.

Significantly, § 1317.12 expressly authorizes the notices required by § 1317.16 and 1317.611 "to be included *as part of* the notice required by this section." Ohio Rev. Code § 1317.12 (emphasis added). Thus, Ohio contemplates and encourages use of a single notice containing all of the requirements imposed by these provisions. The best practice among secured creditors in Ohio is to send these notices together. This is less expensive and avoids the possibility that debtors will be confused by the receipt of separate notices at different times.

**Minor Differences**

With respect to the required contents of the notice and manner of delivery, there are some minor variations in a few of the 49 states. However, to the extent that they are not perfectly uniform, they nevertheless lend themselves to classification into a single large group of approximately 41 states in which the notice content requirements are uniform and into at most eight sub-classes that contain identical or nearly identical notice requirements. My experience in this area, over 30 years of academic study, teaching, and writing, indicates that:

- All states require post-repossession notice of several key elements of an intended disposition of the collateral.

9

- North Dakota's version of UCC 9-613(1) does not require this notice to include all of the items required by other states that adopted the uniform version of UCC § 9-614.
- Ohio gives the debtor a post-repossession right to cure and reinstate the obligation and require post-repossession notice of this right. Thus, the notices required to be given in Ohio require the contents specified in UCC §9-614 and the time, place and minimum prices for which the vehicle will be sold, as well as a statement that the debtor may be liable for any deficiency. Ohio also requires that the notice be sent via certified mail. Ohio could be treated as a sub-class if it is necessary to determine whether the notice contains the required contents.
- Connecticut gives the debtor a post-repossession right to cure and reinstate the obligation and require post-repossession notice of this right. In addition to the content requirements of UCC 9-614, Connecticut requires that the notice be sent by registered or certified mail and state time and place of any public sale or the time after which any private sale is to be made. Connecticut could be treated as a sub-class if it is necessary to determine whether the notice contains the proper contents.
- Pennsylvania gives the debtor a post-repossession right to cure and reinstate the obligation and requires post-repossession notice of this right. Pennsylvania also requires that the notice be authenticated. Pennsylvania could be treated as a sub-class if it is necessary to determine whether the notice contains the proper contents.
- New York requires a secured party's post-repossession notice to include information about the precise sum necessary for the debtor to redeem. If it is necessary to determine compliance with the notice content requirements, New York could be placed into a separate sub-class.
- Maryland and the District of Columbia require that the notice of intended disposition be sent via registered or certified mail and include information about the location where the collateral is being stored pending the sale. If it becomes necessary to determine compliance with the content requirements, Maryland and D.C., could be placed into a separate sub-class.
- Massachusetts requires that the notice inform the debtor that he or she can get the vehicle back by paying the full amount of the debt, plus any reasonable expenses incurred by the creditor within 20 days after the repossession.
- Georgia requires notice of additional items that might make it necessary to group that state into its own sub-class when it comes to determining compliance with the required contents of the notice of intended disposition. Specifically, Georgia requires notice of the secured party's intent to pursue a deficiency; notice specifically advising the buyer of right of redemption; and notifying the buyer of his or her right to demand a public sale of the collateral.

The plaintiff's claims are not based on the defendant's failure to send any required pre-repossession notice of the type that is required by a few other jurisdictions. Thus, there is no need to segregate plaintiffs with claims under these states into another group or subclass.

**Conclusion**

The requirement of giving a debtor post-repossession notice of an intended UCC sale of repossessed collateral is uniform in all fifty states and the District of Columbia. The contents of

10

that notice are uniform in all but few states, which require notice of matters such as (1) any post-repossession right to cure & reinstate, (2) the specific amount necessary to redeem (as opposed to reinstate), (3) the place where the collateral is being stored pending the sale, and (4) the debtor's right to demand a public sale of the collateral.

Despite these variations, there is a remarkable degree of uniformity throughout the country with respect to the notice that is required to be sent   In consumer goods transactions, forty-nine states and the District of Columbia require notification to be sent containing the information listed in UCC § 9-614(1). Only North Dakota permits notice containing anything less.  Of these states, only a few require anything more.

Although an initial examination of state Retail Installment Sales Acts, state enactments of the Uniform Consumer Credit Code, and other state consumer protection statutes might lead to a preliminary conclusion that the notice requirements imposed across the country are extraordinarily complex, close study of these other statutes reveals that only a few of them impose requirements different from what is required by state enactments of the Uniform Commercial Code.

The notice requirement is not affected by the secured party's obligation to conduct a "commercially reasonable" sale and thus this requirement does not inject further variables into the issue of class certification.  The 2001 amendments to Article 9 were designed to eliminate the ambiguity that the commercial reasonableness requirement inserted into the notice requirement. The code now requires a specific list of items that must be disclosed to the debtor and provides secured creditors who supply notice of these items in a format prescribed by Article 9 with a safe harbor from liability due to failure to provide notice of additional matters under the commercial reasonableness rubric that applies to other aspects of the secured creditor's sale.

Significantly, recent criticisms of the lack of uniformity in the consumer compromises contained in the 2001 revisions to Article 9 make no mention of the requirements of §§ 9-611 and 9-614. *See* Charles Mooney, *The Consumer Compromise in Revised Article 9: The Shame of It All*, 68 Ohio St. L.J. 215 (2007), and instead focuses on several other aspects of the revisions.

Because of the considerable uniformity across state lines of these notice provisions, and the elimination of both the commercial reasonableness standard with respect to their contents and the elimination of any "substantial compliance" standard for providing notice, it should be fairly simple for a court to determine whether the notices sent by a secured creditor complied with the code's requirements.  In most states it will be no more difficult than comparing the contents of the secured creditor's standard notice form to the list of required items contained in § 9-614. Even in states that have more extensive notice requirements, it will not be difficult to compare the creditor's standard notice with the few additional items that state requires.

The detailed list of required items in §§ 9-614, together with the lack of any need to determine whether the contents of the notice are commercially reasonable or substantially comply with the Code, lends itself to classwide treatment of the issue of the creditor's compliance with its duty to supply notice, and indeed to eventual resolution through the summary judgment process.  For the

same reason, jurors are likely to find it easy to compare the legal requirements with the creditor's actions.

Jeffrey T. Ferriell

12/10/2007
Date

# JEFFREY T. FERRIELL
## Professor of Law
## Capital University Law School

Capital University Law School
303 E. Broad Street
Columbus, OH 43215
(614) 236-6683 (voice)
(614) 236-6956 (fax)
jferriell@law.capital.edu
http://users.law.capital.edu/jferriell

774 S. Sixth Street
Columbus, OH 43206
(614) 444-3994 (home)
(614) 444-9811 (fax)

## EDUCATION

UNIVERSITY OF ILLINOIS, Champaign, IL
LL.M., 1983 (emphasis in commercial law & bankruptcy)

UNIVERSITY OF SANTA CLARA SCHOOL OF LAW, Santa Clara, CA
J.D., Summa Cum Laude, 1978

> Comments Editor, Santa Clara Law Review, 1977-78
> Chairperson, Moot Court Honors Board, 1977-78
> Award for Most Outstanding Graduate, 1978.

OHIO STATE UNIVERSITY, Columbus, OH
B.S., 1975

## PUBLICATIONS

### BOOKS & CHAPTERS

Understanding Bankruptcy (2d ed. Lexis/Nexis 2007) (with Edward J. Janger)

Understanding Contracts (Lexis/Nexis 2004) (with the late Michael Navin)

Baldwin's Ohio Practice, Commercial Code, Vols 1 & 2 (1996); Annual Supplements 1997 & 1998.

Chapter 2, Courts and Officers, Bankruptcy Service -- Lawyer's Edition (Lawyer's Cooperative Publishing Company, 1986).

### ARTICLES

The Perils of Nationwide Service of Process in a Bankruptcy Context, 48 Wash. & Lee L. Rev. 1199 (1991).


EXHIBIT A

## PUBLICATIONS CONT'D

Collateral Estoppel in Ohio, 18 Capital U. L. Rev. 337 (1989) (solicited for publication).

Actions to Collect Accounts Receivable in Bankruptcy Court, 26 Houston L. Rev. 603 (1989).

The Constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 63 Am. Bankr. L.J. 109 (1989).

Core Proceedings in Bankruptcy Court, 56 UMKC L. Rev. 47 (1987).

The Preclusive Effect of State Court Decisions in Bankruptcy, Part II, 59 Am. Bankr. L.J. 55 (1985).

The Preclusive Effect of State Court Decisions in Bankruptcy, Part I, 58 Am. Bankr. L.J. 349 (1984).

Res Judicata in Ohio: Preclusion of Causes of Action or Claims?, 10 Ohio N.U.L. Rev. 241 (1983) (solicited as a companion piece to Shapiro, The Application of State Claim Preclusion Rules in a Federal Civil Rights Action, 10 Ohio N.U.L. Rev. 200 (1984)).

The Bankruptcy Reform Act and Ohio's New Exemption Law: Representing Consumer Debtors in Liquidation Proceedings, 8 Ohio N.U.L. Rev. 881 (1981).

The Proposed Bankruptcy Reorganization Provisions: A Comparison of the Current Law with Chapter 11 of H.R. 8200 and S. 2266, 18 Santa Clara L. Rev. 567 (1978) (with Sheridan Downey III & Roland Pfeiffer).

Note, Bankruptcy--Voidable Preferences--Uniform Commercial Code Section 9-306(4)(d) Operates as a Voidable Preference, in re Gibson Products of Arizona, 17 Santa Clara L. Rev. 967 (1977).

## PROFESSIONAL EXPERIENCE

Professor of Law, Capital University Law School, 1987- present; Visiting Professor 87/88; Adjunct Professor, Spring 1987.
- Courses: Contracts, Secured Transactions, Business Bankruptcy, Consumer Bankruptcy, Payment Systems (formerly Commercial Paper).
- Previously taught: Professional Responsibility, Federal Courts, and Consumer Law.
- Advisor, National Moot Court Team, 1987-2003
- SBA Award for Faculty Member of the Year, 1997-98.
- BLSA Dr. Martin Luther King Image Award, 1991, 1998.
- Alumni Association Distinguished Faculty Award 1997.
- Faculty Scholarship Award, 1997.

## PROFESSIONAL EXPERIENCE (cont'd)

Adjunct Professor of Law, The Ohio State University Moritz College of Law, Spring 2008, Spring 2006, 2004-05, Spring 2003, 2001-02; 1998-99; Spring 1988; Visiting Professor, 1986-87 (Commercial Paper, Secured Transactions, Bankruptcy Reorganizations, Contracts, Debtors' and Creditors' Rights),

Professor of Law, Ohio Northern University, 1985-1988 (on leave 1986-88); Associate Professor, 1982-1985; Assistant Professor, 1979-1982. (Contracts, Secured Transactions, Commercial Paper, Debtors' & Creditors' Rights, Antitrust, Consumer Protection); Advisor, National Moot Court Team, 1979-1985; Member, Faculty Senate, 1984-1986; Chair, University Budget Committee, 1985-86.

Visiting Professor of Law, University of San Diego, Summer, 1987; Summer, 1986; Summer, 1983 (Secured Transactions)

Of Counsel, Caldecott, Phillips, & Downey,
405 14th Street -- Suite 800, Oakland, CA  94612,
Summer, 1985 (Chapter 11 Bankruptcy, Debtors' Representation).

Visiting Assistant Professor of Law, Santa Clara University, Spring, 1979 (Commercial Law & Real Estate Finance).

Graduate Law Teaching Fellow, University of Illinois, 1978-79 (Legal Research & Writing).

## PROFESSIONAL SERVICE AND MEMBERSHIPS

Member, National Conference of Commissioners on Uniform State Laws, 2007-present (appointed by Ohio Governor Ted Strickland)

Ohio CLE Institute, Bankruptcy Curriculum Committee, 1992-1999.

Ohio State Bar Association, Consultant to Uniform Commercial Code Subcommittee on Personal Property Leasing, 1989-1992.

Chair, AALS Section on Creditors' and Debtors' Rights, 1988.

Member, Committee on Uniform Commercial Code, ABA Section on Corporation, Banking, & Business Law.

Member, Columbus Bar Association; Ohio State Bar Association; International Women's Insolvency & Restructuring Confederation (IWIRC); American Bankruptcy Institute; American Bar Association.

Member, California Bar, 1978; Northern District of California, 1985.

**COMMUNITY SERVICE**

    Board of Directors, Martha's Vineyard Camp Meeting Association, Inc., 2007-present (MVCMA.ORG)

    Election Precinct Judge, Franklin County Board of Elections, 2007-present

    Ohio State Government Liaison for the American Radio Relay League (ARRL), 1999-2002 (Arrl.org)

    Chair, Columbus Bikeway Advisory Committee, 1993-1995 (appointed by Mayor Greg Lashutka)

    Member, American Red Cross - Central Ohio Amateur Radio Emergency Service (COARES), 1991-2002; FCC Extra Class Amateur Radio License, K8ZDA (licensed since 1991).

    Volunteer, Columbus Outdoor Pursuits (formerly known as Columbus Council American Youth Hostels), Board of Trustees, 1994-97; Emergency Communications Director for Great Ohio Bicycle Adventure (GOBA), 1998-2002; Assistant GOBA Emergency Communications Director, 1994-97; Coordinator TOSRV Registration 1993-96; Member, Risk Management Task Force; Member, Litigation Task Force.

    Board of Trustees, Central Ohio Bicycle Advocacy Coalition, 1990-1994; President, 1991-92; Vice President, 1990.

    Accredited Volunteer Examiner, ARRL & W5YI, FCC Amateur Radio Volunteer Examiner Programs, 1995-present.