## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

VICKI D. JENKINS,

      Plaintiff,

                                 **Case No. C2-04-720**
vs.                            **Judge Edmund A. Sargus, Jr.**
                                 **Magistrate Judge Norah McCann King**

HYUNDAI MOTOR FINANCING CO.,

      et al.,

           Defendants.

### OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Class Certification. The Court also considers Plaintiff's tangential Motions for Designation of Interim Co-Lead Class Counsel Pursuant to Fed. R. Civ. P. 23(g)(3) and to Strike Hyundai's Expert Testimony from Its Brief in Opposition to Class Certification. For the reasons that follow, Plaintiff's Motion to Strike is granted in part; Plaintiff's Motion for Designation of Interim Co-Lead Class Counsel is denied; and Plaintiff's Motion for Class Certification is granted in part, with the modification that the class is limited to Ohio residents.

### I.

On July 7, 2001, Plaintiff, Vicki D. Jenkins, purchased a new 2002 Pontiac Sunfire from Dennis Autopoint, an automobile dealer in the Columbus, Ohio area. The parties entered into a written conditional sales contract and Plaintiff executed a "Motor Vehicle Retail Installment

Contract" for purchase price of the automobile ($21,316.49) ("Contract"). Included as part of this total purchase price, Plaintiff financed the cost of gap insurance[1] ($468.00), credit disability insurance ($1,336.08), mechanical breakdown insurance ($1,163.00), and an extended warranty. Plaintiff took possession of the vehicle on or about July 7, 2001. Dennis Autopoint assigned Plaintiff' retail installment sales contract to Hyundai Motor Finance Company ("Hyundai").

Plaintiff made the payments due pursuant to the Contract through April of 2002. In March of 2002, however, Plaintiff became unable to work. Plaintiff submitted a claim under the credit disability insurance, requesting that the insurer make her payments while she was disabled. Before the insurer could process Plaintiff' claim, however, it required Hyundai to provide certain basic information. According to her Complaint, between March, 2002 and October, 2002, Plaintiff contacted Hyundai at least one time each month, and numerous times in many months, in an attempt to cause Hyundai to provide the information to the disability carrier so that her disability paperwork could be processed, and her car payments made pursuant to the contract. Plaintiff became delinquent on her account. On October 20, 2002, Hyundai repossessed Plaintiff' vehicle.

On October 22, 2002, Hyundai sent Plaintiff a letter explaining that her vehicle had been repossessed because she had not made the required payments. The letter stated that Plaintiff would have 15 days from the date of the notice to pay the entire amount due and owing, including repossession expenses, and that payments must be made to Hyundai's California office. The letter also stated, "[I]f you are late in making your payments or otherwise in default again during the term of your contract we may exercise our rights without sending you another notice like this

---

[1]     "Gap insurance" covers potential loss incurred by the buyer, if the vehicle is a total loss and the insurance payoff is less than the outstanding debt secured by the vehicle.

-2-

one." (Compl., ¶ 20.) According to the Complaint, Hyundai did not inform Plaintiff of its intent to dispose of her vehicle or disclose any of the information required by state law.

On November 22, 2002, Hyundai sold Plaintiff's vehicle at auction for $6,250. Plaintiff alleges that Hyundai was statutorily required by the Ohio Retail Installment Sales Act, O.R.C. §1317.12, *et seq.*, and Article 9 of the Ohio Uniform Commercial Code ("UCC) to send Plaintiff notification of specific issues related to the disposition of her vehicle, and no such notice was sent to Plaintiff. Plaintiff maintains that Hyundai's subsequent efforts to illegally collect on the deficiency balance of $18,900.02 further violated these statutes.

Plaintiff seeks class certification regarding similar actions by the Defendant in forty-nine states. The laws of all forty-nine states at issue in this case require creditors to send a written, post-repossession and pre-disposition notice ("Notice") to debtors before creditors sell the collateral-vehicles.[2] With the exception of North Dakota, the statutory notice in all jurisdictions requires the following eight identical pieces of information:

- A description of the debtor and the secured party;
- A description of the collateral that is the subject of the intended sale;
- A statement regarding the method of intended sale;
- A statement that the debtor is entitled to an accounting of the unpaid debt and any charges imposed for the accounting of the unpaid debt;
- A description of the time and place of a public disposition of the collateral, or of the time after which any other disposition is to be made;
- A description of any liability for a deficiency of the debtor or secondary obligor to whom the notification is sent;
- A telephone number to use to contact the secured party to learn the amount necessary to redeem the collateral before the intended sale; and
- A telephone number or mailing address to contact the secured party to obtain additional information about the obligation and the sale.

---

[2]     The State of California is not at issue in this case. *See infra*, note 3.

Plaintiff contends that Hyundai also failed to provide all putative Class Members with the statutorily proscribed pre-disposition notice. She also alleges that when Hyundai did provide some form of notice to Class Members, the notice did not contain all of the information that was required by statute prior to disposition of Class Member's vehicles, and that Hyundai improperly proceeded with collection efforts against Class Members for the resulting deficiency balances.

Hyundai's Asset Remarketing Department is responsible for the all of the procedures related to the disposition of repossessed vehicles. Hyundai's Asset Remarketing Department consists of five employees and a supervisor located at company headquarters in Fountain Valley, California. Hyundai repossesses approximately thirty vehicles per day throughout the country. For each repossessed vehicle, the Asset Remarketing Department creates a paper file which contains identical documentation. One person created and maintained these filed. This "notice person," is responsible for sending all notices to debtors. The notice person relied on a single, four-page document, the Notice Manual, which contained all of the company's instructions and requirements regarding Hyundai's sending of notices. Hyundai used a generic, fill-in-the blank notice in thirty-nine states. Hyundai used substantially similar notices in the other eleven states. Hyundai has a company policy that its notices were to be placed in the customer's Asset Remarketing Department file.

## II.

### A.    Motion to Strike

Plaintiff moves to strike the affidavit testimony of Hyundai's two experts, Barkley Clark and Linda Mullenix. Plaintiff asserts that Hyundai's proffered expert testimony is devoid of facts and consists completely of impermissible legal analyses and argument.

-4-

As set forth in Federal Rule of Evidence 702, expert testimony is admissible if the evidence will assist the trier of fact and if the witness is qualified as an expert. *Glaser v. Thompson Medical Co., Inc.*, 32 F.3d 969, 971 (6th Cir.1994). The expert's opinion may "embrace[ ] an ultimate issue to be decided by the trier of fact [,]" Fed. R. Civ. P. 704(a), but the issue embraced must be a factual one. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Expert opinions which express a legal conclusion are not admissible. *Id.* at 1354. "It is well-settled that testimony which offers a legal conclusion '[i]nvades the province of the court to determine the applicable law. . . .'" *United States v. Ohio Edison Co.*, No. 99-1181, 2003 WL 723269 at *1 (S.D. Ohio Feb. 25, 2003)(quoting *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)).

In his affidavit, Hyundai's expert, Barkley Clark, avers that he "has been engaged . . . to provide [his] professional opinion as to whether the laws governing default, foreclosure and remedies for creditor noncompliance are uniform throughout the country as they apply to secured consumer motor vehicle financing." (Expert Report of Barkley Clark, at 4.) Mr. Barley describes the laws of the various states and opines as to the complexity of interpreting each state's statutory scheme. Hyundai's second expert, Professor Linda Mullenix, provides legal arguments concluding that Plaintiff has failed to meet the legal requirements of Federal Rule of Civil Procedure 23.[3]

In the Court's view, the experts' opinions should be excluded insofar as each offers legal

---

[3] In response to Defendants' expert report, and because she was unsure as to whether the Court would allow such testimony, Plaintiff retained her own expert, Professor Jeffrey Ferriell. Plaintiff submitted his report as an attachment to her Reply brief in support of class certification. The Court's ruling with respect to the admissibility of Defendants' expert testimony applies equally to Professor Ferriell's report.

-5-

conclusions on matters that are solely for the Court's determination. Whether or not the law supports certification of a class action in this case is a decision within the sole province of this Court. Nonetheless, the testimony relates to procedural matters that will not be presented to and, thus, has no potential to confuse or prejudice a jury. The Court will, therefore, treat the reports as extensions of the parties' briefs and will consider the opinions as legal argument, rather than expert testimony. Plaintiff's Motion to Strike is therefore **GRANTED IN PART**, to the extent that the reports will not be considered as independent expert testimony, but will be considered as addition argument in support of each party's position.

## B.    Motion for Designation of Interim Co-Lead Class Counsel

Federal Rule of Civil Procedure 23(g)(3) is a permissive rule which provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "Although the rule does not provide a standard for determining whether interim counsel should be appointed, courts that have construed it have relied on the Advisory Committee Notes accompanying the rule which limit its use to circumstances when interim counsel is necessary to protect the interests of the putative class." *Carrier v. American Bankers Life Assur. Co.,* No. 05-cv-430-JD, 2006 WL 2990465, *1 (D.N.H., Oct. 19, 2006). The 2003 Advisory Committee Notes provide that designation of interim counsel is unnecessary where, as here, the counsel that filed the class complaint is the only counsel seeking appointment and there is no rivalry or uncertainty between other firms. Fed. R. Civ. P. 23(g)(2)(A), 2003 Advisory Committee Notes.

Here, appointing interim class counsel is unnecessary. There are no duplicative lawsuits pending in other courts, and no other lawyers are competing for class counsel appointment. In

-6-

any event, Plaintiff has moved to have her attorneys appointed as lead counsel in her Motion for Class Certification, and the Court takes up the evaluation of the adequacy of representation at this certification stage. The Motion is therefore **DENIED**.

**III.**

Federal Rule of Civil Procedure 23(a) contains four prerequisites which must all be met before a class may be certified, and provides in full:

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to demonstrating each of the four prerequisites of Rule 23(a)– numerosity, commonality, typicality and adequacy– Plaintiff must show that the class can be maintained under one of the three subcategories of Federal Rule of Civil Procedure 23(b). *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In this instance, Plaintiff seeks certification under Rule 23(b)(3), which requires her to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff bears the burden of demonstrating the

-7-

requirements of class certification are satisfied. *In re American Medical Sys.*, at 1086.

The Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Reeb v. Ohio Dept. of Rehab. & Corr.*, 81 Fed.Appx. 550, 555, 2003 WL 22734623 (6th Cir. Nov. 18, 2003)(unreported). The Court has broad discretion in determining whether to a particular case may proceed as a class action, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).

## IV.

Plaintiff, Vicki D. Jenkins, moves the Court for an Order certifying a class of consumers, in all states, except California,[4] whose vehicles were repossessed by Hyundai after the state's enactment of section 9-611 of the Uniform Commercial Code ("UCC") and subsequently disposed of by Hyundai.[5]

---

[4] The case excludes consumers residing in the State of California. Hyundai and California consumers have settled their claims in another class action brought in that State. The claims in the California case were based on the same conduct alleged in this case.

[5] Plaintiff's Reply, at p. 19, 22. In her initial Motion for Class Certification, Plaintiff requested that the Court certify a class of "all persons, except residents of California, who were not issued statutorily mandated post-repossession notices of intent to dispose of the vehicles financed by Defendant, Hyunda Motor Finance Company." (Plaintiff's Mot., at p.1.) Defendant objected, noting that, with this proposed definition, its liability is presumed, in that, as defined, membership in the class depended on Hyundai being liable by issuing him or her a defective notice. Generally, Hyundai asserts that Plaintiff has failed to define an ascertainable class.

Plaintiff acknowledges that her proposed class definitions have changed, but maintains that the differences in her proposals throughout the course of this litigation have resulted from Hyundai's successful campaign to limit her access to discovery. She asserts that this most recent proposal of the

Hyundai does not challenge certification on either numerosity or commonality grounds.[6]

Hyundai contends, however, that Plaintiff fails to meet the typicality and adequacy requirements

of Rule 23(a). Above all, Hyundai maintains that Plaintiff cannot satisfy the predominance and

superiority requirements of Rule 23(b)(3).

## A.    Rule 23(a) Prerequisites - Typicality and Adequacy

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This component of Rule 23

assures that the named representatives' interests align with those of the class. *American Medical*

---

class definition comports best with the discovery she obtained after her Motion for Class Certification.

Because a trial court maintains broad discretion at all times to modify a class definition, *Powers v. Hamilton County Pub. Defender*, 501 F.3d 592, 618-19 (6th Cir. 2007), the Court perceives no prejudice to Defendant brought about by Plaintiff's change in her proposed class definition. *See, e.g. Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir.2005) (noting that "[l]itigants and judges regularly modify class definitions"). Moreover, "courts must be vigilant to ensure that a certified class is properly constituted." *Powers*, 501 F.3d at 619. As a matter of its discretion, the Court reserves the right to modify class definitions to make appropriate adjustments to the class definition as this litigation progresses.

[6]    Nonetheless, the Court makes these findings explicitly. Although Plaintiff has not provided an estimate of the number of potential members in a 49-state class, she has adduced evidence that Hyundai repossesses approximately 30 vehicles per day throughout the country. (Cervantes Dep., at 26-27.) At least 445 potential class members reside in Ohio alone. (Hyundai's Response to Pl's Interrogatory #10.) The Court expressly finds, with respect to potential Ohio resident-class members, that joinder is impracticable and Rule 23(a)(1) numerosity requirement is satisfied.

Similarly, the Court finds that common questions of law and fact bind the potential class. The commonality requirement may be satisfied if the class shares even one common question of law or fact. "Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class-though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (quoting *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998)). Here, Plaintiff asserts that such common questions include (a) whether Hyundai and the Class entered into substantively similar and/or identical contracts; (b) whether Hyundai failed to send Jenkins and the Class proper statutorily mandated pre-disposition notices; and (c) whether Hyundai breached provisions in the retail installment sales contracts it entered into with Class Members. Again, Defendants do not address or contest that the commonality requirement of Rule 23(a) is satisfied.

-9-

*Sys.*, 75 F.3d at 1082. A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* The claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous. *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)(quoting *Sprague v. General Motors*, 133 F.3d 388, 399 (6th Cir. 1998)).

Pursuant to Rule 23(a)(4), a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Medical Sys.*, 75 F.3d at 1083. The Sixth Circuit articulated two criteria for measuring adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *Falcon*, 457 U.S. at 157 n.13 ("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest")). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* The adequacy of representation requirement is usually satisfied if the commonality and typicality requirements are met.

-10-

*Dalesandro v. International Paper Co.*, 214 F.R.D. 473, 483 (S.D. Ohio 2003)(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

The Court concludes that Jenkins is a typical representative of the class. Her claims arise from the same practice or conduct that gives rise to the claims of other class members and are based on the same legal theory. Hyundai focuses on distinguishing details, particularly the underlying cause of Plaintiff' default, namely because her credit and disability insurance did not make her vehicle payments during her disability. Although Hyundai asserts that the differences in Plaintiff's claims makes the class uncertifiable, these distinctions do not foreclose the option of pursuing her claims as part of a class action. Plaintiff alleges that she did not receive proper post-repossession notice as required under the UCC and similar state statutes. Hyundai's alleged failure to send proper notice is the center of the dispute, and is the common practice at issue in this case that forms a factual cohesiveness for the class.

Hyundai argues that Plaintiff's mental health issues makes her unfit and inadequate to represent the class. Plaintiff suffers from depression, anxiety and self-esteem issues. She receives Social Security disability benefits for her ailments. Hyundai relies on *American Medical Systems*, 7 F.3d at 1075, in which the Court of Appeals for the Sixth Circuit found that a plaintiff who suffered from severe conditions, such as memory loss and impaired concentration, was not an adequate representative.

Plaintiff, however, has never been hospitalized for her conditions, and has sought and received only out-patient counseling. Plaintiff does not suffer the "memory loss, impaired concentration," or a "lack of common sense" that made the plaintiff in *American Medical Systems* an inappropriate class representative. Plaintiff has demonstrated that she understands her role in

-11-

this litigation and her responsibility to the class members. She has demonstrated her willingness to actively participate in the litigation and to protect the interests of the unnamed class members. (Jenkins Dep., at 23-24, 77 & 83.) Merely because Plaintiff cannot articulate precise legal terms regarding the basis and theory of the claims, or hypothesize regarding the contours of class-action practice does not mean that she has ceded all control of her case to overreaching class counsel. The Court concludes that Plaintiff will fairly and adequately protect the interests of the class, such that the Rule 23(a)(4) requirement of adequacy is satisfied.[7]

**B.     Rule 23(b)(3) - Predominance and Superiority Requirements**

In order to certify a class under Rule 23(b)(3), Plaintiffs must show both that (1) common issues of law and fact predominate over individualized issues; and (2) a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Under the terms of the Rule, the matters pertinent to these findings include:

> (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

---

[7]     As set forth, *infra*, the Court declines to certify a nationwide class, but concludes that certification of a class action limited to Ohio residents is appropriate. The Court expressly finds that Plaintiff has met her burden with respect to typicality and adequacy as those factors relate to an Ohio-based class.

In order to certify a class action pursuant to Rule 23(b)(3), the proposed class action must meet both the predominance and superiority requirements. Failure to meet either the predominance or superiority precludes certification under Rule 23(b)(3). *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 401 (S.D. Ohio 2007)(citing *Amchem*, 521 U.S. at 615). Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *American Medical Sys.*, 75 F.3d at 1084.

Plaintiff asserts that the predominance and superiority requirements of Rule 23(b)(3) are satisfied. She indicates that the common legal issue is whether the notices Hyundai sent satisfy the requirements of each state's version of UCC 9-613 and 9-614. While the Court concludes Plaintiff has established that common issues of law and fact predominate, she has failed to carry her burden of demonstrating that her proposed nearly-nationwide class action is the superior method for adjudicating the controversy. Of all the factors presented for consideration under Rule 23(b)(3), the Court finds the fourth factor, manageability, the most apposite and difficult to overcome.

While many aspects of the Article 9 provisions at issue in the case are uniform, variations do exist in the Notice requirements from state to state, particularly with respect to the proper remedy for violations. Although this case is *focused* on whether the Notice was sent and whether it contained the information required by law, as Hyundai points out, Plaintiff alleges violations of state consumer-protection statutes, the requirements of which vary widely among the states, as do the court decisions interpreting those laws. "In order to demonstrate that a class action is superior to other forms of litigation, the Plaintiffs must show that such an action is manageable in light of

-13-

state law variations." *In re Telectronics Pacing Sys.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996).

Although the UCC Notice requirements are similar throughout the states, Plaintiff does not take into account that multiple UCC sections govern the claims of putative class members in states other than Ohio.[8] In many states, UCC provisions are modified or superseded by provisions contained in other statutes. Moreover, the Court is cognizant of the fact that it has already rendered its own interpretation of certain provisions of the new UCC in Ohio; certification of a near-nationwide class would require this Court to decide similar issues of first impression for multiple foreign jurisdictions, which it is not inclined to do.

Plaintiff has failed to provide the Court with a demonstrable method to maneuver through the hurdles posed by analyzing and applying the laws of 49 jurisdictions to her several state-law causes of action. The burden of analyzing and applying the nuances in multiple states' laws at issue in this case would, simply stated, overwhelm a jury. The variances in each state's laws confirms that a near-nationwide class is unworkable, and the number of potential claimants is unwieldy. These legal variations preclude class certification because they would render jury instructions nearly impossible and obviously voluminous. "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on relevant law, yet another reason why class certification would not be the appropriate course of action." *American Medical Sys.*, 75 F.3d at 1085. Based on the burden of applying multiple states' laws, the Court

---

[8]     The Court understands Plaintiff's contention that this is not a commercial reasonableness case challenging every aspect of the repossession and sale of a vehicle. Even though this case does not involve a fact-intensive evaluation of every aspect of a sale to determine if it was commercially reasonable, the Court finds that the variations in state law implicated by Plaintiff's proposed class action weigh decisively against certification of a 49-state class.

-14-

concludes that certification of a 49-state class is unsuitable and, therefore, the class action is not
the superior method of adjudicating the several consumer protection statutes at issue in this case.

Nevertheless, the Court finds no such impediments to managing this litigation with respect
to an Ohio class, and concludes that a class limited to Ohio citizens is suitable for certification.
With respect to an Ohio class, the Court finds that common questions of law or fact predominate
over individual issues, and that the class-action format is the superior method to adjudicate these
claims arising under Ohio law.

The predominance requirement "tests whether proposed classes are sufficiently cohesive
to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test
readily met in certain cases alleging consumer . . . fraud . . . ." *Id.* at 625; *see also Daffin v. Ford
Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)(approving of *Chandler v. Southwest Jeep-Eagle*,
162 F.R.D. 302, 310 (N.D. Ill.1995), in which district court found predominance requirement
satisfied where all consumers received the same service contract and the principal question was
whether the service contract violated consumer protection laws). In this case, the questions of
whether Hyundai engaged in a uniform course of conduct with respect issuing the same or
substantially similar pre-disposition Notices to class member and whether these Notices violate
Ohio law are central to this litigation. The success of each individual claim will depend on a
favorable disposition of the common question of whether Hyundai's standardized forms were
statutorily deficient under the laws of Ohio. The claims of the Ohio class members arise out of,
and are based on this common nucleus of operative facts. These issues, in turn, predominate and

-15-

are the focus of the efforts of all of the putative litigants.[9]

Furthermore, as it relates to these potential Ohio litigants, the Court concludes that a class action is the superior method for judicial resolution of their claims. The superiority requirement of Rule 23(b)(3) compels the court to balance the merits of a class action in terms of fairness and efficiency. *See In re Telectronics*, 168 F.R.D. at 221.

"One important factor that indicates the superiority of a Rule 23 action in the consumer-protection field is that typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis." Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, 7AA, § 1782. The Court is mindful that a failure to certify a class will most likely render individual actions in this case noneconomical for Plaintiffs to pursue. *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941) (cautioning against "closing the door of justice to small claimants"); *see also Amchem,* 521 U.S. at 617 (noting that " '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' ")

---

[9]       Hyundai argues that individualized commercial reasonableness inquiries, even in the State of Ohio, preclude a finding that common issues predominate here. First, this case relates to only one aspect of commercial reasonableness, whether the Notices were sent and contained the information mandated by Ohio law, and is not a challenge to the entire spectrum of commercial reasonableness. Second, the parties disagree as to what remedy is appropriate to a debtor in the State of Ohio for failure to comply with the commercial reasonableness aspects of Article 9 when a creditor improperly disposes of the collateral, and dispute whether the state statute imposes an "absolute bar" or "rebuttable presumption" with respect to creditor's ability to collect the deficiency balance. The Court need not, and in fact, should not address this merit-based argument at the class certification stage of the litigation. In *re Foundry Resins Antitrust Litig.,* 242 F.R.D. at 402 (noting that, in addressing the requirements for class certification under Rule 23, "a district court cannot inquire into the merits of the class representatives' underlying claims.")(citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-178 (1974)).

-16-

(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)).

Plaintiff points out that a typical class member is unaware that Hyundai may have disposed of his or her vehicle in violation of the law, and that without this knowledge, few class members can be expected to sue individually when they are unlikely even to know that they have a valid claim.  Plaintiff also emphasizes that a typical class member, whose vehicle was repossessed for failure to make timely payments, is unlikely to be able to afford an attorney.  "A class action is the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the initiative to commence an action on their own behalf."  *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 645 (N.D. Ill., 2002)(citation omitted).

For all of these reasons, the Court concludes Plaintiff has satisfied Rule 23(b)(3).  She has demonstrated that common questions of law or fact predominate over individual issues, and that a class action is the superior method to adjudicate these claims arising under Ohio law.

## C.     Adequacy of Representation

Finally, with respect to the adequacy of legal representation, Plaintiff is aptly counseled by her attorneys, who will protect her interests and those of the class.  Indeed, Hyundai has not argued that Plaintiff's counsel cannot adequately represent a class, and the Court finds no basis in the record to support such a finding.[10]  *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (acknowledging that Rule 23 requires independent evaluation of class counsel, separate from the

---

[10]     The appointment of class counsel is a separate consideration, although it has traditionally been considered as an element of the adequacy inquiry under Rule 23(a)(4). The enactment of Rule 23(g), however, requires the Court to approve and appoint class counsel under a more specific inquiry.

analysis of the adequacy of the class representative).  Under Rule 23(g), the Court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. . . ."  Fed. R. Civ. P. 23(g)(1)(B).

With these factors in mind, the Court finds that class counsel can fairly and adequately represent the interests of the class.  Plaintiff's counsel have worked diligently to identify and investigate the potential claims in this matter.  They have shown an eagerness to prosecute the case, which has already involved time-consuming discovery and extensive briefing.  This Court also notes that both Plaintiff's counsel and counsel for Defendants have exhibited an exemplary knowledge of the law, and have well briefed the matters before the Court.  Pursuant to Rule 23(g), the Court hereby appoints Plaintiff's counsel as lead counsel for the class.

## V.

For the foregoing reasons, Plaintiff's Motion to Strike (Doc. #96) is **GRANTED IN PART**; Plaintiff's Motion for Designation of Interim Co-Lead Class Counsel (Doc. #81) is **DENIED**; and Plaintiff's Motion for Class Certification (Doc. #74) is **GRANTED IN PART**.[11]

---

[11]    After closing of the briefing on Plaintiff's Motion for Class Certification, Hyundai filed a Notice of Supplemental Authority.  (Doc. #105)  Plaintiff thereafter filed a Motion to Strike (Doc. #107) on the basis that the Notice violated S.D. Ohio Civ. R. 7.2 and the Court's previous directive to Hyundai that it should not file any additional memoranda regarding class certification without leave of

-18-

The Court hereby certifies the following class: Consumers in the State of Ohio whose vehicles were repossessed and subsequently disposed of by Defendant after July 1, 2001 enactment of the amendments contained in Chapter 1309.101 *et seq.*, the State's version of Section 9-611 of the Uniform Commercial Code.

**IT IS SO ORDERED.**

3-24-2008
_____
**DATED**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

court "upon a showing of good cause." (Order of Magistrate Judge McCann King, July 23, 2007). While the Court agrees with Plaintiff that the supplemental authority submitted by Hyundai, *In re Long*, Case No. 06-6252, --- F.3d ----, 2008 WL 564798 (6th Cir., March 4, 2008), offers questionable value because of the fractured opinions from the panel, and provides little analysis on the much more narrow issues now before this Court, Plaintiff's Motion to Strike is **DENIED**. The Court can detect no prejudice to Plaintiff by the submission of a case of which this Court is obliged to take notice as published, binding authority.

Nonetheless, the Court finds *Long* factually distinguishable. Although the *Long* case discusses the differences in state-specific laws governing repossessions of motor vehicles, it does so in light of recent revisions to the bankruptcy code in which Congress left a gap as to what happens to a remaining indebtedness when a Chapter 13 debtor surrenders a car to the financing company. Moreover, *Long* refers to the need to preserve the uniform application of the federal bankruptcy code, and notes that resorting to the various state laws to fill the gap left by Congress would be an unworkable. The *Long* court referred in *dicta* to all the laws involved with repossessions of vehicles, such as 'the timing and procedure for foreclosure proceedings, notice requirements, the valuation of collateral, and what constitutes commercial reasonableness . . . . " *Id.* at *7. Here, the instant matter does not arise as a bankruptcy case, nor does it implicate all of the laws that touch upon vehicle repossessions.

-19-