**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

| | | |
|---|---|---|
| Vicki D. Jenkins, individually and on behalf of all similarly situated persons, | ) ) ) | CASE NO: C2 04 720 |
| Plaintiff, | ) ) | JUDGE SARGUS |
| v. | ) ) | MAGISTRATE JUDGE KING |
| Hyundai Motor Finance Company, et al., | ) ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S MOTION IN SUPPORT OF FINAL**
**APPROVAL OF THE PROPOSED SETTLEMENT AND APPROVAL OF**
**ATTORNEYS' FEES AND EXPENSES**

---

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Vicki Jenkins respectfully files this motion in support of final approval of the proposed settlement of this class action, as set forth in the Settlement Agreement that was preliminarily approved by the Court on April 9, 2009 ("Settlement").[1]  HMFC is in agreement with the Motion in Support of Final Approval of the Proposed Settlement in accordance with the terms of the Settlement Agreement and does not oppose the amount of attorneys' fees and expenses sought by Class Counsel. Through exceptional efforts, Class Counsel has achieved a settlement for the benefit of the Class that will provide for all Class Members exceptional relief.  Examination of the criteria for approval of class settlements, including, among other things, the overwhelming approval of the Class, confirms that the Settlement is fair, reasonable and adequate and should be approved.

---

[1] Unless otherwise defined herein, capitalized terms are intended to have the meaning assigned to those terms in the Settlement Agreement.

Moreover, not a single class member filed an objection to the Settlement, and only one class member requested exclusion from the Settlement.

Plaintiff brought this action alleging that defendant Hyundai Motor Finance Company ("HMFC"), violated the Uniform Commercial Code and the Ohio Retail Sales Installment Act by issuing defective post-repossession notices to buyers who defaulted on retail sales contracts for the purchase of motor vehicles.  Plaintiff sought compensatory and punitive damages, injunctive and declaratory relief, as well as costs and attorney fees.  Defendant denied all allegations and filed a counterclaim.

After more than four years of contentious litigation, extensive briefing, substantial discovery efforts, and lengthy settlement negotiations with two separate mediators, the parties have reached an agreement on a proposed class action settlement that will resolve all claims. The proposed settlement submitted with this motion for the Court's approval, will provide the following benefits to Settlement Class Members:

- HMFC shall agree that Settlement Class Members do not owe any deficiency balances on their accounts and have no obligation to pay the deficiency balances.  HMFC represents for purposes of the Settlement Agreement that the outstanding principal deficiency balances on the accounts for the Settlement Class Members total approximately $5.6 million.

- HMFC shall correct its internal account records for Settlement Class Members to reflect a zero balance on the accounts.

- HMFC shall take no further action to collect or attempt to collect deficiency balances on accounts of Settlement Class Members and shall dismiss any legal action pending against any Settlement Class Member concerning deficiency balances; and

- HMFC shall transmit electronically or by mail a request to Equifax, Experian, and Transunion (collectively "Credit Reporting Agencies") to delete any reference to HMFC deficiency balances on the accounts of Settlement Class Members for each Settlement Class Member.

As discussed below, the settlement is fair, reasonable and adequate and should be finally approved.

## I.    SUMMARY OF PLAINTIFF'S CLAIMS

This consumer class action is based on allegations that HMFC failed to satisfy the requirement that a creditor who repossesses collateral provide a particular notice to the debtor before disposing of the collateral.  Plaintiff Vicki Jenkins had her automobile repossessed by HMFC in 2002.  Jenkins alleges she did not receive the proper notice relating to the sale of her vehicle after repossession.  Thereafter, HMFC attempted to collect from Jenkins an amount equal to the difference between what she owed at the time of repossession and the amount HMFC received from its sale of the vehicle (the "deficiency").

Plaintiff alleged that HMFC'S actions violated the U.C.C. provisions concerning disposition of secured collateral (found at R.C. §1309.610 *et seq)* and Ohio's Retail Installment Sales Act ("RISA"), R.C. 1317.01 *et seq.*  Specifically, Plaintiff alleged that HMFC's failure to send the required notice and its attempts to collect the deficiency after auctioning Jenkins' vehicle violate the statutory requirement that creditors must provide notice following the repossession advising of specific aspects of the planned disposition of vehicles prior to selling the vehicle.  HMFC denies these allegations and has asserted a counterclaim for the full deficiencies against both Plaintiff and absent class members.

## II.    HISTORY OF THE LITIGATION, DISCOVERY AND SETTLEMENT NEGOTIATIONS

On August 2, 2004, Jenkins commenced this Action by filing a complaint against HMFC. Subsequently, on November 15, 2004, HMFC, in its Motion to Dismiss, denied, and continues to

deny, the substantive claims set forth in the complaint in this Action, and denied, and continues to deny, wrongdoing of any kind.

Since that time, the Parties have engaged in both formal and informal discovery. Through this discovery, counsel for the Class obtained and reviewed documents related to the design and alleged failure to provide sufficient notice.  After consideration of the documents exchanged during discovery, the parties agreed to enter into settlement discussions.  At the outset, the parties participated in mediation in San Diego, with a well-known and respected mediator, retired Judge Lawrence Irving.  Despite lengthy negotiations with, through, and separate from the mediator, the parties were not able to come to an agreement at that time and agreed to proceed with the litigation toward class certification.

This action was certified as a class action on March 24, 2008, and the class was defined as follows:

> Consumers in the State of Ohio whose vehicles were repossessed and subsequently disposed of by [HMFC] after the July 1, 2001 enactment of the amendments contained in Chapter 1309.101, *et seq.,* the State's version of Section 9-611 of the Uniform Commercial Code.

After the Class was certified, the parties once again agreed to enter into settlement negotiations and notice to the Class was held in abeyance while the parties negotiated this settlement.  At this juncture, the parties attempted to resolve the matter with the assistance of Southern District of Ohio mediator Robert S. Kaiser in December 2008.  Although that mediation did not result in a settlement, the parties continued to communicate regularly via telephone and letter to work toward a settlement.  The terms of the Settlement that relate to relief for the Settlement Class were ultimately finalized after extensive negotiations.  The fees to be paid to Class Counsel were negotiated after the substantive terms of the Settlement were agreed upon in principle.  The

complete agreement was then memorialized in the Settlement Agreement that was previously submitted to the Court for preliminary approval and approved by the Court on April 9, 2009.

In addition to the claims related to deficiencies in HMFC's post-repossession notice, Jenkins had asserted individual claims related to HMFC's failure to properly submit information related to an insurance claim filed by Jenkins. Those claims have also been resolved.[2]

### III. TERMS OF THE SETTLEMENT

The full text of the parties' Settlement Agreement was previously submitted to the Court on April 6, 2009 and was preliminarily approved on April 9, 2009. The terms of the settlement are summarized below:

#### A. Elimination Of Deficiency Balances

HMFC has agreed that Settlement Class Members will not owe any deficiency on the Settlement Class Accounts (defined in the Settlement Agreement as a Settlement Class Member's account with HMFC which is subject to the Settlement Agreement) and have no obligation to pay any deficiency (outstanding principal deficiency balances on the Settlement Class Accounts total approximately $5.6 million), HMFC will correct its internal records to reflect a zero balance on Settlement Class Accounts, and will take no further collection activity on those accounts. Settlement Agreement ¶ 2.2 (a,b,c).

#### B. Correction of Credit Reports

HMFC will seek the revision of the credit histories of Settlement Class members by requesting that Equifax, Experian, and TransUnion delete any reference to Settlement Class members' purported deficiency balances. Settlement Agreement ¶ 2.2(d).

#### C. Incentive Award To Named Plaintiff

---

[2] HMFC has agreed to the payment to Jenkins of $9,000, separate and apart from the relief provided to Settlement Class Members to resolve these claims.

The Settlement Agreement provides for payment of an incentive award to Vicki Jenkins in the amount of $5,000.  The payment of the incentive award is separate from and in addition to the relief provided by the Settlement Agreement to Settlement Class members.  Settlement Agreement ¶ 2.3.

**D.  Attorney Fees And Expenses**

Jenkins seeks and HMFC shall not object to Jenkins's entitlement to an award of attorneys' fees, costs and expenses in an amount not greater than $443,500.  Payment of attorneys' fees, costs, and expenses is separate from and in addition to the relief provided to members of the Settlement Class.  Settlement Agreement ¶ 2.5.

**E.  Identification Of Settlement Class Members**

HMFC has proved a class list to class counsel which includes the name, account number, deficiency balance, and deficiency balance payments for all settlement class members.  Settlement Agreement ¶ 3.2.

**F.  Mailing Of Class Notice**

HMFC has caused Class Notice to be sent by First Class Mail to all individuals identified on the Class List.  Before mailing the Class Notice, HMFC performed an address check of the entire Class List through the National Change of Address database to update the addresses of Settlement Class Members.  HMFC used the address found in the National Change of Address database or the last known address, if no new address was found.  For Class Notices returned by the Postal Service for lack of a current correct address, HMFC attempted to conduct a further address search using the same tools it currently uses for deficiency collection and re-mailed the Class Notice by First Class Mail to any subsequently obtained addresses.  Settlement Agreement ¶ 3.5.

**G.  Declaration Of Compliance**

HMFC provided the Court and Class Counsel, on May 27, 2009, a declaration confirming that notice was made to Settlement Class Members and enumerating the steps it took during the class notice process.

**H.  Settlement Administration Costs**

HMFC has and will continue to pay all costs of the settlement administration, including but not limited to, the costs related to class notice, address updates, correction of credit reports, and the toll-free line for Settlement Class Member questions.  These costs shall be separate from and in addition to relief provided to Settlement Class Members and the award of attorneys' fees, costs, and expenses.  HMFC shall not be responsible for additional costs of settlement administration incurred by Class Counsel in excess of any such amount awarded by the Court. Settlement Agreement ¶ 3.11.

**I.  Opt-Outs**

As a component of the Notice, Class Members were informed of their right to request exclusion from the Settlement.  In order to do so, Class Members were instructed that any request for exclusions must have been postmarked by June 12, 2009.  To be valid, a request for exclusion must have included:

(a)     the Settlement Class Member's full name, address and telephone number; and

(b)     specifically and unambiguously state his or her desire to be excluded from the Settlement Class in Case No. C2-04-720; *Vicki D. Jenkins, et al v. Hyundai Motor Finance Company, et al*.

**J.  Objections**

As a component of the Notice, Class Members were informed of their right to object to the Settlement. Any Settlement Class Member who intended to object to the fairness of the

Agreement must have filed any such objection with the Court, and provided copies of the objection to counsel for the parties, no later than June 26, 2009.

Any objection to the Settlement Agreement must have included:

(a)     the objector's full name, address and telephone number;

(b)     a written statement of all grounds for the objection accompanied by any legal support for such objection;

(c)     copies of any papers, briefs or other documents upon which the objection is based;

(d)     a list of all persons who will be called to testify in support of the objection;

(e)     a statement whether the objector intends to appear at the Final Approval Hearing; and

(f)     a list of all cases in which the objector and/or their counsel has filed objections to a class action settlement in the preceding five years.

Any member of the Settlement Class who did not file a timely written and notice of his or her intent to appear at the Final Approval Hearing or who failed to otherwise comply with the requirements of the Settlement Agreement shall be foreclosed from seeking any adjudication or review of the Settlement Agreement by appeal or otherwise.  Settlement Agreement ¶ 3.7.

**K.  Releases**

Settlement Class Members who have not timely excluded themselves shall be deemed to have covenanted and agreed that, upon HMFC's compliance with the terms of this Agreement, Settlement Class Members, on the one hand, and HMFC, on the other hand, shall mutually release and forever discharge each other from any and all claims, demands, actions, causes of action and suits pleaded against HMFC, Settlement Class Members in this action and all other claims, demands, causes of action of any nature whatsoever, including but not limited to violations of federal, state or other law (whether in contract, tort or otherwise, including

8

statutory and injunctive relief, common law, property, warranty and equitable claims), and also including unknown claims that were or could have been asserted in this action or in any other complaint, action or litigation in any other court or forum based upon or in any way relating to the accounts of the Settlement Class at HMFC. Settlement Agreement ¶ 4.1.

The release provisions of this Agreement shall not apply in any manner to individuals who opt out of the Settlement Class or who do not fall within the definition of the Settlement Class. Settlement Agreement ¶ 4.3

## IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BY THE COURT

### A. The Standards for Judicial Approval of Class Action Settlements

It is well settled that compromises of disputed claims are favored by the courts. *Williams* v. *First Nat 'I Bank,* 216 U.S. 582, 595 (1910). "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys.,* 137 F. Supp. 2d 985,1008 (S.D. Ohio 2001). *See also, Cotton* v. *Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest in favor of settlement."); *Enter. Energy Corp.* v. *Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Pursuant to Rule 23(e), a court should approve a class settlement if it is fair, adequate, and reasonable, and in the best interest of the class. *Williams* v. *Vukovich,* 720 F.2d 909,921 (6th Cir. 1983); *Telectronics,* 137 F. Supp. 2d at 1008; *Brotherton* v. *Cleveland,* 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001); *Granada Invs., Inc.* v. *DWG Corp.,* 823 F. Supp. 448, 453 (N.D. Ohio 1993); *Bronson* v. *Bd. Of Educ.,* 604 F. Supp. 68, 71 (S.D. Ohio 1984); *In re Art Materials Antitrust Litig.,*100 F.R.D. 367, 370 (N.D. Ohio 1983).

It is also well settled that the view of experienced counsel favoring the settlement is entitled to great weight.  *Kogan* v. *AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 501 (E.D. Mich. 2000) (citing *Bronson,* 604 F. Supp. at 73).  A court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams,* 720 F.2d at 922-23.  *See also Kogan,* 193 F.R.D. at 501.  Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable.

When examined under the applicable criteria, this Settlement is a fair, adequate and reasonable result that is in the best interests of the Class.  Class Counsel believes that there are serious questions as to whether a more favorable monetary result against Defendants could or would be attained after trial and the inevitable post-trial motions and appeals.  The Settlement achieves a prompt and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were this action to proceed to trial, there could be no recovery at all. Moreover, analysis of the relevant factors confirms that the proposed Settlement merits this Court's approval.

### B.  Evaluation of the Proposed Settlement

#### 1.  The Risk of Fraud or Collusion

In assessing whether there is a risk of fraud, the Court should rely on its own familiarity with the issues, the results of discovery, and the character of the negotiations prior to entry of the decree.  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).  The Court has been actively involved with this litigation since its inception, and is very much aware of the issues presented herein.

Prior to entering into the Settlement, counsel engaged in extensive arms-length negotiations.  Final agreement was reached only after the active guidance of this Court and literally years of back and forth negotiations that culminated in multiple mediations.  Given the aggressive way in which this case has been both prosecuted and defended, it cannot be said that the Settlement was the product of collusion.

### 2. The Complexity, Expense and Likely Duration of the Litigation

This case presents complex, technical, factual and legal issues under both common law and statutory principles.  These issues include, *inter alia*, (1) whether HMFC provided adequate notice to Class Members; (2) whether HMFC complied with the laws put in place to regulate said notice practices; and (3) the appropriate measure of damages, if any, to which Class Members are entitled.

Defendant has taken the position that if this case were to proceed, it will dispute all of these issues, most of which are extremely fact intensive and in all likelihood will require a trial on the merits to resolve.  Moreover, if these issues are adjudicated in a trial, it is anticipated that resolution of these issues will require lengthy expert testimony which will be extremely costly to both the Class and Defendant.

### 3. The Amount of Discovery Engaged in by the Parties

Defendants have produced thousands of pages of documents in this litigation, including financial documents, client files, policies and procedures, and databases containing substantial information that helped Plaintiff evaluate this case and negotiate a fair and reasonable settlement for the Class.   Prior to engaging in settlement negotiations, counsel for the Plaintiff carefully reviewed, sorted and analyzed these documents.  In addition, the parties have engaged in written

discovery, with the Plaintiff fully cooperating in answering interrogatories and providing documents from her records and participating in a deposition.

### 4.   The Likelihood of Success on the Merits

The central thrust of the allegations in this litigation is that Defendants did not comply with notice requirement with respect to the sale of repossessed vehicles.  While Class Counsel believe that they would be able to adduce facts at trial to prove these allegations, the Defendant contends that, in fact, the notices provided to class members were in compliance with the law.  If the Court were to credit the arguments of the Defendants, Class Members would recover nothing in the present litigation.

### 5.   The Reaction of Absent Class Members

The reaction of the Class to the Settlement has been overwhelmingly positive. Approximately 906 notices were sent directly to individual Class Members.  Despite the ample notice, only one Class Member has timely excluded herself from the Settlement, and not one class member filed an objection with the Court.  The fact that there have been only one request for exclusion and not a single objection was filed, speaks volumes about the fairness and reasonableness of the terms proposed and the adequacy of the relief provided to class members.

### C.   Agreed Upon Fees, Expenses and Class Representative Awards are Reasonable and Warranted

Through skillful and focused litigation, Plaintiff's Counsel has achieved a Settlement that provides a value for the Class that likely will exceed $6 million.  In addition to relief gained for the Class, HMFC has agreed to pay fees and expenses of $443,500 to the law firms representing the Plaintiff in this case.  HMFC also agreed to an award of $5,000 to the Class Representative for her assistance in obtaining relief for the Class.  The attorneys' fees and expenses were

negotiated separately from the relief for the Class and the negotiated fees include compensation for all **future** services to be rendered by Plaintiffs' Counsel – services which first-hand experience shows will constitute a substantial continuing commitment of time, effort and resources.[3]

The fee negotiations were conducted at arm's length, only after all of the terms of the Settlement had been agreed upon.[4] The Sixth Circuit recognizes that "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties,* 9 F.3d 513, 516 (6th Cir. 1993). And, when making such an award pursuant to Civil Rule 23(h), the Sixth Circuit requires only that such awards "be reasonable under the circumstances." *Id.* (citing *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir. 1983). A reasonable fee "is one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist,* 372 F.3d 784, 791 (2004) (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999)).

In the present litigation, although a substantial common benefit was rendered to the class, no true no common fund was created. Thus, the lodestar multiplier approach is appropriate when calculating reasonable attorney's fees. The attorney fees agreed upon by the parties are far **less** than the lodestar currently held by Plaintiff's counsel. In fact, if the Court were to use the multiplier method, it would see that the attorney fee requested is **less than 20%** of the Plaintiff's Counsel's current lodestar. Under these circumstances, the Court should give "great weight" to the negotiated fee in considering the fee request.

---

[3]See Affidavits of David P. Meyer, attached hereto as Exhibit A; Barbara Quinn Smith, attached hereto as Exhibit B; and Scott L. Starr, attached hereto as Exhibit C (collectively "Class Counsel Affidavits").

[4] See Class Counsel Affidavits.

This litigation involves issues of larger importance for a nation of consumers who must find a way to assert their rights even when small dollar amounts are at stake. Absent appropriately commensurate fee awards, the incentives to undertake such salutary litigation will be lost.  As Professor Conte writes:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation.  These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that failed to give the *results obtained* factor primary consideration. 1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (footnotes omitted, emphasis in original).

Simply put, the valuable service provided by Counsel both before and after this Settlement is approved, must be rewarded to ensure future similar efforts by counsel.  As courts have aptly recognized, plaintiffs' counsel take enormous risks with these large consumer cases, and often those risks don't pan out.   Indeed even when consumer cases are successful, counsel are frequently uncompensated due to the lack of funds. *In Re Rio Hair Naturalizer Products Liability Litigation,* 1996 U.S. Dist. LEXIS 20440 at *11 (E.D. Mich. Dec. 20, 1996).

### 1.      Courts have Regularly Approved Negotiated Fee Arrangements as Part of Class Action Settlements

Fee agreements between plaintiffs and defendants in class actions of this nature are encouraged, particularly where the attorneys' fees are negotiated separately from and after all terms of the settlement on behalf of the class have been agreed to by the parties.  Parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys fees. *See Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026,

1027 (9th Cir. 1997).  In accord with this precedent, the attorneys' fee agreement here was negotiated between the Parties only *after* all of the provisions of the Settlement were determined.[5]

### 2.     Plaintiff's Counsel are Entitled to Compensation for Creating a Common Benefit for the Class

Attorneys who create a benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Until Plaintiffs initiated this action, HMFC did not intend to compensate any of the Class Members.  It was only through the efforts of Plaintiff and her attorneys that the millions in tangible monetary benefits were obtained for the Class.

### 3.     The Public Interest

The benefit to society rendered by Plaintiffs' Counsel in consumer class actions such as the present case was succinctly stated by the court in *Rio Hair*:

> Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized.  As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 161 (1974).  Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.

Absent the efforts of Plaintiffs' Counsel, it is likely that no relief at all would have been obtained by any Class Members.

---

[5] See Class Counsel Affidavits.

15

### 4.     The Contingent Nature of the Fee

Plaintiffs' Counsel undertook this litigation on a purely contingent basis, thereby bearing the full risk of non-recovery.  Lost time and effort was not the only risk; Plaintiffs' Counsel advanced the Class all of the costs.  These and all future expenses will be deducted from Plaintiffs' Counsel's fees and expenses.

The risk of such loss in consumer class cases is real.  Adverse rulings lead to appeals and litigation can easily become very protracted and expensive to litigate.  It also demonstrates the commitment of Plaintiffs' Counsel to litigate a contingency case as long and as hard as necessary to succeed – as in this case.

### 5.     The Value of the Services on an Hourly Basis

The magnitude and complexity of the nationwide class action litigation undertaken by Plaintiffs' Counsel cannot be overstated.  Investigating and launching such complex litigation consumes an enormous amount of Plaintiffs' Counsel's time, labor and financial resources.

### 6.     The Class Representative is entitled to an Award for her Efforts

Payment of awards to class representatives lies within the discretion of the trial court and may be provided as a reward for the benefit visited on the class.  *In re Plastic Tableware Antitrust Litig.,* 1995 U.S. Dist. LEXIS 18166, at *2 (E.D. Pa. Dec. 4, 1995).  Factors that courts consider when awarding incentive awards include: the risk to the plaintiff in commencing suit, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the

16

litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.  Accordingly, the modest $5,000 award here is entirely appropriate.

## V.    THE NOTICE MEETS THE CIV. R. 23 AND DUE PROCESS REQUIREMENTS

As noted above, and as attested to by Defendant in its Declaration in Support of Settlement Approval filed on May 27, 2009, the Notice approved by the Court was mailed to all identified Class Members.  Approximately 906 notices were directly mailed to Class Members.

The Notice to the Class exceeds the due process requirements of Civ. R. 23(C)(2) both in content and method of delivery to the Class.  The Settlement may therefore be approved.  See *In Re Michael Milken,* 50 F.R.D. 46, 60 (S.D. N.Y. 1993).

## VI.    CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully requests that the Court grant final approval to the Settlement, approve the requested amount of attorneys' fees and expenses, approve the incentive award to Plaintiff, and enter the accompanying Proposed Order (attached hereto as Exhibit D) approving the Settlement.

Dated:  June 30, 2009                                  Respectfully submitted,

**FOR PLAINTIFF AND THE PLAINTIFF CLASS:**

**/s/ David P. Meyer**
David P. Meyer (0065205)
dmeyer@dmlaws.com
Trial Attorney for Plaintiff
DAVID P. MEYER & ASSOCIATES CO., LPA
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone:(614) 224-6000
Facsimile: (614) 224-6066

Thomas A. Hargett
tahargett@mhclaw.com
Maddox Hargett & Caruso
10100 Lantern Road
Fishers, Indiana 46038

Telephone: (317) 598-2052
Facsimile: (317) 598-2050

Barbara Quinn Smith (0055328)
bqsesq@aol.com
Maddox Hargett & Caruso
9853 Johnnycake Ridge Rd.
Suite 302
Mentor, OH 44060
Telephone: 440-354-4010
Facsimile: 440-848-8175

Scott L. Starr
starr@starrausten.com
Andrew B. Miller
miller@starrausten.com
STARR AUSTEN TRIBBETT MYERS & MILLER
201 South Third Street
Logansport, Indiana 46947
Telephone: (574) 722-6676
Facsimile: (574) 753-3299

*Attorneys for Plaintiff Vicki Jenkins*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2009, a copy of the foregoing was filed electronically with the Court.  Notice of this filing will be sent to all parties registered for electronic service by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ David P. Meyer
David P. Meyer (0065205)
dmeyer@dmlaws.com
Trial Attorney for Plaintiff